UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| JAIME HERNANDEZ-CAMPOS and LEODEGARIO CRUZ-TREJO, on behalf of themselves and all other similarly situated persons, | ) | CLASS ACTION |
| Plaintiffs, | ) | |
| v. | ) | Complaint<br>Civil Action No.: |
| FANN FARMS, INC., WILLIAM KENNETH FANN, KENNETH A. FANN, TERESA W. FANN, and FRANCISCO VALADEZ, JR., | ) | |
| Defendants. | ) | |

**PRELIMINARY STATEMENT**

1. Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo are migrant farmworkers who were employed through the H-2A program to perform various agricultural duties related to the sweet potato growing and harvesting operation of Fann Farms, Inc. and its three (3) principals in or around Salemburg, North Carolina (hereinafter "Fann defendants") as part of a crew of temporary agricultural workers jointly employed by the Fann defendants and defendant farm labor contractor Francisco Valadez, Jr. (hereinafter "Valadez") in August, September, and October 2017. In 2017, the Fann defendants used and funded Francisco Valadez, Jr. as their agent to recruit workers from Mexico through the H-2A temporary agricultural visa program to work at Fann Farms, Inc. ("the H-2A workers").

2. Both named plaintiffs file this action as a collective action under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to their statutory claim under the North Carolina Wage and

Hour Act (NCHWA), N.C.Gen.Stat. §§ 95-25.1 set seq.

3.      Defendants violated the Fair Labor Standards Act and N.C.Gen.Stat. § 95-25.6 by failing to pay each Plaintiff free and clear at least the required minimum hourly wage for every compensable hour of labor performed in the first workweek and in each workweek that the Defendants jointly employed the Plaintiffs in North Carolina in 2017 by authorizing farm labor contractor and joint employer and agent Francisco Valadez, Jr. to make a de facto wage deduction in the form of a payments from the Plaintiffs and the employees that they seek to represent as a condition of their employment under the H-2A program in North Carolina in 2017, and by failing to pay all wages when due at the minimum hourly adverse effect wage rate ("AEWR") promulgated by the U.S. Department of Labor ("DOL") pursuant to 20 C.F.R. §§ 655.122(l) and 655.120 (2010) and as set forth in 29 U.S.C. § 206(a) for the hand harvest of sweet potatoes on a piece rate basis for the defendants in 2017.

4.      Plaintiffs seek their unpaid wages and liquidated damages under 29 U.S.C. §§ 206(a) and 216(b) and N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1).  They also seek declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (interstate commerce), and 1367(a) (supplemental jurisdiction).  This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

6.      Venue over this action lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 29 U.S.C. § 216(b).  At all times relevant to this action, defendant Fann Farms, Inc. was and is a corporation organized under the laws of the State of North Carolina that, acting at the

direction and under the control of defendants Kenneth A. Fann, William Kenneth Fann, and Teresa W. Fann. At all times alleged in this Complaint, defendant Fann Farms, Inc. and those same three (3) individual defendants (hereinafter referred to collectively as the "Fann defendants") were engaged and continue to engage in regular and substantial business activities in Sampson County and surrounding counties in North Carolina at the time this action was commenced, and a substantial part of the events that gave rise to this action occurred in Sampson County, North Carolina as specified in 28 U.S.C. § 113(a).

7. At all times relevant to this action, defendant Francisco Valadez, Jr. (hereinafter referred to as "Valadez") was and is a farm labor contractor who furnished migrant workers with H-2A visas to perform hand labor in agriculture for the Fann defendants, and was engaged and continues to engage in regular and substantial business activities in Sampson County, Johnston County, and surrounding counties in North Carolina at the time this action was commenced, and a substantial part of the events that gave rise to this action occurred in Sampson County, North Carolina as specified in 28 U.S.C. § 113(a).

## PARTIES

### Fann Defendants

8. At all times relevant to this complaint, Defendant Fann Farms, Inc. (hereinafter "Fann Farms") is and has been a for profit, closely held corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, producing and marketing tobacco, sweet potatoes and other agricultural products within and without North Carolina.

9. At all times relevant to this complaint, Defendant Kenneth A. Fann has been and continues to be the President, part-owner, and co-operator of Fann Farms.

10. At all times relevant to this complaint, Defendant Teresa W. Fann has been and continues to be the Secretary of Fann Farms, part-owner, and co-operator along with her spouse Kenneth A. Fann, and her son William Kenneth Fann, of Fann Farms.

11. At all times relevant to this complaint, Defendant William Kenneth Fann has been and continues to be the Vice-President, part owner, and co-operator of Fann Farms. In that capacity, Defendant William Kenneth Fann was and is the Vice-President for Fann Farms and directs and controls the wages and working conditions of those workers with H-2A visas that Fann Farms employed or jointly employed with Valadez in 2017.

12. At all times relevant to this complaint, Fann Farms, all of the Fann individual Defendants (collectively the "Fann Defendants"), and defendant Valadez jointly employed the named Plaintiffs and the members of the proposed NCWHA class and the proposed FLSA collective action within the meaning of N.C.Gen.Stat. §§ 95-25.2(3) and (5) and 29 U.S.C. §§ 203(d) and 203(g), 29 C.F.R. § 791.2, and 13 NCAC Tit. 12 § .0103.

13. As defined by the H-2A regulations, 20 C.F.R. §§ 655.103(b) and 655.1300(c), and pursuant to the certification that the Fann Defendants obtained based upon the H-2A Clearance Order copied and attached to this complaint marked as Plaintiffs' Exhibit A, the Fann Defendants employed and the Fann defendants and defendant Valadez jointly employed the named plaintiffs and all of the H-2A workers described in the H-2A Clearance Order marked as Plaintiffs' Exhibit A whom the named plaintiffs seek to represent in the collective action they pursue under 29 U.S.C. § 216(b), and in the class action they pursue on behalf of those same H-2A workers under Rule 23(b)(3) and the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §§ 95-25.1 et seq.

14. In addition, as defined by those same H-2A regulations, the Fann Defendants jointly employed with Defendant Valadez in the hand harvest of sweet potatoes in North Carolina in 2017

the two named plaintiffs and those other H-2A workers the Defendant Valadez furnished to the Fann defendants pursuant to the terms of the H-2A certification that Defendant Valadez obtained under 20 C.F.R. §§ 655.132(a)-(b) and the H-2A Clearance Order that is copied and attached to this complaint marked as Plaintiffs' Exhibit B attached.

15.     For all of 2017, the Fann Defendants had a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the named plaintiffs and the work of all workers with H-2A visas who performed any work in August, September, and/or October 2017 for either the Fann Defendants, defendant Valadez, or both in the hand harvest of sweet potatoes on real property owned or controlled by the Fann defendants, and had a valid Federal Employer Identification Number.

16.     Defendants Kenneth A. Fann, Teresa W. Fann, and William Kenneth Fann ("Individual Fann Defendants") or their agents all personally participated in the day-to-day operation of Fann Farms. Upon information and belief, all of the Individual Fann Defendants or their agents and defendant Valadez and his agents were physically present from time to time in the fields owned, operated or controlled by Fann Farms and provided verbal and non-verbal guidance and instructions to one or more of the named Plaintiffs, their supervisors, and/or the H-2A workers that the named Plaintiffs seek to represent in this action.

17.     At all times relevant to this Complaint, the Fann Defendants or their agents and defendant Valadez or his agents personally hired, supervised, disciplined and paid the named Plaintiffs and members of the proposed NCWHA class and the members of the proposed FLSA collective action.

18.     Either personally and/or through their personal agents and employees, the Individual Fann Defendants and defendant Valadez all personally directed, controlled, and supervised the work

of the named Plaintiffs as part of their regular involvement in the day-to-day operations of Fann Farms and defendant Valadez. Either personally and/or through their personal agents and employees, the Individual Fann Defendants all directed, controlled, and supervised the work of the H-2A workers at Fann Farms that Fann Farms directly employed and the work of the H-2A workers furnished to Fann Farms by Defendant Valadez to perform corresponding employment in the hand harvest of sweet potatoes as part of their regular involvement in the day-to-day operations of Fann Farms and defendant Valadez on real property owned or controlled by Fann Farms.

19. The registered agent for service of process on the Defendant corporate entity Fann Farms, Inc. is defendant Kenneth A. Fann, 220 Oscar Tate Road, Salemburg, North Carolina 28385-8646.

**Defendant Valadez**

20. At all times relevant to this action, defendant Francisco Valadez, Jr. resided and continues to reside, did business and continues to do business at 1345 Preston Road, Smithfield, North Carolina 27577 in Johnston County, North Carolina.

21. Pursuant to 20 C.F.R. §§ 655.132(a)-(b) in August, September, October, and/or November 2017, Francisco Valadez, Jr. ("Defendant Valadez") employed and furnished to the Fann defendants the named Plaintiffs and the members of the proposed NCWHA class and FLSA collective action within the meaning of N.C. Gen. Stat. § 95-25.2(3) and (5) and 29 U.S.C. §§ 203(d) and 203(g), and jointly employed them together with the Fann defendants within the meaning of 29 C.F.R. § 791.2(a) to harvest sweet potatoes by hand for both defendant Valadez and the Fann Defendants on real property owned or controlled by the Fann defendants.

22. As defined by the H-2A regulations, 20 C.F.R. §§ 655.103(b) and 655.1300(c), in or about August, September, October, and/or November, 2017, Defendant Valadez was an employer

of the H-2A workers that he furnished to the Fann Defendants pursuant to 20 C.F.R. § 655.132(a)-(b)(2010) and, along with the Fann Defendants, jointly employed the two named plaintiffs and the members of the proposed NCWHA class and FLSA collective action to harvest sweet potatoes by hand for both Defendant Valadez and the Fann Defendants on real property owned or controlled by the Fann Defendants.

23. For all of 2017, defendant Valadez had a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the named plaintiffs and the work of all workers with H-2A visas who performed any work in August, September, October, and/or November 2017 for either the Fann Defendants, defendant Valadez, or both in the hand harvest of sweet potatoes on real property owned or controlled by the Fann defendants, and had a valid Federal Employer Identification Number.

24. Either personally and/or through his personal agents and employees, Valadez directed, controlled, and supervised the work of the two named plaintiffs and all H-2A workers whom defendant Valadez furnished to the Fann defendants to perform work exclusively for Fann Farms in the fields of Fann Farms.

**Plaintiffs**

25. At all times relevant to this Complaint, Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo were and are citizens of Mexico who permanently reside in a colonia located in or near Tamazunchale in the state of San Luis Potosí in the Republic of Mexico who were jointly employed by all of the Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1).

26. At all times relevant to this Complaint, Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo who were also jointly employed by all of the Defendants within the meaning of 20 C.F.R. §§ 655.103(b) and 1300(c) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1). .

27. In and during 2017, all defendants controlled the manner and means by which the two named plaintiffs and the H-2A workers accomplished their work for the defendants, provided the tools and equipment needed to perform the work for the defendants, and determined when and how long the H-2A workers worked for the defendants. In 2017, the work performed by the named plaintiffs and their co-worker H-2A workers was part of the regular business of the Defendants, and was performed at the farming operations owned by the Fann Defendants for which defendant Valadez furnished to the Fann defendants the plaintiffs and the H-2A workers to harvest sweet potatoes by hand on land owned or controlled by the Fann defendants.

28. At all times relevant to this Complaint in 2017, all of the H-2A workers for whom the Fann defendants obtained H-2A visas pursuant to the clearance order attached to this complaint marked as Plaintiffs' Exhibit A and all of H-2A workers for whom defendant Valadez obtained H-2A visas pursuant to the clearance order application attached to this complaint copied and attached to this complaint marked as Plaintiffs' Exhibit B that defendant Valadez furnished to the Fann defendants to hand harvest sweet potatoes on land owned or controlled by the Fann defendants were jointly employed by Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4), 29 U.S.C. §§ 203(d) and 203(g), and 29 C.F.R. § 791.3.

29. At all times relevant to this Complaint in 2017, all of the H-2A workers for whom the Fann defendants obtained H-2A visas pursuant to the clearance order attached to this complaint marked as Plaintiffs' Exhibit A and all of H-2A workers for whom defendant Valadez

obtained H-2A visas pursuant to the clearance order application attached to this complaint marked as Plaintiffs' Exhibit B that defendant Valadez furnished to the Fann defendants to hand harvest sweet potatoes on land owned or controlled by the Fann defendants were also jointly employed by Defendants within the meaning of 20 C.F.R. §§ 655.103(b) and 655.1300(c).

## FACTUAL ALLEGATIONS

### Hiring and Paying For H-2A Workers

30. For the 2017 agricultural season, the Fann Defendants directly hired, employed, supervised the H-2A workers to hand harvest sweet potatoes that are described in the clearance order that is copied in Plaintiffs' Exhibit A attached, and also used crewleader Valadez to furnish, hire, and supervise the named plaintiffs and the H-2A workers that are described in the clearance order that is copied in Plaintiffs' Exhibit B attached that defendant Valadez and the Fann defendants jointly employed to hand harvest sweet potatoes on land that was owned and controlled by the Fann defendants.

31. As the joint employers of the named plaintiffs and those same H-2A workers in 2017, the Fann Defendants and defendant Valadez assumed and performed the duty to keep payroll records and/or collect the information necessary to keep payroll records for the work performed by those same H-2A workers, to write the payroll checks for those H-2A workers that for those same H-2A workers, and to provide housing for the named plaintiffs and those same H-2A workers who traveled from Mexico to harvest sweet potatoes by hand for the Fann Defendants.

32. Throughout the 2017 agricultural season in North Carolina, upon information and belief, the Fann defendants and defendant Valadez had a close working relationship and were not completely disassociated with respect to the employment of the named plaintiffs and those same H-2A workers. In 2017, the Fann defendants and defendant Valadez exercised significant control over

the day to day operations of the Fann defendants and defendant Valadez, and over how the named

plaintiffs and those same H-2A workers performed their work in 2017.

33. At all times relevant to this action in 2017, the Fann defendants both represented and

permitted it to be represented that the defendant Valadez was an agent of Fann Farms.

34. In 2017, as a condition of, an incident of and necessary to their employment or

joint employment in 2017 in the hand harvest of sweet potatoes by the Fann defendants and

defendant Valadez, plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo, and those same

H-2A workers were required to pay a number of expenses in order for the named plaintiffs and

those H-2A workers to obtain their visas and travel from Mexico to North Carolina to work for the

Fann defendants and defendant Valadez in the hand harvest of sweet potatoes in 2017 on land that

was owned or controlled by the Fann defendants.

35. Among those expenses, named plaintiffs Jaime Hernandez-Campos and Leodegario

Cruz-Trejo each paid $4625 Mexican pesos to Banorte for transfer to the U.S. Consulate to pay the

U.S. Consulate for their H-2A visa fees, another $500 Mexican pesos to a private bus company for

the plaintiffs' trip from Monterrey, Mexico to Nuevo Laredo, Mexico, an additional $100

Mexican pesos to Miguel Patricio Sebastian, an agent of defendant Valadez, for the plaintiffs'

transportation from the workers' hotel in Monterrey to the U.S. Consulate office, and an

additional $1000 Mexican pesos to a private bus company for the plaintiffs' transportation from

Tamazunchale to Monterrey. The named plaintiffs also spent three nights at a hotel in Monterrey,

at the cost of about $700 Mexican pesos each night for the time period that they were required to

wait in Monterrey for the U.S. Consulate to conduct their H-2A visa interview.

36. In 2017, the H-2A workers other than the named plaintiffs that are described in

paragraph 34 above also were required to pay the same or similar amounts as those described in

paragraph 35 above for the same categories of expenses as a condition of, an incident of and necessary to their employment or joint employment in 2017 in the hand harvest of sweet potatoes by the Fann defendants and defendant Valadez.

37. Defendant Valadez and the Fann defendants did not reimburse the named plaintiffs and the H-2A workers described in paragraphs 34-36 above for the de facto wage deductions and expenses described in paragraphs 34-36 above at any time in 2017 or thereafter.

**H-2A Clearance Orders**

38. An agricultural employer or labor contractor in the United States may import H-2A workers if the U.S. Department of Labor ("USDOL") certifies that there are not enough domestic workers to perform the job and that the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

39. Employers requesting H-2A workers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.122, 653.501, and 655.121(a)(3). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. 20 C.F.R. § 655.122(a).

40. Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed. The employer must provide a copy of the work contract establishing those terms and conditions to both the H-2A workers and workers engaged in corresponding employment. 29 C.F.R. § 655.103(b).

41.     To receive H-2A workers, housing meeting the applicable housing standards must be provided at no cost to H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day.  20 C.F.R. §§ 655.122(d) and 655.1306(b)(6).

42.     An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

43.     On June 23, 2017, Valadez submitted the original of Plaintiffs'' Exhibit B attached - Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order"),  an application to the U.S. Department of Labor Employment and Training Administration,  for permission to bring in up to 138 foreign H-2A workers from August 24 to November 22, 2017 ("June 23, 2017 Clearance Order").  USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed defendant Fann Farms as only one of three places of employment.

44.     On February 24, 2017, Fann Farms, Inc. and defendant William Kenneth Fann submitted a Clearance Order for permission to bring in up to 18 foreign H-2A workers from May 4 to November 22, 2017 ("February 24, 2017 Clearance Order").  USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Fann Farms, Inc. as the only place of employment.

45.     Each of the Clearance Orders filed by the Fann defendants and defendant Valadez provided a job description and wage rates for each crop activity.  For the hand harvest of sweet potatoes the June 23, 2017 and February 24, 2017 Clearance Orders specified that the named

plaintiffs and the H-2A workers employed and/or furnished by the Fann defendants and defendant Valadez to perform that work would be paid on a piece rate basis of $11.27/hour or $.50 per bucket, whichever was higher.

46. Pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), the wage rates that are described in the June 23, 2017 and February 24, 2017 Clearance Orders are the employment practices and policies with regard to promised wages and the day and place for payment of those promised wages that defendant Valadez and the Fann Defendants disclosed to the named plaintiffs and the members of the NCWHA class and the FLSA collective action that the named plaintiffs seek to represent in this action.

47. In 2017, defendant Valadez only paid $.45 per bucket of sweet potatoes harvested regardless of the number of hours worked so that the named plaintiffs and those H-2A workers whom defendant Valadez furnished to the Fann defendants did not receive at least $11.27 per hour for all hours worked in the hand harvest of sweet potatoes on land owned or controlled by the Fann defendants. They also did not receive $.50 per bucket of sweet potatoes harvested in 2017 on land owned or controlled by the Fann defendants.

48. In 2017, when defendant Valadez only paid $.45 per bucket of sweet potatoes harvested regardless of the number of hours worked so that the named plaintiffs and those H-2A workers whom defendant Valadez furnished to the Fann defendants and jointly employed with those same defendants did not receive at least $11.27 per hour for all hours worked in the hand harvest of sweet potatoes on land owned or controlled by the Fann defendants, defendant Valadez and the Fann defendants failed to pay all wages when due in violation of N.C.Gen.Stat. § 95-25.6.

49. In 2017, when defendant Valadez only paid $.45 per bucket of sweet potatoes to the named plaintiffs and those H-2A workers whom defendant Valadez furnished to the Fann

defendants and jointly employed with those same defendants for those workweeks when the named plaintiffs and those same H-2A workers did receive at least $11.27 per hour for all hours worked, defendant Valadez and the Fann defendants failed to pay all wages when due in violation of N.C.Gen.Stat. § 95-25.6.

**Joint Employment**

50. Upon information and belief, in 2017, the Fann defendants paid defendant Valadez a piece rate based on the number of units of sweet potatoes harvested by the named plaintiffs and members of the crew of H-2A workers furnished to the Fann defendants by defendant Valadez.

51. Upon information and belief, in 2017, defendant Valadez did not and do not have sufficient monetary resources on deposit in any financial institution to pay the wages owed for any one workweek's wages that are payable to the H-2A workers he furnished to the Fann Defendants until such time as defendant Fann Farms has paid defendant Valadez for that workweek's work.

52. In 2017, the named plaintiffs and the H-2A workers that defendant Valadez furnished to the Fann defendants to do hand harvest work in sweet potatoes performed work that was integral to the Fann defendants' agricultural operation, and that the Fann defendants directly also employed other H-2A workers to do in 2017. Upon information and belief, all of the Plaintiffs and H-2A workers' work was performed on land that was owned or controlled by one or more of the Fann defendants.

53. Upon information and belief, the Fann defendants and defendant Valadez have an arrangement between themselves to share the services of their employees, and do interchange employees to perform various tasks.

54. In 2017, upon information and belief, one or more of the Fann defendants or their direct agents assigned all H-2A workers described in Plaintiffs' Exhibit A attached, the named

Plaintiffs, and H-2A workers described in Plaintiffs' Exhibit B that defendant Valadez furnished to the Fann defendants to harvest particular sweet potato fields and oversaw all sweet potato field work.

55. Upon information and belief, the Fann Defendants and defendant Valadez jointly decide on the start and stop times for the H-2A workers' work, and decide which days the H-2A workers will work. The Fann Defendants also decide on the start and stop times for the Plaintiffs and the members of the proposed NCWHA class and the members of the FLSA collective action, and decide which days they will work.

56. Upon information and belief, the Fann Defendants gave instructions to defendant Valadez regarding the methods and techniques the H-2A workers were to use in planting, harvesting, and packing the crops.

57. The Fann Defendants provide the sweet potato bins and tractors used by the H-2A workers and the Plaintiffs and members of the proposed NCWHA class and the proposed FLSA collective action.

58. The Fann Defendants own at least some of the labor camps in which the H-2A workers have been housed during the time period relevant to this lawsuit, fulfilling a necessary requirement for defendant Valadez to be able to receive H-2A workers. In 2017, one or more of the Fann Defendants registered at least one migrant camp with the NC Department of Labor, for occupancy by all of the H-2A workers that defendant Valadez furnished to the Fann defendants. Upon information and belief, the Fann Defendants also provided and provides repairs and maintenance for these labor camps and does not request reimbursement from defendant Valadez for the cost of the housing, or the repairs and maintenance of that housing.

59. Upon information and belief, all of the sweet potato, the tobacco barns, greenhouses, and packinghouses where the H-2A workers, the Plaintiffs, and the members of the proposed NCWHA class and the proposed FLSA collective action worked during the time period relevant to the lawsuit were and continue to be owned by the Fann Defendants.

60. Upon information and belief, all of the tractors, transplanters, forklifts, and other farm machinery used by H-2A workers, the Plaintiffs, and members of the proposed NCWHA class and the proposed FLSA collective action working at Fann Farms are owned by Fann Farms, Inc.

61. Upon information and belief, in 2017, defendant Valadez, one or more of the Fann Defendants, or, at the request of defendant Valadez and/or one or more of the Fann Defendants, one or more members of the proposed NCWHA class action and the FLSA collective action worked keeping track of the number of buckets picked by the named plaintiffs and the H-2A workers in the fields that were owned or controlled by the Vann Defendants at various times during the time period relevant to this lawsuit.

62. Harvesting sweet potatoes was and is an integral part of the Fann Defendants' business of growing, marketing, and selling sweet potatoes.

**NCWHA CLASS ALLEGATIONS**

63. Paragraphs 1 through 62 are realleged and incorporated herein by reference.

64. The named plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.22, and 95-25.22(a1) ("NCWHA Class") against all Defendants. The NCWHA Class consists of all H-2A workers who were employed or jointly employed by one or more of the Defendants to perform work at Fann Farms in the hand harvest of sweet potatoes at any time in 2017. The

NCWHA violations occurred when one or more of the Defendants failed to pay the named Plaintiffs and members of the NCWHA Class all wages when due for all hours worked:

(a) on or before their first regular payday for the first workweek in 2017 that those workers were employed or jointly employed to perform any such work by one or more of the defendants at the AEWR rate and the minimum rate described in 29 U.S.C. § 206(a);

(b) during each workweek in 2017 when the gross amount of wages paid for that workweek was not equal to or greater than the product of the total number of hours actually worked in that same workweek and the AEWR of $11.27 per hour, **or** the total number of buckets of sweet potatoes that each worker harvested at $.50 per bucket, **whichever amount was greater**.

65. Joinder of all class members for the proposed NCWHA Class would be impracticable, if not impossible, based in part upon the fact that the named plaintiffs and all of the proposed class are migrant nationals of the Republic of Mexico and do not speak English. Upon information and belief, the number of individuals in the proposed NCWHA Class would exceed 75 people.

66. The questions of law or fact which are common to the members of the NCWHA Promised Wage Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are:

(a) Whether the Fann Defendants and the defendant Valadez were joint employers of the named plaintiffs and the H-2A workers that performed the sweet potato harvesting work in 2017 that is described in Plaintiffs' Exhibit A and Plaintiffs' Exhibit B attached on land that was owned or controlled by the Fann Defendants?

(b) Because of the *de facto* wage deductions described in paragraphs 34-37, inclusive, above in this Complaint that occurred on or before their first regular payday for the first workweek in 2017 that those workers were employed or jointly employed to perform any sweet potato harvesting work, did the defendants fail to compensate the named plaintiffs and those other class members at the AEWR rate and the minimum rate described in 29 U.S.C. § 206(a)?

(c) Were there workweeks during 2017 when the gross amount of wages paid by one or more of the defendants for the harvesting of sweet potatoes for that workweek were not equal to or greater than the product of the total number of hours actually worked in that same workweek and the AEWR of $11.27 per hour, **or** the total number of buckets of sweet potatoes that each worker harvested at $.50 per bucket, **whichever amount was greater**?

67. The claims of Plaintiffs are typical of the claims of the NCWHA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs they each have a NCWHA claim of the type described in paragraphs 66(b)-(c) above that turns in part on the status of the Fann defendants and defendant Valadez as joint employers under 29 C.F.R. § 791.3 and the NCWHA.

68. Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Class members.

69. Plaintiffs will fairly and adequately represent the interests of the NCWHA Class.

70. The undersigned counsel Robert J. Willis is an experienced litigator who has been named counsel for many class actions involving similar claims to those raised in this action.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

71. Pursuant to the collective action procedure specified at 29 U.S.C. §216(b) and the Second Claim for Relief, the named Plaintiffs file this collective action for each similarly

situated person who was jointly employed by the Fann defendants and defendant Valadez under the H-2A program at any time in 2017 to hand harvest sweet potatoes on land that was owned or controlled by the Fann defendants.

72. This FLSA collective action for the Second Claim for Relief is on behalf of those H-2A workers whom defendant Valadez and the Fann defendants jointly employed for at least the first workweek when the workers who were employed or furnished to harvest sweet potatoes in 2017 during the time periods covered by each H-2A job order that is attached to this complaint.

73. As a term and condition of that joint employment of those same H-2A workers under the H-2A program by the Fann defendants and defendant Valadez, the named plaintiffs and those other H-2A workers were required to pay the de facto wage deductions that are described in paragraphs 34-37, inclusive, above of this Complaint, thereby reducing the weekly wages that those workers received free and clear for the work they performed in the first workweek in North Carolina below the minimum wage required by 29 U.S.C. §§ 206(a) and 216(b).

74. The *de facto* wage deductions referred to in ¶23 above were illegal under 20 C.F.R. §§ §§ 655.122(m), 655.122(p)(1) and 655.135(j)(2010), 29 C.F.R. §§ 531.2, 531.3(b), 531.3(d)(1), 531.29, 531.32(a), 531.32(c), and 531.35 as to what deductions and charges are permitted to wages paid.

75. The Fann defendants and defendant Valadez jointly or severally employed both named Plaintiffs and/or jointly and severally employed more than 75 other alien workers under the H-2A program to perform agricultural labor in the hand harvest of sweet potatoes in at least the first workweek after those same named Plaintiffs and their other H-2A co-workers arrived in

North Carolina after their transportation directly from Mexico to North Carolina.

76. This collective action by similarly situated persons under 29 U.S.C. §216(b) is based upon the failure of the defendants to pay free and clear to all named Plaintiffs and the members of this FLSA collective action on or before their regular payday in an amount equal to at least $7.25/hour for each hour or part of hour worked by those same employees in their first workweeks for the defendants as a result of the *de facto* wage deductions described in paragraphs 34-37, inclusive, above of this Complaint as a condition of employment with the defendants during 2017.

77. As a result of this failure of the defendants to pay wages free and clear at the minimum rate required by 29 U.S.C. § 206(a) in the manner required by law, the wages that those same named Plaintiffs and the members of the collective action received receive free and clear from the defendants on or before their regularly scheduled payday for at least the first workweek that those same named Plaintiffs and the members of the collective action performed work in North Carolina for the defendants were less than the minimum wage required by 29 U.S.C. §206 on a weekly basis for each hour or part of an hour of actual work that those same named Plaintiffs and each such similarly situated person was jointly or severally employed by the defendants in at least the first workweek of each agricultural season specified in the job orders under which each such person was so employed.

**FIRST CLAIM FOR RELIEF (FLSA)**

78. Paragraphs 1 through 77 above are realleged and incorporated herein by reference.

79. The named defendants did not pay the named plaintiffs and the members of the FLSA collective action that are described in ¶¶71-77 above at the rate required by 29 U.S.C. § 206(a) for the work described in ¶¶ above of this Complaint based upon the Fann defendants' *de facto* wage deductions from the wages due the named plaintiffs and the members of the FLSA

collective action as a term and condition of employment and the defendants' failure to reimburse as alleged in ¶37 above for the de facto wage deductions that are described in ¶¶34-37, inclusive, above when those expenditures were primarily for the benefit of the defendants.

80. As a result of these actions of the named defendants in violation of the rights of those same named plaintiffs and the members of the FLSA collective action that are described in ¶¶71-77 above, those same named plaintiffs and the members of that same FLSA collective action have suffered damages in the form of unpaid wages at the minimum rate required by the FLSA and back wages and liquidated damages may be recovered, jointly and severally against all defendants, under 29 U.S.C. §§ 206(a) and 216(b).

## SECOND CLAIM FOR RELIEF (NCWHA)

81. Paragraphs 1 through 80 above are realleged and incorporated herein by reference.

82. Defendants failed to pay Plaintiffs and each member of the NCWHA Class at least the promised wage for each hour or part of an hour that Plaintiffs and members of the NCWHA Class worked for Defendants for each workweek in which they were required to pay Plaintiffs and the members of that Class the AEWR, in violation of N.C.G.S. § 95-25.6.

83. Defendants failed to pay Plaintiffs and each member of the NCWHA Class at least the promised wage for each bucket of sweet potatoes that Plaintiffs and members of the NCWHA Class harvested for Defendants for each workweek in which they were required to pay Plaintiffs and members of that Class at least $.50 per bucket of sweet potatoes harvested, in violation of N.C.G.S. § 95-25.6.

84. For the first workweek in which the defendants jointly or severally employed the named Plaintiffs and the members of the NCWHA class to perform any work in North Carolina,

the defendants failed to pay Plaintiffs and each member of the NCWHA Class at least the promised wage at both the AEWR rate and rate described in 29 U.S.C. § 206(a) for each hour or part of an hour that Plaintiffs and members of the NCWHA Class worked in that first workweek for Defendants based upon the de facto wage deductions described in paragraphs 34-47, inclusive, above, in violation of N.C.G.S. § 95-25.6.

85. As a result of these actions of the Defendants in violation of their rights under N.C.G.S. §§95-25.6, Plaintiffs and the members of the NCWHA Class have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request that the Court:

(a) Grant a jury trial on all issues so triable;

(b) Pursuant to 29 U.S.C. § 216(b), certify named plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo as representatives of the FLSA collective action alleged in Paragraphs 71-77above with respect to the First Claim for Relief of this Complaint;

(c) Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify named Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo as representatives of the NCWHA class alleged in Paragraphs 63 through 70 above with respect to the Second Claim for Relief of this Complaint;

(d) Enter judgment against Defendants Fann Farms, Inc., William Kenneth Fann, Kenneth A. Fann, Teresa W. Fann, and Francisco Valadez, Jr., jointly and severally, and in favor of named Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo, and each member of the FLSA Collective Action defined in Paragraphs 71 through 77 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount

allowed by law under the First Claim for Relief;

(e) Enter judgment against Defendants Fann Farms, Inc., William Kenneth Fann, Kenneth A. Fann, Teresa W. Fann, and Francisco Valadez, Jr., jointly and severally, and in favor of named Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo and each member of the NCWHA Class defined in Paragraphs 63 through 70 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the Second Claim for Relief;

(f) Enter judgment for attorney's fees and costs against Defendants Fann Farms, Inc., William Kenneth Fann, Kenneth A. Fann, Teresa W. Fann, and Francisco Valadez, Jr., jointly and severally, and in favor of named Plaintiffs Jaime Hernandez-Campos and Leodegario Cruz-Trejo and each member of the FLSA collective action defined in Paragraphs 71 through 77 above and each member of the NCWHA class defined in Paragraphs 63 through 70 above pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(g) Award such other relief as may be just and proper in this action.

Respectfully submitted, this the 17th April, 2018.

LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY: /s/Robert J. Willis
Robert J. Willis, Esq.
Attorney at Law
NC Bar #10730
(mailing address)
P.O. Box 1828
Pittsboro, NC 27312
(919) 821-9031 telephone
(919) 821-1764 facsimile
Counsel for Plaintiffs
rwillis@rjwillis-law.com

#176

Plaintiffs' Exhibit A

**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: October 31, 2015

RECEIVED FEB 24 2017 AGRICULTURAL SERVICES

**Agricultural and Food Processing Clearance Order ETA Form 790**
**Orden de Empleo para Obreros/Trabajadores Agrícolas y Procesamiento de Alimentos**

**(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)**
**(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)**

1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ):

FANN FARMS, INC.
220 Oscar Tate Rd
Salemburg, NC 28385

a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador: [redacted]

b) Telephone Number / Número de Teléfono: (910) 564-2811

c) Fax Number / Número de Fax: (910) 564-4505

d) E-mail Address / Dirección de Correo Electrónico:
fannfarms@gmail.com

**Nos. 4 through 8 for STATE USE ONLY**
**Números 4 a 8 para USO ESTATAL**

4. SOC (O*NET/OES) Occupational Code / Código Industrial: 45-2092

a. SOC (ONET/OES) Occupational Title / Titulo Ocupacional: Farmworker Laborer

5. Job Order No. / Num. de Orden de Empleo: 10656320

6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radico la oferta (incluya el número de teléfono): P.O. Box 27625 Raleigh, NC 27611 919/814-0544

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su linea directa). W.L. Grant

7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo: 2/24/2017

8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo: 8/13/17

2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo:
225 Oscar Tate Rd., Salemburg, Sampson County, NC 28385

From Dunn, NC: US 421 S about 17 miles; right onto NC 242; travel 5 miles; left onto Tyndall Bridge Rd; immediate right onto Oscar Tate Rd; farm office is ¼ mile on right.

Fixed-site employer. Employer owns and/or controls the worksite.

9. Anticipated Period of Employment / Período anticipado o previsto de Empleo:

From / Desde: 05/04/2017 To / Hasta: 11/22/2017

10. Number of Workers Requested / Número de Trabajadores Solicitados: 18

11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 35

Sunday / Domingo 0
Monday / Lunes 6
Tuesday / Martes 6
Wednesday / Miércoles 6
Thursday /Jueves 6
Friday / Viernes 6
Saturday / Sábado 5

3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda:
205 Oscar Tate Rd, Salemburg, Sampson County, NC 28386

From Dunn, NC: US 421 S about 17 miles; right onto NC 242; travel 5 miles; left onto Tyndall Bridge Rd; immediate right onto Oscar Tate Rd; housing on left behind tobacco barns.

a) Description of Housing / Descripción de la vivienda: Dormitory (Cap. 60)

12. Anticipated range of hours for different seasonal activities: / Rango previsto de horas par alas diferentes actividades de la temporada:
7 a.m. to 3 p.m.

13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador: Yes / Si ☐ No ■

14. Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Workers will buy their own groceries. Once a week, the employer will provide (on a voluntary basis) transportation to assure workers access to stores where they can purchase groceries. These board arrangements apply only to workers living in employer-provided housing.

*Empleador proporcionara instalaciones de cocina gratis y conveniente para los trabajadores viviendo en la vivienda proporcionada para que los trabajadores pueden prepararse su propia comida. Tranporte gratuito en un vehículo sera proporcionado al menos una vez cada semana por los trabajadores para comprar sus propios alimentos. Estos arreglos applicar solamente a trabajadores que viven en la vivienda provistos por el empleador.*

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

All local and intrastate applicants may be referred directly to the employer for interview as follows: Consultants should fax or email the referral card containing the referral candidate's name, address and telephone number to employer first, then instruct the applicant to call the employer directly to schedule a personal interview. Hours for referral candidate to call the employer are 9:00 a.m. to 1:00 p.m., Monday-Friday, excluding all federal holidays. Referral candidates MUST call the employer and schedule an interview appointment prior to coming. No referral candidate is to go to the employer's address or work site without a scheduled interview. All interstate applicants interested in this job offer should first contact the North Carolina Department of Commerce, Division of Workforce Solutions – Ag Services in Raleigh, North Carolina at (919) 814-0544 prior to contacting the employer. Workers should be fully apprised by the local employment office of the terms, conditions and nature of employment prior to referral. Workers recruited against the job offer from within normal commuting distance will not be provided housing, subsistence or transportation. All applicants must be able (with or without reasonable accommodation), willing, and qualified to perform all the work described, and must be available for the entire anticipated period of employment. There is no offer or guarantee to be recalled for future employment except for the required solicitation of certain former U.S. workers in compliance with 20 CFR § 655.153.

Employer Email: fannfarms@gmail.com
Employer Fax # 910-564-4505
Employer Voice # 910-564-2811

16. Job description and requirements / Descripción y requisitos del trabajo:

Cultivate and harvest corn, cotton, peanuts, sweet potato, pickling cukes, and flue-cured tobacco. Load and unload corn, peanuts, sweet potato, cukes, cotton, and flue-cured tobacco. Pull weeds/chop: Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe. Prolonged walking, standing, bending, stooping, and reaching. Job is outdoors and continues in all types of weather. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 75 lbs. to shoulder height repetitively throughout the workday and able to lift and carry 75 lbs. in field. Must not hinder another worker's productivity. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination. Requires one month verifiable farmworker experience in the crop activities listed. (Continued on ETA 790 Attachments – Item 16)

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ■ No ❑ If yes, number of months preferred: / Si es así, numero de meses de experiencia: ___1___

2. Check all requirements that apply:

❑ Certification/License Requirements / Certificación/Licencia Requisitos
❑ Driver Requirements / Requisitos del conductor
❑ Employer Will Train / Empleador entrenará o adiestrará
❑ Extensive Sitting / Estar sentado largos ratos
■ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
■ Lifting requirement / Levantar o Cargar __75____lbs./libras
■ Repetitive Movements / Movimientos repetitivos
❑ Criminal Background Check / Verificación de antecedentes penales
■ Drug Screen / Detección de Drogas
■ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
■ Extensive Walking / Caminar por largos ratos
■ Frequent Stooping / Inclinándose o agachándose con frecuencia
❑ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities / Cultivos | Hourly Wage / Salario por Hora | Piece Rate / Unit(s) / Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) / Pagos Especiales (Bono, etc.) | Deductions* / Deducciones | Yes/Sí | No | Pay Period / Período de Pago / / |
|---|---|---|---|---|---|---|---|
| Sweet potatoes | $11.27 | $0.50 per 5/8 bu. bucket | NONE | Social Security / Seguro Social | ■ | ❑ | Weekly / Semanal ■ |
| Flue-cured tobacco | $11.27 | N/A | NONE | Federal Tax / Impuestos Federales | ■ | ❑ | |
| Cotton, corn, soybeans | $11.27 | N/A | NONE | State Tax /Impuestos Estatales | ■ | ❑ | Bi-weekly/ Quincenal ❑ |
| Peanuts | $11.27 | N/A | NONE | Meals / Comidas | ❑ | ■ | |
| Pickling cucumbers | $11.27 | $0.75 per 5/8 bu. bucket | NONE | Other (specify) / Otro (especifica) | ■ | ❑ | Monthly/Mensual ❑ |
| Greenhouse work | $11.27 | N/A | NONE | | | | Other/Otro ❑ |
| Pull weeds/chop | $11.27 | N/A | NONE | | | | |

18. More Details About the Pay / Mas Detalles Sobre el Pago:

In accordance with 20 CFR § 655.122(l) governing rates of pay, the wage rate offered herein is the highest of the adverse effect wage rate, the prevailing hourly rate, the prevailing piece rate, the agreed-upon collective bargaining wage, or the federal or State minimum wage, in effect at the time work is performed for every hour or portion thereof worked during a pay period covered by the approved labor certification. If the worker's piece rate earnings for a pay period result in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate. (See ETA 790 Attachments – Section 18 for more details about the pay.)

19. Transportation Arrangements / Arreglos de Transportación

For those workers recruited outside the area of intended employment, transportation and subsistence expenses will be reimbursed by the employer in accordance with 20 CFR § 655.122(h). Inbound transportation will be reimbursed on the basis of no less (and is not required to be more than) the most economical and reasonable charges for the distance involved. The subsistence reimbursement will be the amount the employer would charge for providing the worker three meals per day of $12.09 per day or workers providing receipts will be reimbursed up to the amount authorized by the continental U.S. per diem rate of $51.00 as computed by the GSA method. Payments will be made based upon the date of publication of the H-2A Program Allowable meal charges in the Federal Register. See Item 28 for full disclosure of the terms and conditions of the transportation benefit.

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)? Yes / Si ❑ No ■

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Si," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores? Yes/Si ■ No ❑

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador: Yes/Si ■ No ❑

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores?

Yes/Si ■ No ❑

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno".) NONE/NINGUNO

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".) NONE/NINGUNO

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H–2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Sí ■ No ☐

**Employer represented by and this job order prepared by:
Andrew M. Jackson, Attorney
Andrew Jackson Law
407 College Street
Clinton, NC 28328
(910) 592-4121
Fax #590-1012
andy@jacksonlegalagworkers.com

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

FANN FARMS, INC.
By: William Kenneth Fann, Vice-President
Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

W. Kenneth Fann V.P
Employer's Signature / Firma y Título del Empleador

02/21/2017
Date / Fecha

**READ CAREFULLY**, In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

**LEA CON CUIDADO**, En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

**PUBLIC BURDEN STATEMENT**
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

**DECLARACION DE CARGA PÚBLICA**
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el numero de la sección e incluya archivos adjuntos, si es necesario.

Item 3, DISCLOSURE OF HOUSING TERMS AND CONDITIONS:

Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than thirty (30) days in advance of the date of need reflected on the attached ETA 790. Housing and utilities are provided at no cost to workers who are unable to return to their place of residence the same day. Workers recruited against this job order from within normal commuting distance will not be provided housing, subsistence, or transportation. The housing provided is group housing. In the event a female worker is hired, separate toilet, shower, and sleeping rooms will be provided by the employer. Family housing is not available and the provision of family housing is not a prevailing practice in the area of intended employment. Housing will be clean and meet applicable federal, State, and local standards. Workers will be responsible for maintaining housing in a neat, clean manner. Reasonable repair cost of damage, other than that caused by normal wear and tear, may be charged to workers found to have been responsible for damage to housing or furnishings.

Item 19, TRANSPORTATION ARRANGEMENTS:

Transportation to place of employment. If the employer has not previously advanced such transportation and subsistence costs to the worker or otherwise provided such transportation or subsistence directly to the worker by other means and if the worker completes fifty percent (50%) of the work contract period, employer will reimburse worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer to the employer's place of employment. The amount of the transportation payment will be the most economical and reasonable common carrier transportation charge for the distances involved. The amount of the daily subsistence payment shall be no less than the amount set under 20 CFR 655.173(a), which is currently $12.09 per day. These arrangements apply only to workers who are recruited outside the area of intended employment.

Transportation from last place of employment to home country. If the worker completes the work contract period, or if the employer is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker, disregarding intervening employment, departed to work for the employer. If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer must provide or pay for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The amount of the transportation payment will be the most economical and reasonable common carrier transportation charge for the distances involved. The amount of the daily subsistence payment shall be no less than the amount set under 20 CFR § 655.173(a), which is currently $12.09 per day. The employer's obligation to provide or pay return transportation and subsistence continues if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in 20 CFR § 655.135(d) with respect to referrals made after the employer's date of need. These arrangements apply only to workers who are recruited outside the area of intended employment.

Transportation between living quarters and worksite. For those workers living in housing provided or secured by the employer, employer will provide transportation between such housing and the employer's daily worksite at no cost to the worker. Such transportation will comply with all applicable federal, State and local laws and regulations, in accordance with 20 CFR § 655.122(h)(4). The use of this daily transportation is voluntary; no worker is required as a condition of employment to use the daily transportation to the worksite offered by the employer.

Transportation for commuting workers between designated daily job reporting site and daily worksite. For commuting workers not living in housing provided or secured by the employer who report to a designated daily job reporting site, the employer will provide transportation between such designated daily job reporting site and the employer's daily worksite at no cost to the worker, and return transportation from the daily work site back to the designated reporting site at no cost to the worker. Such transportation will comply with all applicable federal, State and local laws and regulations, in accordance with 20 CFR § 655.122(h)(4). The use of this daily transportation is voluntary; no worker is required as a condition of employment to use the daily transportation to the worksite offered by the employer.

**20 CFR 653.501**
**Assurances**

**INTRASTATE AND INTERSTATE CLEARANCE ORDER**

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 10 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

FANN FARMS, INC.

Employer's Name By: William Kenneth Fann, Vice-President Date: 02/21/2017

Employer's Signature W. Kenneth Fann V.P.

**Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.**

## ATTACHMENTS TO ETA 790

**§ 16, JOB DESCRIPTION AND REQUIREMENTS:**
Cultivate and harvest corn, cotton, peanuts, sweet potato, pickling cukes, and flue-cured tobacco. Load and unload corn, peanuts, sweet potato, cukes, cotton, and flue-cured tobacco. Pull weeds/chop: Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe. Prolonged walking, standing, bending, stooping, and reaching. Job is outdoors and continues in all types of weather. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 75 lbs. to shoulder height repetitively throughout the workday and able to lift and carry 75 lbs. in field. Must not hinder another worker's productivity. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination. Requires one month verifiable farmworker experience in the crop activities listed.

Greenhouse Seeding: Workers will fill trays with soil and feed full trays thru seeder. Workers will then transport seeded trays to greenhouse structure and place into float bed in an orderly manner in accordance with supervisors' instructions. Extra care must be taken not to disturb, disrupt or spill the planted seeds from the styrofoam tray cells during transport from seeder to floatbed. Tobacco seeds are extremely susceptible to disease. Therefore, each employee must exercise care and remain vigilant to ensure that their hands, clothes, and shoes are kept clean before entering the greenhouse. Greenhouse workers may be required to cleanse hands by washing in milk before handling tobacco seedlings. Workers will also work in and around greenhouses after germination doing general maintenance, clipping, fertilizing and monitoring according to supervisors' instructions.

Pickling Cucumbers: Move along row, stoop and bend to pick all cucumbers ¼ inch in diameter and larger. Discard all jumbo cucumbers (over two inches in diameter) in the row middle and place remaining cucumbers in a 5/8 bushel bucket. Carry full buckets to a nearby truck for dumping, receive ticket or token in emptied bucket and return to assigned row to continue task. Workers must "clean the vines" (pick all cucumbers of marketable size) and larger as specified by employer. Workers will be required to stay on their assigned row. Worker must be careful to avoid damaging vines, blooms and smaller cucumbers. May be required to block and thin cucumbers and perform general cultivation work and move tractors or trucks on the farm incidental to picking. It is extremely important that the workers remove and discard all cucumbers over two inches in diameter from the vine. Workers may be required to perform other duties as required by employer. Hand harvesting pickling cucumbers will be paid on a piece rate of $0.75 per 5/8 bushel. Workers must pick a minimum of five 5/8 bushel buckets per hour. Any worker who does not meet this production standard may be terminated.

Sweet potatoes: Sweet potato plant pullers will stoop, bend and kneel to pull sweet potato plants from beds, exercising care in selecting plants of appropriate size as specified by supervisor. Selected plants will be boxed in an orderly fashion in field crates and crates windrowed and loaded on trailers for transport. May ride mechanical transplanter. May walk behind transplanter to reset missing plants. Sweet potato transplanting will be paid hourly. Sweet potato harvest workers will walk along row that has been previously plowed. Workers will stoop, bend and kneel to pick up sweet potatoes using hands and fingers to dig out unexposed potatoes. Workers may grade in the field separating #1's and #2's into separated 5/8 field hampers. Canners, when harvested, will be placed into a separate bin. Damaged or diseased potatoes will not be harvested. Worker will be required to stay on assigned row. Full hampers weighing up 35 lbs. will be carried to truck row to be loaded onto truck or trailer. Workers may be required to ride mechanical harvester. Workers may be required to perform other duties as required by

the employer. Hand harvesting sweet potatoes will be paid on a piece rate of $0.50 per 5/8 bushel. Mechanical harvest work, if any, will be paid hourly.

Tobacco: Harvest workers will move into a row of mature tobacco plants. Each row may be as long as 1500 feet. The tobacco plant may be from 4 to 6 feet tall and spaced about 20 inches apart in each row. Starting at the bottom of the plant, the worker will bend over at the waist and pick the bottom two or three leaves from each plant. Staying bent over, the worker will move down the row of mature tobacco repeating the above-process. (The bottom leaves may be as low as two inches from the ground.) The worker will place the picked leaves under his arm. Once the worker has gathered an armload of leaves, he will carry it to a field sled. The leaves must be laid neatly onto the field sled. The worker then will return to the row and repeat the process. All workers must be able to distinguish ripe tobacco by observing the color of the leaves. Care must be exercised to prevent breaking of the plants. Workers must be able to move quickly along the rows and move in unison with the field sleds. Worker may ride mechanical transplanter and mechanical harvester. Workers may walk behind transplanter to reset missing plants. Workers must remove all flowering tops and suckers from tobacco plants. Workers may assist in removing tobacco from barn, placing on sheets to be bound and loaded on trucks. Weight of sheets of tobacco may be 300 lbs. Workers are required to work in fields when tobacco leaves are wet with dew or rain. Worker should be able to stand for prolonged periods of time to prime (pull) leaves which are from two to ten inches from the ground. Workers may be exposed to noxious plants and insects. Temperatures in tobacco fields during working hours may range from 40 to over 100 degrees Fahrenheit. Workers must be able to perform the job as described above. Workers may be required to perform other duties as required by the employer. The pay rate for all tobacco work is hourly paid.

Soybeans, Corn, Peanuts, and/or Cotton: Workers will walk along rows as specified by employer and remove weeds and grass from soybean, corn, and/or cotton fields by hand or using a hoe.

Workers may be required to perform work that is incidental to farming the crops listed in the application. All other duties, if any assigned, will be those duties of Farm Worker, Diversified Crops, DOT code 407.687-010 (SOC (ONET/OES) code 45-2092.02). This is a very demanding and competitive business in which quality specifications must be rigorously adhered to. Sloppy work cannot and will not be tolerated.

All workers are required to follow common sanitary practices at all times. This is particularly important when tounching crops for human consumption. Workers are required to cleanse their hands by washing thoroughly with soap and water before entering field for harvest activities and after each break. Smoking and the use of tobacco products prohibited during working time.

Full Growing Season Commitment: The job offered requires that the worker be available for work six (6) hours per day Monday through Friday and five (5) hours on Saturday every day that work is available and for the full anticipated period of employment, even though work may be slack for a brief period of time. The worker agrees to be available for work and performed assigned tasks whenever work is available through the full anticipated period of employment. Work available is defined as, no work required on the worker's Sabbath or Federal holidays, but work is required six (6) hours per day Monday-Friday, and five (5) hours on Saturday.

The worker understands that if he abandons his employment or is terminated for cause prior to the end of the anticipated period of employment, the worker will forfeit the ¾ guarantee and reimbursement of certain transportation costs. Excessive absences and/or tardiness cannot be tolerated and may result in termination.

Daily individual work assignments, crew assignments, and location of work will be made by and at the sole discretion of the employer and/or worker's supervisor. Workers may be assigned a variety of duties in any given day and/or different tasks on different days. Workers will be expected to perform any of the listed duties and work on any crop as assigned by the employer and/or worker's supervisor.

**§ 18, MORE DETAILS ABOUT THE PAY**:

In accordance with 20 CFR § 655.122(l) governing rates of pay, the wage rate offered herein is the highest of the adverse effect wage rate ("AEWR"), the prevailing hourly rate, the prevailing piece rate, the agreed- upon collective bargaining wage, or the federal or State minimum wage, in effect at the time work is performed for every hour or portion thereof worked during a pay period covered by the approved labor certification. If the worker's piece rate earnings for a pay period result in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate.

The employer will pay the prevailing piece rate in a crop activity for which a piece rate is specified if the DOL determines that a higher piece is prevailing in the crop activity in the area of intended employment than the piece rate specified herein. In the event DOL announces a lower prevailing piece rate in a crop activity for which a piece rate is specified herein, the employer reserves the right to pay the lower prevailing piece rate as soon as it is announced by DOL. In order to assure workers fair earnings, the employer may in its discretion temporarily raise the piece rate above the offered piece rate herein or may elect to pay workers at the highest hourly rate when, in the employer's judgment, working conditions are unusually adverse. The employer will apply the prevailing hourly rate in a crop activity for which an hourly rate is specified if DOL determines that a higher hourly rate is prevailing in the crop activity in the area of intended employment other than the hourly rate specified herein. In the event DOL promulgates a new AEWR during the recruitment or work contract period which is higher or lower than the AEWR herein, the highest of the adjusted AEWR, the prevailing hourly rate, the agreed upon collective bargaining wage, or the federal or State minimum wage will become the new wage rate. In other words, the wage rate may increase or decrease during the life of this contract by DOL notification of such change. In the event the AEWR is eliminated from the H-2A program during the life of this work agreement, either administratively or legislatively, the employer reserves the right to pay the new wage rate under the new guidelines as soon as it becomes effective.

The employer will make the following deductions from the worker's wages: FICA, Medicare and income taxes as required by law; cash advances and repayment of loans; repayment of overpayment of wages to the worker; payment for articles which the worker has voluntarily purchased from the employer; long-distance telephone charges; recovery of any loss to the employer due to the worker's damage, beyond normal wear and tear, or loss of equipment or housing items where it is shown that the worker is responsible. No deduction not required by law will be made that brings the worker's hourly earnings below the higher of the federal minimum wage and State minimum wage.

The employer will not pay the worker a bonus.
Payroll periods will be weekly. On or before each payday, workers will be provided with an hours and earnings statement, which contains, at a minimum, (i) total earnings for the pay period; (ii) hourly rate and/or piece rate of pay; (iii) hours of employment offered to the worker (showing offers in accordance with the 3/4ths guarantee separate from any hours offered over and above the guarantee); (iv) hours actually worked by the worker; (v) itemization of all deductions; (vi) if piece rates are used, the units produced daily; (vii) beginning and ending dates of the pay period; and, (viii) the employer's name, address and FEIN, all in compliance with 20 CFR § 655.122(k), and all federal and State requirements.

Employer guarantees to offer workers employment for a total number of work hours equal to a least three-fourths (3/4ths) of the workdays of the total period beginning with the first workday after the arrival of

the worker at the place of employment and the worker is ready, willing, able and eligible to work, and ending on the expiration date specified in the work contract or any extensions thereof or upon the termination of this employment as specified hereinbelow. Details of the 3/4ths guarantee are outlined in 20 CFR § 655.122(i). For purposes of this guarantee, a "workday" consists of six hours daily Monday through Friday and five hours on Saturday. Workers may be offered work on federal holidays and on their Sabbath but will not be required to do so. Pursuant to 20 CFR § 655.122(n), workers who voluntarily abandon employment or are terminated for cause, and where the employer provides timely notification to the NPC and DHS, will relieve the employer for subsequent transportation and subsistence costs and the 3/4ths guarantee. The employer may terminate the work contract where the services are no longer required for reasons beyond the employer's control due to fire, weather, or other Act of God. In the event of contract impossibility, the employer will fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract to the time of its termination, the employer shall perform its obligations prescribed at 20 CFR § 655.122(o)(1-3). Reasonable efforts will be made to transfer a worker terminated for contract impossibility to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable.

All requests for leave of absence must be in writing. All absences will be counted towards hours offered for the purpose of computing the 3/4 guarantee.

Employer will provide a worker referred through the Interstate Clearance System a full week's work for the week beginning with the anticipated date of need in accordance with 20 CFR 653.501(d)(2)(v)(A), unless employer has amended the date of need by notifying the local order-holding office no later than ten (10) days before the date of need. If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the Interstate Clearance System the first week's wage guarantee starting with the originally anticipated date of need. If the worker fails to notify the order-holding office of his continuing interest in the job no sooner than nine (9) working days and no later than five (5) working days before the date of need, the worker will be disqualified from the above-mentioned guarantee. The employer may require the worker to perform alternative work if the guarantee cited in this section is invoked. Alternative work will be general farm labor and farm maintenance activities that are incidental to farming the crops listed in the application.

The amount of the first week's wage guarantee at the AEWR currently in effect is 35 hours x $11.27 = $394.45.

**OTHER CONDITIONS OF EMPLOYMENT, CLARIFICATIONS, AND ASSURANCES:**

REQUIRED ASSURANCES: The employer agrees to abide by the regulations at 20 CFR §§ 655.135 and 653.501. The employer adopts and incorporates by reference all required assurances set out at 20 CFR § 655.122. To the extent there is any discrepancy between this Form ETA 790 and Attachments, the required assurances statement attached to this Form ETA 790, or the Immigration and Nationality Act (the "INA") and any applicable H-2A regulations, then the INA and the applicable H-2A regulations shall always control.

ASSURANCE OF CONTINUOUS WORKER'S COMPENSATION INSURANCE COVERAGE: Pursuant to 20 CFR 655.122(e)(1), the employer will provide worker's compensation insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Prior to labor certification determination, the employer will provide proof of worker's compensation insurance coverage to the certifying officer in accordance with 20 CFR 655.122(e)(2). In the event that the current coverage will expire during the period of need reflected on attached ETA 790, Item 9, the employer gives written assurance of its intent to renew and maintain continuous coverage for the entire dates of need, as evidenced by the signed and dated ETA 790 to which this assurance is attached.

CONDITION OF EMPLOYMENT: All applicants must be able (with or without reasonable accommodation), willing, and qualified to perform all the work described, and must be available for the entire anticipated period of employment. The job offered is temporary and full-time only for the stated anticipated period of employment and any approved extension thereof. There is no offer or guarantee to be recalled for future employment except for the required solicitation of certain former U.S. workers in compliance with 20 CFR § 655.153.

EARNINGS RECORDS: Accurate and adequate earnings records will be kept in accordance with 20 CFR § 655.122(j). All records will be available for inspection and transcription by the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker as evidenced by appropriate documentation (an Entry of Appearance as Attorney or Representative, Form G-28, signed by the worker confirming such representation). Such record will be made available for inspection and copying within 72 hours following notice from the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and designated representatives as described in this paragraph.

CONTRACT IMPOSSIBILITY: The employer will terminate the work contract of any worker whose services are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes fulfillment of the contract impossible. Whether such an event constitutes a contract impossibility will be determined by the Certifying Officer. In the event of such termination of a contract, the employer must fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract beginning with the first workday after the arrival of the worker at the place of employment or the advertised first date of need, whichever is later, and ending on the date of termination. The employer must make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not affected, the employer must: (1) Return the worker, at the employer's expense, to the place from which the worker (disregarding intervening employment) came to work for the employer, or transport the worker to the worker's next certified H-2A employer, whichever the worker prefers; (2) Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment; and (3) Pay the worker for any costs incurred by the worker for transportation and daily subsistence to that employer's place of employment. These transportation arrangements apply only to those workers recruited from outside the area of intended employment.

TERMINATIONS: The employer may terminate the worker with notification to the appropriate State and federal agencies if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct; (c) hinders another worker’s productivity; (d) malingers or otherwise refuses without justified cause to perform as directed the work for which the worker was recruited and hired; (e) provides other lawful job-related reason(s) for termination of employment; (f) abandons his employment; (g) fails to meet applicable production standards when production standards are applicable; (h) falsifies identification, personnel, medical, production, or other work-related records; (i) fails or refuses to take an alcohol or drug test; (j) employer discovers a criminal conviction record or status as a registered sex offender that employer reasonably believes will impair the safety and/or living conditions of other workers; (k) commits an act or acts of insubordination, including the failure to regard employer’s authority; (l) lies or provides a false statement to the employer; (m) collects any money or other thing of value from prospective employees or current employees in order for the payor to work for this employer; (n) violation of employer’s safety rules; (o) unauthorized or illegal possession, use or sale of alcohol or controlled substances on employer’s premises or during working hours, while engaged in work activities or in employer’s vehicles; (p) unauthorized or illegal possession, use or sale of weapons, firearms, or explosives on employer’s premises or in employer’s vehicles; (q) theft or dishonesty; (r) inappropriate physical contact; (s) harassment; (t)

discrimination or retaliation; (u) disrespect toward fellow workers, visitors or other members of the public; (v) performing outside work or use of employer's property, equipment or facilities in connection with outside work while on employer's time; (w) poor attendance or poor performance. The grounds for immediate termination listed above are not all inclusive. All termination decisions will be based on an assessment of all relevant factors.

In the event of termination from medical reasons occurring after arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place from which the worker came to work for the employer and reimburse worker for reasonable cost of transportation and subsistence incurred by the worker to get to the place of employment. These arrangements apply only to workers who are recruited outside the area of intended employment.

REPORTING ABANDONMENT OF EMPLOYMENT OR TERMINATION FOR CAUSE:
The employer will report workers who, a) voluntarily abandon employment before the end of the contract period, or b) workers who are terminated for cause, to the Chicago National Processing Center, and H-2A workers to the Department of Homeland Security, in writing or other approved method, not later than two (2) days after the abandonment or termination occurs. Abandonment will be deemed to begin after a worker fails to report for work at the regularly scheduled time for five (5) consecutive days without the consent of the employer. The employer will not be responsible for providing or paying for reported workers a) subsequent transportation and subsistence expenses, and b) the worker will not be entitled to the 3/4 guarantee.

PROOF OF CITIZENSHIP: All workers hired under this order will be required to provide documentation attesting to United States citizenship or legal status to work in the United States.

AGRICULTURAL WORK AGREEMENT: A copy of the work contract will be provided to the worker by the employer no later than on the day work commences. For an H-2A worker, a copy of the work contract will be provided no later than the time at which the worker applies for the visa. For an H-2A worker going from an H-2A employer to a subsequent H-2A employer, a copy of the work contract will be provided no later than the time an offer of employment is made by the subsequent H-2A employer. Material terms and conditions of the work contract may be translated into a language understood by the worker, however the English version of the work contract shall always control.

OTHER: The working conditions will comply with applicable federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity Employer and will offer United States workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer non-immigrant workers.

EMPLOYER FURNISHED TOOLS AND EQUIPMENT: The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

SUBSTANCE ABUSE POLICY: The use or possession or being under the influence of illegal drugs or alcohol during working time is prohibited. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process.

REQUIRED DEPARTURE: H-2A workers are required to leave the United States at the end of the period certified by the Department of Labor or separation from the employer, whichever is earlier, as required under 20 CFR § 655.135(i), unless the H-2A worker is being sponsored by another subsequent

employer. This shall serve as official notification of this requirement to any H-2A worker employed under the agricultural work agreement.

PROHIBITIONS AGAINST EMPLOYEES PAYING FEES: The employer and its agents have not sought or received payment of any kind from any employee subject to 8 U.S.C. § 1188 for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs, as prohibited by 20 CFR § 655.135(j). Costs that are the responsibility and primarily for the benefit of the worker, such as government-required passport fees, are not included in this prohibition.

CONTRACTS WITH THIRD PARTIES COMPLY WITH PROHIBITIONS: The employer has contractually forbidden any foreign labor contractor or recruiter, if any, whom the employer engages, either directly or indirectly, in international recruitment of H-2A applicants to seek or receive payments from prospective employees, except as provided for in Department of Homeland Security regulations at 8 CFR § 214.2(h)(5)(xi)(A). Likewise, all employees are prohibited from collecting any money or other thing of value from prospective employees or current employees in order for the payor to work for the employer. This employer has zero tolerance for prohibited payments. Employees should report to the employer immediately the name of any person seeking to collect a prohibited payment and the amount sought. Any employee found to have collected a prohibited payment will be required to reimburse the injured party immediately and will be terminated from employment. An employee cannot be discriminated against or discharged for reporting a prohibited payment.

NOTICE OF WORKER RIGHTS: The employer agrees to post and maintain in a conspicuous location at the place of employment a poster to be provided by the Secretary of Labor as described at 20 CFR § 655.135(l), when such poster is available from the Secretary.

## *ARCHIVOS JUNTOS DE ETA FORMULARIO 790*

### *§ 16, DESCRIPCION Y REQUISITOS DEL TRABAJADOR:*

*Cultivar y cosechar elote, algodon, cacahuates, camote, pepinos para encurtir, tabaco. Cargar y descargar camote, pepinos, cacahuates, tabaco, soja, elote, y algodon. Jalar/cortar hierbas. Trabajadores caminaran al par de los surcos como especificado pro el empleador y remover hierba y pasto del campo a mano o usando un azada. Tiempos prolongados caminando,estar parado, agachado, doblado, y alcanzando. El trabajo esta al aire libre y continua en todo tipo de clima. Los trabajadores pueden ser requerido que se sometan a una prueba al azar de droga o alcohol sin costo al trabajador. Falta de cumplir con este requisite puede resultar en terminacion inmediata. Todos examines ocurriran despues de la intrevista. Deven de poder levantar 75 libras a la altura de el hombro repetitivamente en todo el dia de trabajo y ser capas de levanter y llevar 75 libras en el campo. El trabajador no deve de dificultar la productividad de ortros trabajadores. El uso de celular o otros electronicos durante horas de trabajo estrictamente prohibido except por llamadas relacionadas al trabajo o de emerjencia y violacion puede resultar en terminacion inmediata. Se require un mes de experiencia con trabajo de granja verificable en la actividad de cosechas enumerados.*

*SEMILLANDO INVERNADEROS: Los trabajadores llenaran contenedores con tierra y lo pasaran por el semillero. Luego los llevaran adentro del invernadero y los colocaran ordenablemente al lugar designado segun las instrucciones del Patron o Supervisor. Los trabajadores tomaran precaucion de no molestar o dejar caer los contenedores cuando esten moviendolos al invernadero desde el semillero. Las semillas de tabacco son extremadamente seseptible a enfermedades y por esta razon, los trabajadores tendran precaucion extra de mantener limpio las manos, ropa, y zapatos antes de entrar al invernadero. Los trabajadores de invernadero pueden ser requeridos a limpiar sus manos lavadolas en leche antes de trabajar con las plántulas de tabaco. Los trabajadores trabajaran adentro y alrededor de los invernaderos despues de germinacion haciendo mantenimiento general, fertilizando, cortando y vigilando segun las instrucciones del Patron o Supervisor.*

*PEPINOS PARA ENCURTIR: El trabajador ira a lo largo de la hilera, agachandose y doblandose para recoger todos los pepinos de 1/4 de pulgada en dimetro o mas grande. Escartar todos los pepinos grandes (mas de 2 pulgadas en dimetro) en el medio del surco y poner los pepinos que quedan en una 5/8 bushel cubeta. Los trabajadores cargaran las cubetas llenas a un camion cercano para vaciarlos y recibir una ficha o cupon en le cubeta vacido y regresar al surco asignado por el Patron o Supervisor para continuar la tarea. Trabajadores deben"limpiar las Guias" (Piscar todos los pepinos de tamaño vendible) y tamaño como se lo exige el patron, se le exige al trabajador que se quede en el surco asignado. El trabajador debe tener cuidado de no dañar las enredaderas, flores y pepinos pequeños. Puede ser requerido impedir y adelgar pepinos y hacer trabajo de cultivar general y mover tractores o camiones en el camp en relacion a la recogida. Es muy importante que los trabajadores remuevan y desechen todos los pepinos de mas de 2 pulgadas de diametro de las vides. Se le puede exigir que lleve a cabo otras tareas segun lo requiera el patron. Pepino par encurtir cosechado a mano sera pagado por piesa a $0.75 por 5/8 bushel. Los trabajadores deben piscar un minimo de 5/8 cubetas bushel por hora. Cualquier trabajador que no comple con esta norma de produccion puede ser despedido(a).*

*PISCANDO EL CAMOTE: Los arrancadores de plantas de camote se agacharan, se doblaran y arrodillaran para arrancar las plantas de camote del macizo, teniendo cuidado en escojiendo las plantas con el apropiado tamaño como especificado por el el Patron o Supervisor. Plantas escogidas seran empacadas correctamente en un cajon en el campo que sera colocado en una hilera y cargadas a una traila para ser transportadas. Se puede requerir que vayan montados en una transplantadora mecanicos. Puede que los trabajadores tengan que caminar dedtras del transportador para sembrar las plantas que falten. El trabajo de transplantar camote se pagara por hora. Trabajadores que cosechen camote*

*caminaran a lo largo de la hilera que ya ha sido arada. Los trabajadores se agacharan, doblaran y arrodillaran para recoger camote usando las manos y dedos para escarbar y sacar los camotes que no estan expuestos. Puede que los trabajadores clasifcaran los camotes en el camp separando los del numero 1 y 2 en diferentes 5/8 cesta de campo. Los camotes de calificacion numero 2 seran colocados en otro cajon. Conserveros quando sean cosechados seran puestos en un compartimiento separado. Camote dañados o enfermo no seran recogidos. Se le requerira al trabajador que se quede en el surco asignado. Las cestas llenas que pesan hasta 35 libras seran llevadas al la fila de camiones para ser cargadas al camion o remolque. Puede que el trabajador se le requiera montar en una maquina de cosechar. El trabajador puede ser requerido a hacer otras tareas como se lo requiera el empleador. Pago para la cosecha hecho a mano de camote sera pagada a $0.50 centavos por 5/8 bushel. Trabajo usando un cosecador mecanicom, si alguno, sera pagado por hora.*

*TABACO: Cosechadores de tabaco se moveran al surco de planta de tabaco maduro. Cada surco puede ser de 1500 pie de largo. Puede que la planta de tabaco sea de 4 a 6 pie de alto y colocados aparte por aproximadamente 20 pulgadas en cada surco. Enpezando al fondo de la planta, el trabajador se doblara en la cintura para piscar dos o tres hojas mas bajas de cada planta. Siguiendo doblado el trabajador caminara por el surco de tabaco maduro repitiendo el dicho proceso. (Las hojas al fondo pueden ser dos (2) pulgadas arriba del la tiera.) El trabajador colocara las hojas cosechadas de bajo su brazo. Una ves que se llene el brazo, se lo llevara al trino de campo. Las hojas tienen que ser puestas en el trino de campo bien organizadas. Luego el trabajador regresara al surco para repetir el proceso. Todos los trabajadores tienen que tener la habilidad de destinguir el tabaco maduro por observando el color de las hojas. Se debe tener cuidado de no dañar o romper las plantas. Los trabajadores deban poder moverse rapidamente por los surcos y moverse en unisono con la trino de campo. Puede que los trabajadores se montaran en un transplantador mechanico y cosechador mecanico. Trabajadores pueden caminar detras del transportador para reinisiar plantas dessaparecidas. Trabajadores deben remover los retoñios y flores de las plantas de tabaco. Puedeque los trabajadores ayudaran en quitando tabaco seco del almacen colocandolo sobre sabanas para encebramiento y cargado en un camion. El peso de estas sabanas de tabaco puede ser de 300 libras. Se le require al trabajador que trabajan en los campos cuando las hojas de tabaco estan mojadas con lluvia o rocio. Trabajadores deben poder estar parados para periodos largos para piscar hojas de tabaco de 2 a 10 pulgadas de la tierra. Puede que trabajadores seran expuestos a plantas nocivos y insectos. Temperaturas en campo de tabaco en las horas de trabajo flactuan de 40 a mas de 100 grados F. El trabajador deve de poder hacer las tareas dichas. Los trabajadores pueden ser requeridos a hacer otras tareas como se lo requiera el empleado. El pago para todo los trabajadores en tabaco es por hora.*

*SOJA, ELOTE, CACAHUATES Y O ALGODON: Los trabajadores iran a lo largo de las hileras como especificado por el Patron or Supervisor y sacando las llerva y sacate de la soja, elote, cacahuates y/o algodon con las manos o usando un asadon.*

*Se les puede ser reauerodo a los trabajadores realizer trabjo que acompañan con el cultivo de la cosechar enumerados en la solicitud. Todos los otros deberes, si asignados, seran esos deberes del trabajador agricola, cultivos diversificados, codigo DOT 407.687.010 (SOC (ONET/OES) code 45-2092.02). Este es un negocio muy exigente y competitivo en cual las especificaciones de calidad deben ser adherido rigurosamente. Trabajo descuidado no puede ser ni sera tolerado.*

*Todos los trabajadores están obligados a seguir las prácticas sanitarias comunes en todo momento. Esto es particularmente importante cuando cosechas a mano son cultivadas para el consumo humano. Los trabajadores están obligados a limpiar sus manos en la forma de lavandoselas a fondo con agua y jabón antes de entrar en el campo para las actividades de cosecha y después de cada descanso. Fumar y el uso de productos de tabaco prohibido durante el tiempo de trabajo.*

*COMETERSE CON EL CRECIMIENTO DE TEMPORADA LLENA: El trabajo que se ofrece require que los trabajadores estan disponibles para trabajar seis (6) horas por dia, de lunes a viernes y cinco (5) horas el Sabado y todos los dias que hay trabajo y tambien por el period de la etisipada de empleo, asi como el trabajo se aflojera por un tiempesito. El trabajador conformara que cuando higa trabajo este disponible para hacer las tareas cuando higa trabajo y sobre la temporada llena de empleo o que se encuentra. El trabajo esta deacuerdo ser disponible y realuzar tareas que se le asignen que el trabajo es disponible por el priodo lleno antisipado de empleo. Trabajo disponible es definido como, no se trabajara en el tiempo de descanso o en la temporada de las vacciones federales, pero el trabajo si se require seis (6) horas por dia de Lunes - Viernes, y cinco (5) horas los Sabados.*

*El trabajador entiende que si abandonan su trabajo de empleo o son terminados de empleo por causa antes de la temporada de empleo, o terminacion o como se encuentran, el trabajador pierdera la guarantia de 3/4 de reembolso de ciertos costos de transportacion. Ausencias excesivas y/o llejar tarde no puede ser tolerado y puede resultar en terminacion.*

*Asignaciones diarias de trabajo individual, asignaciones a tripulacion, y la locacion de trabajo sera asignado por, y nada mas por, el Empleador o supervisor. Trabajadores pueden ser asignados a una variedad de tareas en cualquierdia y/o diferentes tareas en diferentes dias. Trabajadores seran disponibles para hacer las ordenes y el trabajo en cualquier cosecha asignada por el Empleador o Supervisor.*

***§ 18, MAS DETALLES SOBRE EL PAGO:***
*De acuerdo con 20 CFR § 655.122(l) que regula las tasas de remuneración, el salario ofrecido en este documento es el más alto de la tasa del salario efecto adverso ("AEWR"), la tasa vigente por hora, el tipo de pieza que prevalece, la acordados salario negociación colectiva, o la salario mínimo federal o estatal, en vigor en el trabajo a tiempo parcial se realiza por cada hora o fracción trabajado durante un período de pago cubierto por la certificación laboral aprobada. Si, se proporcionará al trabajador ganancias a destajo de los trabajadores para un período de pago resultado en los ingresos por hora promedio de menos del mínimo garantizado se le pagara hasta llegar a la tasa mínima garantizada.*

*El empleador pagará el precio por pieza que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza si el Departamento de Trabajo determina que una pieza mayor se está imponiendo en la actividad de agrícola en el área del empleo previsto que la tasa de pieza especificada en este documento. En el caso que el DOL anuncie una tasa de pieza imperante que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza en el presente documento, el empleador se reservara a derecho de pagar la tasa pieza imperante que prevalece en cuanto se anunció por el DOL. Con el fin de asegurar trabajadores de ganancias justas, el empleador puede, a su discreción aumentar temporalmente la tasa por encima de la pieza por pieza ofrecida en este documento o pueden optar por pagar a los trabajadores en el más alto precio por hora, cuando, a juicio del empresario, las condiciones de trabajo son inusualmente adversas. El empresario aplicará la tarifa por hora que prevalece en una actividad de cultivo para el cual se especifique en un precio por hora si DOL determina que una tarifa por hora más alto se está imponiendo en la actividad agrícola en el área del empleo previsto que no sea la tarifa por hora especificada en el presente documento. En el caso de DOL que promulga una nueva AEWR durante el período de reclutamiento o contrato de trabajo que es mayor o menor que la AEWR en el presente documento, el más alto de el AEWR ajustado, la tarifa por hora que prevalece, el salario acordado la negociación colectiva, o el salario mínimo federal o estatal se convertirá en la nueva tarifa de salario. En otras palabras, el salario puede aumentar o disminuir durante la vigencia de este contrato mediante notificación DOL de dicho cambio. En el caso de que el AEWR es eliminado del programa H-2A durante la vigencia de este acuerdo de trabajo, ya sea administrativa o legislativa, el empleador se reserva el derecho de pagar la nueva tarifa de salario bajo las nuevas directrices en cuanto entre en vigor.*

*El empleador hará las siguientes deducciones de los salarios de los trabajadores: FICA, Medicare y impuestos como lo requiere la ley; adelantos en efectivo y pago de los préstamos; reembolso del pago en exceso de los salarios a los trabajadores; el pago de los artículos que el trabajador ha adquirido voluntariamente del empleador; las tarifas telefónicas de larga distancia; recuperación de cualquier pérdida para el empleador debido a los daños del trabajador, más allá del desgaste normales y rotura o pérdida de equipos o elementos de vivienda, donde se muestra que el trabajador es responsable. No deducción no requiere que la ley se hará que trae ingresos por hora de los trabajadores por debajo de la más alta del salario mínimo federal y el salario mínimo estatal.*

*El empleador no pagará bonos. Períodos de nómina será semanal. En o antes de cada día de pago, los trabajadores se les dara una declaracion de horas y ganancias, que contiene, como mínimo, (i) los ingresos totales para el período de pago; (ii) por hora y/o tasa de pago por pieza; (iii) las horas de trabajo que se ofrecen al trabajador (mostrando las ofertas de conformidad con los 3/4 garantizan separado de las horas que ofrece más allá de la garantía); (iv) las horas efectivamente trabajadas por el trabajador; (v) desglose de todas las deducciones; (vi) si se usa la tasa de pago por pieza, las unidades producidas cada dia; (vii) fechas cuando el periodo de paga comenzando y terminando, (viii) el nombre del empleador, dirección y FEIN, todo ello en cumplimiento de 20 CFR § 655.122(k), y todos los requisitos federales y estatales.*

*El empleador garantía ofrecer empleo de trabajadores para un número total de horas de trabajo igual a un menos tres cuartos (3/4) de los días de trabajo del período total a partir del primer día de trabajo después de la llegada del trabajador en el lugar de trabajo y el trabajador esté listo, dispuesto, capaz y con derecho a trabajar, y hasta la fecha de vencimiento especificada en el contrato de trabajo o de las prórrogas de los mismos o sobre la terminación de este trabajo como se especifica a continuación. Los detalles de la garantía de 3/4 se describen en 20 CFR § 655.122(i). Para efectos de esta garantía, una "jornada de trabajo" se compone de seis horas diarias de lunes a viernes y de cinco horas el sábado. Los trabajadores pueden ser ofrecidos a trabajar en días festivos federales y en su día de reposo, pero no estarán obligados a hacerlo. De conformidad con 20 CFR § 655.122(n), los trabajadores que voluntariamente abandonan el empleo o sean terminados con causa, y donde el empleador proporciona notificación oportuna a la NPC y el DHS, aliviarán la empleador por transporte y dietas posteriores costos y la 3/4 garantía. El empleador puede dar por terminado el contrato de trabajo, donde ya no se requieren los servicios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios. En caso de imposibilidad de contrato, el empleador cumplirá unas tres cuartas partes de garantía para el tiempo que ha transcurrido desde el inicio del contrato de trabajo al momento de su terminación, el patrono deberá cumplir con sus obligaciones prescritas en 20 CFR § 655.122(o)(1-3). Se harán esfuerzos razonables para transferir un trabajador despedido por imposibilidad de contrato para otro empleo comparable aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, como apliquen.*

*Todas las solicitudes de licencia deben ser por escrito. Todas las ausencias serán contados hacia horas que se ofrecen a los efectos para calcular la garantía 3/4.*

*Empleador proporcionará al trabajador con una referencia a través del Sistema de Liquidación Interestatal trabajo de una semana completa para la semana que comienza con la fecha prevista de necesidad, de acuerdo con 20 CFR 653.501(d)(2)(v)(A), a menos que el empleador modificado la fecha de la necesidad de notificar a la oficina de orden de retención local de no más de diez (10) días antes de la fecha de necesidad. Si el empleador no notificar a la oficina de orden de retención, entonces el empleador deberá pagar al trabajador imputables contemplados a través del Sistema de Liquidación Interestatal de garantía salarial de la primera semana a partir de la fecha prevista inicialmente de la necesidad. Si el trabajador no notifica la orden de retención de la oficina de su continuo interés en el*

*trabajo no antes de nueve días (9) de trabajo y no más tarde de cinco (5) días hábiles antes de la fecha de necesidad, el trabajador será descalificado de la garantía antes mencionada. El empresario podrá exigir al trabajador para realizar un trabajo alternativo si se invoca la garantía citada en esta sección. Trabajo alternativo estará actividades de trabajo agrícola y mantenimiento granja generales que son inherentes a la agricultura los cultivos enumerados en la solicitud.*

*La cantidad de salario garantizado de la primera semana en el AEWR actualmente en vigor es de 35 horas x $11.27 = $394.45.*

**§ 3, *DIVULGACION DE TERMINOS Y CONDICIONES DE VIVIENDA:***

*El empleador requiere acceso a el sistema de liquidación intraestatal y interestatal y aseguraque la vivienda de los trabajadores satisfará normas federales no mas tardar de (30) días en avanzado de la fecha de necesidad en el ajunto archivo ETA 790. Vivienda y servicios públicos son proveídos sin costo alguno al trabajador que no sea capaz de regresar a su propio domicilio el mismo día. Trabajadores reclutados contra esta orden de trabajo dentro de la distancia normal de viaje al trabajo no serán proveídos con vivienda, subsistencia o transportación. La vivienda proveída es para grupo. En el evento de que una mujer trabajadora sea empleada, taza, ducha y habitación separadas serán proveídas por el empleador. Vivienda para toda la familia no es disponible y la provisión de casa para toda una familia no es imperante para el área de trabajo. La vivienda cumplirá con las normas aplicables del Gobierno Federal, Estatal, y local. Trabajadores serán responsables por mantener la vivienda ordenada y limpia. El coste razonable de reparaciones por daños, además de otros causados por uso y desgaste normal, podrían ser cobrados a los trabajadores a los que se les encuentre responsables por los daños a la vivienda y muebles.*

***§ 19, ARREGLOS DE TRANSPORTE**:*

*Para los trabajadores contratados fuera del área del empleo previsto, gastos de transporte y estancia serán reembolsados por el empleador de conformidad con 20 CFR § 655.122(h). Transporte de entrada se reembolsará sobre la base de no menos (y no está obligado a ser algo más que) los cargos más económicos y razonables para la distancia implicada. El reembolso de subsistencia será la cantidad que el empleador le cobraría para proporcionar al trabajador las tres comidas por día de $12.09 por día o por trabajadores que prestan los recibos serán reembolsados hasta el cantidad autorizado por los EE.UU. continentales viáticos de $51.00 calculado por el método de GSA. Los pagos se realizan en base a la fecha de publicación de las tarifas del programa H-2A de comidas permitidas en el Registro Federal.*

*Transporte al lugar de empleo. Si el empleador no ha previamente avanzado, los costos de transporte y costos de subsistencia para el trabajador o de otra manera proporcionado dicho transporte o subsistencia directamente al trabajador por otros medios y si el trabajador complete el cincuenta por ciento (50%) de el trabajo del contrato, empleador reembolsará al trabajador para los gastos razonables incurridos por el trabajador para el transporte y subsistencia diaria esde el lugar que el trabajador ha llegado a trabajar para el empleador a el lugar de empleo del empleador. La cantidad del pago del transporte será el cargo mas economico y rasonable y commun cobro de transporte. La cantidad del pago por día natural no deberá ser inferior al importe establecido en virtud de 20 CFR 655.173(a), que actualmente es $12.09 por día. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*Transporte desde el último lugar de destino al país de origen. Si el trabajador completa el periodo de contrato de trabajo, o si el empleador está despedido sin causa, y el trabajador no tiene un empleo inmediato H-2A, el empleador proporcionará o pagaremos los costos razonables de los trabajadores del transporte de regreso y la subsistencia del lugar de trabajo al cabo del cual el trabajador, sin tener en cuento el empleo de intervenir, parte a trabajar para el empleador. Si el trabajador tiene un contrato con un empleador posterior que no este hacuerdo en el contrato de trabajo para proporcionar o pagar los*

*gastos de transporte y gastos subsistencieros diarios del lugar de trabajo del empleador al lugar de trabajo de tales posterior empleador. el empleador debe proveer o pagar dichos gastos. Si el trabajador tiene un contrato con un empleador posterior que ha acordado en el contrato de trabajo para proporcionar o pagar los gastos de transporte ycostos subsistancios diarios del lugar del empleador al lugar de tales empleador posterior que debe proporcionar o pagar dichos gastos. La cantidad del pago del transporte será el cargo comun más económica y razonable para las distancias. La cantidad del pago por día natural no deberá ser inferior a la cantidad establecida en virtud de 20 CFR § 655.173(a), que actualmente es $12.09 por día. La obligación del empleador de proporcionar o pagar el transporte de retorno y de subsistencia continúa si un trabajador H-2A es desplazada como consecuencia del cumplimiento del empleador con la regla del 50 por ciento como se describe en 20 CFR § 655.135(d) con respecto a las referencias hechas después de que el empleador fecha de necesidad. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El transporte entre vivienda y lugar de trabajo. Para aquellos trabajadores que viven en viviendas proporcionadas o asegurados por el empleador, el empleador proveerá transporte entre este tipo de viviendas y lugares de trabajo diario del empleador, sin costo al trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador se requiere como condición de empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*El transporte para los trabajadores entre el sitio diario de trabajo disignado. Para los trabajadores que no viven en viviendas proporcionadas o asegurados por el empleador que se reportan al sitio de trabajo diario, el empleador proveerá transporte entre dicho sitio de informes trabajo diario designado y lugar de trabajo diario del empleador, sin costo para al trabajador, y de regreso desde el sitio de trabajo diario al sitio de información designado, sin costo para el trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador es requerido como condición de se empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*OTRAS CONDICIONES DE EMPLEADO, ACLARACIONES Y ASEGURAMIENTOS:*
*ASEGURAMIENTO REQUERIDA: El empleador se compromete a cumplir con las regulaciones en 20 CFR §§ 655.135 y 653.501. El empleador adopta y incorpora por referencia a todas las garantías necesarias establecidas en 20 CFR § 655.122. En la medida en que hay alguna discrepancia entre este ETA Formulario 790 y Anexos, la declaración de garantías requerido adjunto a este ETA Formulario 790, o la Ley de Inmigración y Nacionalidad (el "INA") y todos los reglamentos de H-2A aplicables, a continuación, el INA y los reglamentos H-2A aplicables siempre prevalecerán.*

*ASEGURAMIENTO DE SEGURO DE COMPENSACIÓN DE COBERTURA DEL TRABAJADOR CONTINUÓ: Con conformidad con 20 CFR 655.122(e)(1), el empleador proveerá seguro de compensación al trabajador, sin costo alguno para el trabajador, que cubre lesiones y enfermedades que surjan de, y en el curso de la el empleo de los trabajadores. Antes de la determinación de certificación laboral, el empleador proveerá prueba de cobertura de seguro de compensación al trabajador para el funcionario de certificación de conformidad con 20 CFR 655.122 (e)(2) . En el caso de que la cobertura actual expira durante el período de necesidad reflexionó sobre adjunto ETA 790, punto 9, el empleador garantiza por escrito de su intención de renovar y mantener una cobertura continua durante las fechas completas de necesidad, como lo demuestra la firma y fecha ETA 790 a la que se adjunta el presente aseguramiento.*

*CONDICIÓN DE EMPLEO: Todos los solicitantes deben poder (con o sin acomodo razonable), dispuesto y capacitado para llevar a cabo todo el trabajo descrito, y debe estar disponible para todo el período previsto de empleo. El trabajo ofrecido es temporal ya tiempo completo sólo para el período*

*anticipado declarado de empleo y cualquier extensión aprobada la misma. No hay ninguna oferta o garantía que recordar para el futuro del empleo a excepción de la solicitud requerida de algunos ex trabajadores de Estados Unidos de conformidad con 20 CFR § 655.153 .*

*REGISTROS DE GANANCIAS: registros de ganancias precisos y adecuados se mantendrán de acuerdo con el 20 CFR § 655.122 (j). Todos los registros estarán disponibles para la inspección y la transcripción por la secretaría de Estado de Trabajo o un representante debidamente autorizado y designado y por el trabajador y los representantes designados por el trabajador como lo demuestra la documentación adecuada (un Registro de Comparecencia como abogado o representante, Formulario G-28, firmado por el trabajador que confirma dicha representación). Dicho registro estará disponible para inspección y copia dentro de las 72 horas siguientes a la notificación de la secretaría de Estado de Trabajo o un representante debidamente autorizado y designado y por el trabajador y los representantes designados según lo descrito en este párrafo.*

*IMPOSIBILIDAD DEL CONTRATO: El empleador terminara el contrato de trabajo de cualquier trabajador cuyos servicios ya no son necesarios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios que hace que el cumplimiento del contrato imposible. Ya sea un evento constituye una imposibilidad contrato será determinado por una Oficial Certificado. En el caso de dicha rescisión de un contrato, el empleador debe cumplir con una garantía de tres cuartas partes del tiempo que ha transcurrido desde el inicio del contrato de trabajo a partir de la primera jornada de trabajo después de la llegada del trabajador en el lugar de trabajo o de la anuncian primera fecha de necesidad, el que sea más tarde, y hasta la fecha de terminación. El empleador debe hacer esfuerzos para transferir al trabajador a otro empleo comparable y aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, según corresponda. Si dicha transferencia no se ve afectada, el empleador debe: (1) Volver al trabajador, por cuenta del empleador, al lugar desde el cual el trabajador (sin tener en cuenta el empleo que intervenga) vino a trabajar para el empleador, o transportar el trabajador al próximo empleador H-2A certificado, el que sea que el trabajador prefiera; (2) Reembolsar al trabajador el importe total de las deducciones hechas de la retribución del trabajador por el empleador para transporte y gastos de subsistencia en el lugar de trabajo; y (3) Pagar al trabajador por los costos incurridos por el trabajador para el transporte y subsistencia diaria a la casa de ese empleador del empleo. Estos arreglos de transporte se aplican sólo a aquellos trabajadores contratados desde fuera del área del empleo previsto.*

*TERMINACIONES: El empleador puede dar por terminado el trabajador con notificación a las agencias estatales y federales correspondientes si el trabajador: (a) se niega sin causa justificada para realizar el trabajo para el cual fue reclutado y contratado al trabajador; (b) comete actos graves de mala conducta; (c) dificulta la productividad de otro trabajador; (d) el que no este enfermo o no se niega, sin causa justificada para realizar según las indicaciones de la obra para la cual fue contratado y contrató al trabajador; (e) proporciona otra razón relacionada con el trabajo legal (s) para la terminación del empleo; (f) abandona su empleo; (g) no cumple las normas de producción aplicables cuando las normas de producción aplicables; (h) falsifica identificación, personal, médicos, producción, u otros registros relacionados con el trabajo; (i) no presenta o rehúsa a tomar una prueba de alcohol o drogas; (j) el empleador descubre un registro condena penal o el estado como delincuente sexual registrado que el empleador cree razonablemente perjudicará la seguridad y/o de las condiciones de vida de los demás trabajadores; (k) comete un acto o actos de insubordinación, incluyendo el hecho de no considerar a la autoridad del empleador; (l) se encuentra o proporciona una declaración falsa al empleador; (m) recoge dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para este empleador; (n) la violación de las reglas de seguridad del empleador;(o) no autorizada o ilegal la posesión, uso o venta de alcohol o sustancias controladas en los locales del empleador o durante la jornada laboral , en el ejercicio de las actividades de trabajo o en vehículos del empleador; (p) no autorizada o ilegal la posesión, uso o venta de armas, armas de fuego o explosivos en*

*las instalaciones del empleador o en vehículos del empleador; (q) el robo o la deshonestidad; (r) de contacto físico inapropiado; (s) el acoso; (t) la discriminación o represalia; (u) la falta de respeto hacia los compañeros de trabajo, visitantes u otros miembros del público; (v) la realización de trabajos fuera o utilización de bienes, equipos o instalaciones del empleador en relación con el trabajo fuera, mientras que en el tiempo del empleador; (w) pobre asistencia o mal desempeño. Los motivos para la terminación inmediata mencionados no son todo incluido. Todas las decisiones de terminación se basarán en una evaluación de todos los factores pertinentes.*

*En caso de terminación de razones médicas que ocurran después de la llegada en el trabajo, o que se producen como resultado de empleo, o en caso de terminación como resultado de un acto de Dios, el empleador pagará o proporcionar costos razonables de transporte de regreso y de subsistencia a el lugar desde el cual el trabajador llegó a trabajar para el empleador y los trabajadores para reembolsar gastos razonables de transporte y dietas incurridos por el trabajador para llegar al lugar de empleo. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El empresario informará a los trabajadores que, a) si voluntariamente abandonan el empleo antes de que finalice el período del contrato, o b) los trabajadores que son despedidos por causa justificada, al Centro de Procesamiento de Chicago, y los trabajadores H -2A para el Departamento de Seguridad Nacional, en escrito u otro método aprobado, a más de dos (2) días después del abandono o terminación se produce. El abandono se considerará que comenzará después de un trabajador no se presenta para el trabajo a la hora programada regularmente durante cinco (5) días consecutivos sin el consentimiento del empleador. El empleador no será responsable de proveer o pagar a los trabajadores informados a) los gastos de transporte y dietas posteriores, y b) el trabajador no tendrá derecho a la garantía 3/4.*

*PRUEBA DE CIUDADANÍA: se requiere que todos los trabajadores contratados bajo este fin de proporcionar la documentación que acredite la ciudadanía estadounidense o estatus legal para trabajar en los Estados Unidos.*

*ACUERDO DE TRABAJO AGRÍCOLA: Una copia del contrato de trabajo se proporcionará al trabajador por el empleador a más tardar en el día de trabajo comienza. Para un trabajador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento en que el trabajador se aplica para la visa. Para un trabajador H-2A al pasar de un empleador H-2A para un posterior empleador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento de una oferta de trabajo se hace por la posterior empleador H-2A. Términos y condiciones del contrato de trabajo pueden ser traducidos en una lengua comprensible para el trabajador, sin embargo la versión en Inglés del contrato de trabajo siempre deberá controlar.*

*OTROS: Las condiciones de trabajo cumplan con los reglamentos de salario mínimo federal y estatal, el trabajo infantil, la seguridad social, la salud y la seguridad, el registro de contratista de trabajadores agrícolas y otras leyes relacionadas con el empleo. El empleador es un empleador que ofrece igualdad de oportunidades de empleo y ofrecer a los trabajadores de los Estados Unidos por lo menos las mismas oportunidades, salarios, beneficios y condiciones de trabajo que las que ofrece el empleador o tiene que intenciona en ofrecer a los trabajadores no inmigrantes.*

*EMPLEADOR PROPORCIONA HERRAMIENTAS Y EQUIPO: El empleador proporcionará, sin costo, todas las herramientas, suministros o equipos necesarios en la realización del trabajo.*

*POLÍTICA DE ABUSO DE SUSTANCIAS: El uso o posesión o estar bajo la influencia de drogas ilegales o alcohol durante el tiempo de trabajo está prohibido. Los trabajadores pueden ser solicitados a someterse a pruebas de drogas y alcohol al azar sin costo alguno para el trabajador. El incumplimiento*

*de la solicitud o de dar positivo puede resultar en la terminación inmediata. Todas las pruebas se producirá después de la de coches y no es una parte del proceso de la entrevista.*

*SALIDA OBLIGATORIA: Los trabajadores H-2A necesitan salirse de los Estados Unidos a finales del período certificado por el Departamento de Trabajo o separación por parte del el empleador, lo que ocurra primero, según lo dispuesto en 20 CFR § 655.135 (i), a menos que el H2A trabajador está siendo patrocinado por otro empleador posterior. Esto servirá como notificación oficial de este requisito a cualquier trabajador H-2A empleado bajo el acuerdo de trabajo agrícola.*

*PROHIBICIONES CONTRA QUE EMPLEADOS PAGEN QUOTAS: El empleador y sus agentes no han solicitado o recibido pago de cualquier tipo de cualquier empleado sujeto a 8 USC § 1188 para cualquier actividad relacionada con la obtención de la certificación de trabajo H-2A, incluyendo el pago de honorarios de abogados del empleador", las tasas de solicitud, o los costos de contratación, que esté prohibido por 20 CFR § 655.135 (j). Los costos que son la responsabilidad y sobre todo en beneficio del trabajador, tales como honorarios de pasaporte requerido por el gobierno, no están incluidos en esta prohibición.*

*CONTRATOS CON GRUPOS QUE CUMPLEN CON PROHIBICIONES: El empleador ha prohibido por contrato cualquier contratista laboral extranjero o reclutador, en su caso, a quien el empleador se involucra, ya sea directa o indirectamente, en la contratación internacional de los solicitantes de H-2A para buscar o recibir pagos de los futuros empleados, con excepción de lo previsto en el reglamento del Departamento de Seguridad Nacional a las 8 CFR § 214.2(h)(5)(xi)(A). Del mismo modo, todos los empleados se les prohíbe la recogida de dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para el empleador. Este patrón tiene cero tolerancia para los pagos prohibidos. Los empleados deben informar al empleador inmediatamente el nombre de cualquier persona que busca para recoger un pago prohibido y la cantidad solicitada. Cualquier empleado que haya recogido se requerirá un pago prohibido a reembolsar a la parte perjudicada de inmediato y se dará por terminado de empleo. Un empleado no puede ser objeto de discriminación o se descarga por informar de un pago prohibido.*

*AVISO DE DERECHOS DEL TRABAJADOR: El empleador se compromete a publicar y mantener en un lugar visible en el lugar de trabajo un cartel que sea proporcionada por el Secretario de Trabajo, como se describe en 20 CFR § 655.135 (l), cuando tal cartel está disponible por el Secretario.*

# EMPLOYEE RIGHTS
# UNDER THE H-2A PROGRAM

THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

The Immigration and Nationality Act (INA) allows for the employment of temporary, non-immigrant workers in agriculture (H-2A WORKERS) only if the employment of U.S. workers would not be adversely impacted. To ensure that U.S. workers are not adversely impacted, ***H-2A WORKERS* and *OTHER WORKERS employed on an H-2A work contract or by an H-2A employer in the same agricultural work as the H-2A workers*** have the following rights:

**DISCLOSURE**

- To receive accurate, **WRITTEN INFORMATION** about the wages, hours, working conditions, and benefits of the employment being offered
- To receive this information prior to getting a visa and no later than on the first day of work
- To receive this information in a language understood by the worker

**WAGES**

- To be **PAID** at least twice per month at the rate stated in the work contract
- To be informed, in writing, of all **DEDUCTIONS** (not otherwise required by law) that will be made from the worker's paycheck
- To receive an itemized, written **STATEMENT OF EARNINGS** (pay stub) for each pay period
- To be guaranteed employment for at least **THREE-FOURTHS** (75%) of the total hours promised in the work contract

**TRANSPORTATION**

- To be provided or, upon completion of 50 percent of the work contract period, reimbursed for reasonable costs incurred to the place of employment for transportation and subsistence (lodging incurred on the employer's behalf and meals)
- Upon completion of the work contract, to be provided or paid for return transportation and subsistence
- For workers living in employer-provided housing, to be provided **TRANSPORTATION**, at no cost to the worker, between the housing and the worksite
- All employer-provided transportation must meet applicable safety standards, be properly insured, and be operated by licensed drivers

**HOUSING**

- For any worker who is not reasonably able to return to his/her residence within the same day, to be provided **HOUSING AT NO COST**
- Employer-provided housing must meet applicable safety standards
- Workers who live in employer-provided housing must be offered three meals per day at no more than a DOL-specified cost, or provided free and convenient cooking and kitchen facilities

**ADDITIONAL PROVISIONS**

- To be provided state **WORKERS' COMPENSATION** insurance or its equivalent
- To be provided, at no cost, all **TOOLS**, **SUPPLIES**, and **EQUIPMENT** required to perform the assigned duties
- **TO BE FREE FROM DISCRIMINATION** or **DISCHARGE** for filing a complaint, testifying, or exercising your rights in any way or helping others to do so
- Employers MUST comply with all other applicable laws (including the prohibition against holding workers' passports or other immigration documents)
- Employers and their agents, including foreign recruiters, or anyone working on behalf of the employer, MUST NOT receive payment from any worker for any costs related to obtaining the H-2A certification (such as application and recruitment fees)
- Employers MUST display this poster where employees can readily see it
- Employers MUST NOT lay off or displace similarly employed U.S. workers within 60 days of the date of need for H-2A workers
- Employers MUST hire any eligible U.S. worker who applies during the first 50 percent of the approved work contract period

Workers who believe their rights under the program have been violated may file confidential complaints.

DEPARTMENT OF LABOR
UNITED STATES OF AMERICA

For additional information:

**1-866-4-USWAGE**

(1-866-487-9243) TTY: 1-877-889-5627

WHD
U.S. Wage and Hour Division

**WWW.WAGEHOUR.DOL.GOV**

# DERECHOS DEL EMPLEADO
# BAJO EL PROGRAMA H-2A

SECCIÓN DE HORAS Y SUELDOS DEL DEPARTAMENTO DE TRABAJO DE EEUU

La Ley Sobre Inmigración y Nacionalidad (INA-siglas en inglés) permite el empleo de trabajadores temporeros no inmigrantes en agricultura (Trabajadores H-2A) siempre y cuando no se impacte adversamente a trabajadores de EEUU. Para asegurarse de que no se impacte adversamente a trabajadores de EEUU, ***TRABAJADORES H-2A*** **y** ***OTROS TRABAJADORES empleados en el contrato de trabajo H-2A o por un empleador H-2A en el mismo trabajo agrícola como trabajadores H-2A*** tienen los siguientes derechos:

**DECLARACIÓN**

- Recibir **INFORMACIÓN ESCRITA** sobre los salarios, las horas, las condiciones de trabajo y los beneficios de empleo que se ofrecen
- Recibir esta información antes de conseguir un visado y no más tarde del primer día de trabajo
- Recibir esta información en un idioma que lo entienda el trabajador

**SALARIOS**

- Que se le **PAGUE** por lo menos dos veces al mes de acuerdo con la tasa especificada en el contrato de trabajo
- Que se le informe, por escrito, de todas las **DEDUCCIONES** (no exigidas de otro modo por ley) que se harán del cheque de pago del trabajador
- Recibir una **DECLARACIÓN DE INGRESOS** (talón de pago) escrita y detallada para cada período de pago
- Que se le garantice empleo por lo menos de **TRES CUARTOS** (75%) del total de horas prometidas en el contrato de trabajo

**TRANSPORTE**

- Que se le proporcione o, al cumplir con 50 por ciento del período de trabajo contratado, reembolse por los costos razonables incurridos por transporte y alimentación al lugar de empleo (alojamiento incurrido a favor del empleador y comidas)
- Al terminar el contrato de trabajo, que se le proporcione o que se le pague transporte de regreso y alimentación
- Para trabajadores que viven en viviendas proporcionadas por el empleador, que se le provea **TRANSPORTE**, sin ningún costo al trabajador, entre la vivienda y el sitio de empleo
- Todo transporte proporcionado por el empleador ha de cumplir con todas las normas de seguridad aplicables, ha de estar asegurado correctamente y ha de ser operado por un conductor licenciado

**VIVIENDA**

- Para cualquier trabajador que no pueda regresar razonablemente a su domicilio durante el mismo día, se le tiene que proporcionar **VIVIENDA SIN COSTO ALGUNO**
- La vivienda proporcionada por el empleador tiene que cumplir con las normas de seguridad aplicables
- Al trabajador que vive en una vivienda proporcionada por el empleador se le tiene que ofrecer tres comidas por día y que no cuesten más del costo especificado por DOL, o que se le provea las comodidades para poder cocinar y de una cocina

**DISPOSICIONES ADICIONALES**

- Que se le provea seguro de **INDEMNIZACIÓN ESTATAL PARA TRABAJADORES**, o su equivalente
- Que se le provea, sin ningún costo, todas las **HERRAMIENTAS**, **SUMINISTROS** y **EQUIPO** exigidos para desempeñar cargos asignados
- **ESTAR LIBRE DE DISCRIMINACIÓN** o **DESPIDO** por presentar una demanda, por atestiguar o por ejercer de cualquier modo sus derechos o por ayudar a otros a hacer lo mismo
- Todo empleador TIENE que cumplir con todas las otras leyes aplicables (incluso la prohibición contra la retención de pasaportes de los trabajadores o cualquier otro documento de inmigración)
- Ningún empleador ni sus agentes, incluso reclutadores extranjeros, o cualquiera que trabaje en nombre del empleador, PUEDEN recibir pago de ningún trabajador por ningún costo relacionado al proceso de obtener la certificación H-2A (tal como honorarios de solicitud y de reclutamiento)
- Todo empleador TIENE que exhibir este cartel donde los empleados lo puedan ver fácilmente
- NINGÚN empleador PUEDE desemplear o desplazar a trabajadores de EEUU semejantemente empleados 60 días o menos antes de la fecha que se necesiten trabajadores H-2A
- Todo empleador TIENE que contratar a cualquier trabajador elegible de EEUU que solicite durante el primer 50 por ciento del período de trabajo en el contrato aprobado

Todo trabajador que crea que sus derechos hayan sido violados bajo este programa puede presentar una demanda confidencial.

Para información adicional:

**1-866-4-USWAGE**

(1-866-487-9243) TTY: 1-877-889-5627

**WWW.WAGEHOUR.DOL.GOV**

U.S. Department of Labor | Wage and Hour Division

WHD 1490SP Abril 2012

## ATTACHMENTS TO ETA 790

**§ 16, JOB DESCRIPTION AND REQUIREMENTS:**
Cultivate and harvest corn, cotton, peanuts, sweet potato, pickling cukes, and flue-cured tobacco. Load and unload corn, peanuts, sweet potato, cukes, cotton, and flue-cured tobacco. Pull weeds/chop: Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe. Prolonged walking, standing, bending, stooping, and reaching. Job is outdoors and continues in all types of weather. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 75 lbs. to shoulder height repetitively throughout the workday and able to lift and carry 75 lbs. in field. Must not hinder another worker's productivity. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination. Requires one month verifiable farmworker experience in the crop activities listed.

Greenhouse Seeding: Workers will fill trays with soil and feed full trays thru seeder. Workers will then transport seeded trays to greenhouse structure and place into float bed in an orderly manner in accordance with supervisors' instructions. Extra care must be taken not to disturb, disrupt or spill the planted seeds from the styrofoam tray cells during transport from seeder to floatbed. Tobacco seeds are extremely susceptible to disease. Therefore, each employee must exercise care and remain vigilant to ensure that their hands, clothes, and shoes are kept clean before entering the greenhouse. Greenhouse workers may be required to cleanse hands by washing in milk before handling tobacco seedlings. Workers will also work in and around greenhouses after germination doing general maintenance, clipping, fertilizing and monitoring according to supervisors' instructions.

Pickling Cucumbers: Move along row, stoop and bend to pick all cucumbers ¼ inch in diameter and larger. Discard all jumbo cucumbers (over two inches in diameter) in the row middle and place remaining cucumbers in a 5/8 bushel bucket. Carry full buckets to a nearby truck for dumping, receive ticket or token in emptied bucket and return to assigned row to continue task. Workers must "clean the vines" (pick all cucumbers of marketable size) and larger as specified by employer. Workers will be required to stay on their assigned row. Worker must be careful to avoid damaging vines, blooms and smaller cucumbers. May be required to block and thin cucumbers and perform general cultivation work and move tractors or trucks on the farm incidental to picking. It is extremely important that the workers remove and discard all cucumbers over two inches in diameter from the vine. Workers may be required to perform other duties as required by employer. Hand harvesting pickling cucumbers will be paid on a piece rate of $0.75 per 5/8 bushel. Workers must pick a minimum of five 5/8 bushel buckets per hour. Any worker who does not meet this production standard may be terminated.

Sweet potatoes: Sweet potato plant pullers will stoop, bend and kneel to pull sweet potato plants from beds, exercising care in selecting plants of appropriate size as specified by supervisor. Selected plants will be boxed in an orderly fashion in field crates and crates windrowed and loaded on trailers for transport. May ride mechanical transplanter. May walk behind transplanter to reset missing plants. Sweet potato transplanting will be paid hourly. Sweet potato harvest workers will walk along row that has been previously plowed. Workers will stoop, bend and kneel to pick up sweet potatoes using hands and fingers to dig out unexposed potatoes. Workers may grade in the field separating #1's and #2's into separated 5/8 field hampers. Canners, when harvested, will be placed into a separate bin. Damaged or diseased potatoes will not be harvested. Worker will be required to stay on assigned row. Full hampers weighing up 35 lbs. will be carried to truck row to be loaded onto truck or trailer. Workers may be required to ride mechanical harvester. Workers may be required to perform other duties as required by

the employer. Hand harvesting sweet potatoes will be paid on a piece rate of $0.50 per 5/8 bushel. Mechanical harvest work, if any, will be paid hourly.

Tobacco: Harvest workers will move into a row of mature tobacco plants. Each row may be as long as 1500 feet. The tobacco plant may be from 4 to 6 feet tall and spaced about 20 inches apart in each row. Starting at the bottom of the plant, the worker will bend over at the waist and pick the bottom two or three leaves from each plant. Staying bent over, the worker will move down the row of mature tobacco repeating the above-process. (The bottom leaves may be as low as two inches from the ground.) The worker will place the picked leaves under his arm. Once the worker has gathered an armload of leaves, he will carry it to a field sled. The leaves must be laid neatly onto the field sled. The worker then will return to the row and repeat the process. All workers must be able to distinguish ripe tobacco by observing the color of the leaves. Care must be exercised to prevent breaking of the plants. Workers must be able to move quickly along the rows and move in unison with the field sleds. Worker may ride mechanical transplanter and mechanical harvester. Workers may walk behind transplanter to reset missing plants. Workers must remove all flowering tops and suckers from tobacco plants. Workers may assist in removing tobacco from barn, placing on sheets to be bound and loaded on trucks. Weight of sheets of tobacco may be 300 lbs. Workers are required to work in fields when tobacco leaves are wet with dew or rain. Worker should be able to stand for prolonged periods of time to prime (pull) leaves which are from two to ten inches from the ground. Workers may be exposed to noxious plants and insects. Temperatures in tobacco fields during working hours may range from 40 to over 100 degrees Fahrenheit. Workers must be able to perform the job as described above. Workers may be required to perform other duties as required by the employer. The pay rate for all tobacco work is hourly paid.

Soybeans, Corn, Peanuts, and/or Cotton: Workers will walk along rows as specified by employer and remove weeds and grass from soybean, corn, and/or cotton fields by hand or using a hoe.

Workers may be required to perform work that is incidental to farming the crops listed in the application. All other duties, if any assigned, will be those duties of Farm Worker, Diversified Crops, DOT code 407.687-010 (SOC (ONET/OES) code 45-2092.02). This is a very demanding and competitive business in which quality specifications must be rigorously adhered to. Sloppy work cannot and will not be tolerated.

All workers are required to follow common sanitary practices at all times. This is particularly important when tounching crops for human consumption. Workers are required to cleanse their hands by washing thoroughly with soap and water before entering field for harvest activities and after each break. Smoking and the use of tobacco products prohibited during working time.

Full Growing Season Commitment: The job offered requires that the worker be available for work six (6) hours per day Monday through Friday and five (5) hours on Saturday every day that work is available and for the full anticipated period of employment, even though work may be slack for a brief period of time. The worker agrees to be available for work and performed assigned tasks whenever work is available through the full anticipated period of employment. Work available is defined as, no work required on the worker's Sabbath or Federal holidays, but work is required six (6) hours per day Monday-Friday, and five (5) hours on Saturday.

The worker understands that if he abandons his employment or is terminated for cause prior to the end of the anticipated period of employment, the worker will forfeit the ¾ guarantee and reimbursement of certain transportation costs. Excessive absences and/or tardiness cannot be tolerated and may result in termination.

Daily individual work assignments, crew assignments, and location of work will be made by and at the sole discretion of the employer and/or worker's supervisor. Workers may be assigned a variety of duties in any given day and/or different tasks on different days. Workers will be expected to perform any of the listed duties and work on any crop as assigned by the employer and/or worker's supervisor.

**§ 18, MORE DETAILS ABOUT THE PAY**:
In accordance with 20 CFR § 655.122(l) governing rates of pay, the wage rate offered herein is the highest of the adverse effect wage rate ("AEWR"), the prevailing hourly rate, the prevailing piece rate, the agreed- upon collective bargaining wage, or the federal or State minimum wage, in effect at the time work is performed for every hour or portion thereof worked during a pay period covered by the approved labor certification. If the worker's piece rate earnings for a pay period result in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate.

The employer will pay the prevailing piece rate in a crop activity for which a piece rate is specified if the DOL determines that a higher piece is prevailing in the crop activity in the area of intended employment than the piece rate specified herein. In the event DOL announces a lower prevailing piece rate in a crop activity for which a piece rate is specified herein, the employer reserves the right to pay the lower prevailing piece rate as soon as it is announced by DOL. In order to assure workers fair earnings, the employer may in its discretion temporarily raise the piece rate above the offered piece rate herein or may elect to pay workers at the highest hourly rate when, in the employer's judgment, working conditions are unusually adverse. The employer will apply the prevailing hourly rate in a crop activity for which an hourly rate is specified if DOL determines that a higher hourly rate is prevailing in the crop activity in the area of intended employment other than the hourly rate specified herein. In the event DOL promulgates a new AEWR during the recruitment or work contract period which is higher or lower than the AEWR herein, the highest of the adjusted AEWR, the prevailing hourly rate, the agreed upon collective bargaining wage, or the federal or State minimum wage will become the new wage rate. In other words, the wage rate may increase or decrease during the life of this contract by DOL notification of such change. In the event the AEWR is eliminated from the H-2A program during the life of this work agreement, either administratively or legislatively, the employer reserves the right to pay the new wage rate under the new guidelines as soon as it becomes effective.

The employer will make the following deductions from the worker's wages: FICA, Medicare and income taxes as required by law; cash advances and repayment of loans; repayment of overpayment of wages to the worker; payment for articles which the worker has voluntarily purchased from the employer; long-distance telephone charges; recovery of any loss to the employer due to the worker's damage, beyond normal wear and tear, or loss of equipment or housing items where it is shown that the worker is responsible. No deduction not required by law will be made that brings the worker's hourly earnings below the higher of the federal minimum wage and State minimum wage.

The employer will not pay the worker a bonus.
Payroll periods will be weekly. On or before each payday, workers will be provided with an hours and earnings statement, which contains, at a minimum, (i) total earnings for the pay period; (ii) hourly rate and/or piece rate of pay; (iii) hours of employment offered to the worker (showing offers in accordance with the 3/4ths guarantee separate from any hours offered over and above the guarantee); (iv) hours actually worked by the worker; (v) itemization of all deductions; (vi) if piece rates are used, the units produced daily; (vii) beginning and ending dates of the pay period; and, (viii) the employer's name, address and FEIN, all in compliance with 20 CFR § 655.122(k), and all federal and State requirements.

Employer guarantees to offer workers employment for a total number of work hours equal to a least three-fourths (3/4ths) of the workdays of the total period beginning with the first workday after the arrival of

the worker at the place of employment and the worker is ready, willing, able and eligible to work, and ending on the expiration date specified in the work contract or any extensions thereof or upon the termination of this employment as specified hereinbelow. Details of the 3/4ths guarantee are outlined in 20 CFR § 655.122(i). For purposes of this guarantee, a "workday" consists of six hours daily Monday through Friday and five hours on Saturday. Workers may be offered work on federal holidays and on their Sabbath but will not be required to do so. Pursuant to 20 CFR § 655.122(n), workers who voluntarily abandon employment or are terminated for cause, and where the employer provides timely notification to the NPC and DHS, will relieve the employer for subsequent transportation and subsistence costs and the 3/4ths guarantee. The employer may terminate the work contract where the services are no longer required for reasons beyond the employer's control due to fire, weather, or other Act of God. In the event of contract impossibility, the employer will fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract to the time of its termination, the employer shall perform its obligations prescribed at 20 CFR § 655.122(o)(1-3). Reasonable efforts will be made to transfer a worker terminated for contract impossibility to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable.

All requests for leave of absence must be in writing. All absences will be counted towards hours offered for the purpose of computing the 3/4 guarantee.

Employer will provide a worker referred through the Interstate Clearance System a full week's work for the week beginning with the anticipated date of need in accordance with 20 CFR 653.501(d)(2)(v)(A), unless employer has amended the date of need by notifying the local order-holding office no later than ten (10) days before the date of need. If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the Interstate Clearance System the first week's wage guarantee starting with the originally anticipated date of need. If the worker fails to notify the order-holding office of his continuing interest in the job no sooner than nine (9) working days and no later than five (5) working days before the date of need, the worker will be disqualified from the above-mentioned guarantee. The employer may require the worker to perform alternative work if the guarantee cited in this section is invoked. Alternative work will be general farm labor and farm maintenance activities that are incidental to farming the crops listed in the application.

The amount of the first week's wage guarantee at the AEWR currently in effect is 35 hours x $11.27 = $394.45.

**OTHER CONDITIONS OF EMPLOYMENT, CLARIFICATIONS, AND ASSURANCES:**
REQUIRED ASSURANCES: The employer agrees to abide by the regulations at 20 CFR §§ 655.135 and 653.501. The employer adopts and incorporates by reference all required assurances set out at 20 CFR § 655.122. To the extent there is any discrepancy between this Form ETA 790 and Attachments, the required assurances statement attached to this Form ETA 790, or the Immigration and Nationality Act (the "INA") and any applicable H-2A regulations, then the INA and the applicable H-2A regulations shall always control.

ASSURANCE OF CONTINUOUS WORKER'S COMPENSATION INSURANCE COVERAGE: Pursuant to 20 CFR 655.122(e)(1), the employer will provide worker's compensation insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Prior to labor certification determination, the employer will provide proof of worker's compensation insurance coverage to the certifying officer in accordance with 20 CFR 655.122(e)(2). In the event that the current coverage will expire during the period of need reflected on attached ETA 790, Item 9, the employer gives written assurance of its intent to renew and maintain continuous coverage for the entire dates of need, as evidenced by the signed and dated ETA 790 to which this assurance is attached.

CONDITION OF EMPLOYMENT: All applicants must be able (with or without reasonable accommodation), willing, and qualified to perform all the work described, and must be available for the entire anticipated period of employment. The job offered is temporary and full-time only for the stated anticipated period of employment and any approved extension thereof. There is no offer or guarantee to be recalled for future employment except for the required solicitation of certain former U.S. workers in compliance with 20 CFR § 655.153.

EARNINGS RECORDS: Accurate and adequate earnings records will be kept in accordance with 20 CFR § 655.122(j). All records will be available for inspection and transcription by the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker as evidenced by appropriate documentation (an Entry of Appearance as Attorney or Representative, Form G-28, signed by the worker confirming such representation). Such record will be made available for inspection and copying within 72 hours following notice from the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and designated representatives as described in this paragraph.

CONTRACT IMPOSSIBILITY: The employer will terminate the work contract of any worker whose services are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes fulfillment of the contract impossible. Whether such an event constitutes a contract impossibility will be determined by the Certifying Officer. In the event of such termination of a contract, the employer must fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract beginning with the first workday after the arrival of the worker at the place of employment or the advertised first date of need, whichever is later, and ending on the date of termination. The employer must make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not affected, the employer must: (1) Return the worker, at the employer's expense, to the place from which the worker (disregarding intervening employment) came to work for the employer, or transport the worker to the worker's next certified H-2A employer, whichever the worker prefers; (2) Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment; and (3) Pay the worker for any costs incurred by the worker for transportation and daily subsistence to that employer's place of employment. These transportation arrangements apply only to those workers recruited from outside the area of intended employment.

TERMINATIONS: The employer may terminate the worker with notification to the appropriate State and federal agencies if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct; (c) hinders another worker's productivity; (d) malingers or otherwise refuses without justified cause to perform as directed the work for which the worker was recruited and hired; (e) provides other lawful job-related reason(s) for termination of employment; (f) abandons his employment; (g) fails to meet applicable production standards when production standards are applicable; (h) falsifies identification, personnel, medical, production, or other work-related records; (i) fails or refuses to take an alcohol or drug test; (j) employer discovers a criminal conviction record or status as a registered sex offender that employer reasonably believes will impair the safety and/or living conditions of other workers; (k) commits an act or acts of insubordination, including the failure to regard employer's authority; (l) lies or provides a false statement to the employer; (m) collects any money or other thing of value from prospective employees or current employees in order for the payor to work for this employer; (n) violation of employer's safety rules; (o) unauthorized or illegal possession, use or sale of alcohol or controlled substances on employer's premises or during working hours, while engaged in work activities or in employer's vehicles; (p) unauthorized or illegal possession, use or sale of weapons, firearms, or explosives on employer's premises or in employer's vehicles; (q) theft or dishonesty; (r) inappropriate physical contact; (s) harassment; (t)

discrimination or retaliation; (u) disrespect toward fellow workers, visitors or other members of the public; (v) performing outside work or use of employer's property, equipment or facilities in connection with outside work while on employer's time; (w) poor attendance or poor performance. The grounds for immediate termination listed above are not all inclusive. All termination decisions will be based on an assessment of all relevant factors.

In the event of termination from medical reasons occurring after arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place from which the worker came to work for the employer and reimburse worker for reasonable cost of transportation and subsistence incurred by the worker to get to the place of employment. These arrangements apply only to workers who are recruited outside the area of intended employment.

REPORTING ABANDONMENT OF EMPLOYMENT OR TERMINATION FOR CAUSE:
The employer will report workers who, a) voluntarily abandon employment before the end of the contract period, or b) workers who are terminated for cause, to the Chicago National Processing Center, and H-2A workers to the Department of Homeland Security, in writing or other approved method, not later than two (2) days after the abandonment or termination occurs. Abandonment will be deemed to begin after a worker fails to report for work at the regularly scheduled time for five (5) consecutive days without the consent of the employer. The employer will not be responsible for providing or paying for reported workers a) subsequent transportation and subsistence expenses, and b) the worker will not be entitled to the 3/4 guarantee.

PROOF OF CITIZENSHIP: All workers hired under this order will be required to provide documentation attesting to United States citizenship or legal status to work in the United States.

AGRICULTURAL WORK AGREEMENT: A copy of the work contract will be provided to the worker by the employer no later than on the day work commences. For an H-2A worker, a copy of the work contract will be provided no later than the time at which the worker applies for the visa. For an H-2A worker going from an H-2A employer to a subsequent H-2A employer, a copy of the work contract will be provided no later than the time an offer of employment is made by the subsequent H-2A employer. Material terms and conditions of the work contract may be translated into a language understood by the worker, however the English version of the work contract shall always control.

OTHER: The working conditions will comply with applicable federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity Employer and will offer United States workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer non-immigrant workers.

EMPLOYER FURNISHED TOOLS AND EQUIPMENT: The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

SUBSTANCE ABUSE POLICY: The use or possession or being under the influence of illegal drugs or alcohol during working time is prohibited. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process.

REQUIRED DEPARTURE: H-2A workers are required to leave the United States at the end of the period certified by the Department of Labor or separation from the employer, whichever is earlier, as required under 20 CFR § 655.135(i), unless the H-2A worker is being sponsored by another subsequent

employer. This shall serve as official notification of this requirement to any H-2A worker employed under the agricultural work agreement.

PROHIBITIONS AGAINST EMPLOYEES PAYING FEES: The employer and its agents have not sought or received payment of any kind from any employee subject to 8 U.S.C. § 1188 for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs, as prohibited by 20 CFR § 655.135(j). Costs that are the responsibility and primarily for the benefit of the worker, such as government-required passport fees, are not included in this prohibition.

CONTRACTS WITH THIRD PARTIES COMPLY WITH PROHIBITIONS: The employer has contractually forbidden any foreign labor contractor or recruiter, if any, whom the employer engages, either directly or indirectly, in international recruitment of H-2A applicants to seek or receive payments from prospective employees, except as provided for in Department of Homeland Security regulations at 8 CFR § 214.2(h)(5)(xi)(A). Likewise, all employees are prohibited from collecting any money or other thing of value from prospective employees or current employees in order for the payor to work for the employer. This employer has zero tolerance for prohibited payments. Employees should report to the employer immediately the name of any person seeking to collect a prohibited payment and the amount sought. Any employee found to have collected a prohibited payment will be required to reimburse the injured party immediately and will be terminated from employment. An employee cannot be discriminated against or discharged for reporting a prohibited payment.

NOTICE OF WORKER RIGHTS: The employer agrees to post and maintain in a conspicuous location at the place of employment a poster to be provided by the Secretary of Labor as described at 20 CFR § 655.135(l), when such poster is available from the Secretary.

## *ARCHIVOS JUNTOS DE ETA FORMULARIO 790*

***§ 16, DESCRIPCION Y REQUISITOS DEL TRABAJADOR:***
*Cultivar y cosechar elote, algodon, cacahuates, camote, pepinos para encurtir, tabaco. Cargar y descargar camote, pepinos, cacahuates, tabaco, soja, elote, y algodon. Jalar/cortar hierbas. Trabajadores caminaran al par de los surcos como especificado pro el empleador y remover hierba y pasto del campo a mano o usando un azada. Tiempos prolongados caminando,estar parado, agachado, doblado, y alcanzando. El trabajo esta al aire libre y continua en todo tipo de clima. Los trabajadores pueden ser requerido que se sometan a una prueba al azar de droga o alcohol sin costo al trabajador. Falta de cumplir con este requisite puede resultar en terminacion inmediata. Todos examines ocurriran despues de la intrevista. Deven de poder levantar 75 libras a la altura de el hombro repetitivamente en todo el dia de trabajo y ser capas de levanter y llevar 75 libras en el campo. El trabajador no deve de dificultar la productividad de ortros trabajadores. El uso de celular o otros electronicos durante horas de trabajo estrictamente prohibido except por llamadas relacionadas al trabajo o de emerjencia y violacion puede resultar en terminacion inmediata. Se require un mes de experiencia con trabajo de granja verificable en la actividad de cosechas enumerados.*

*SEMILLANDO INVERNADEROS: Los trabajadores llenaran contenedores con tierra y lo pasaran por el semillero. Luego los llevaran adentro del invernadero y los colocaran ordenablemente al lugar designado segun las instrucciones del Patron o Supervisor. Los trabajadores tomaran precaucion de no molestar o dejar caer los contenedores cuando esten moviendolos al invernadero desde el semillero. Las semillas de tabacco son extremadamente seseptible a enfermedades y por esta razon, los trabajadores tendran precaucion extra de mantener limpio las manos, ropa, y zapatos antes de entrar al invernadero. Los trabajadores de invernadero pueden ser requeridos a limpiar sus manos lavadolas en leche antes de trabajar con las plántulas de tabaco. Los trabajadores trabajaran adentro y alrededor de los invernaderos despues de germinacion haciendo mantenimiento general, fertilizando, cortando y vigilando segun las instrucciones del Patron o Supervisor.*

*PEPINOS PARA ENCURTIR: El trabajador ira a lo largo de la hilera, agachandose y doblandose para recoger todos los pepinos de 1/4 de pulgada en dimetro o mas grande. Escartar todos los pepinos grandes (mas de 2 pulgadas en dimetro) en el medio del surco y poner los pepinos que quedan en una 5/8 bushel cubeta. Los trabajadores cargaran las cubetas llenas a un camion cercano para vaciarlos y recibir una ficha o cupon en le cubeta vacido y regresar al surco asignado por el Patron o Supervisor para continuar la tarea. Trabajadores deben"limpiar las Guias" (Piscar todos los pepinos de tamaño vendible) y tamaño como se lo exige el patron, se le exige al trabajador que se quede en el surco asignado. El trabajador debe tener cuidado de no dañar las enredaderas, flores y pepinos pequeños. Puede ser requerido impedir y adelgar pepinos y hacer trabajo de cultivar general y mover tractores o camiones en el camp en relacion a la recogida. Es muy importante que los trabajadores remuevan y desechen todos los pepinos de mas de 2 pulgadas de diametro de las vides. Se le puede exigir que lleve a cabo otras tareas segun lo requiera el patron. Pepino par encurtir cosechado a mano sera pagado por piesa a $0.75 por 5/8 bushel. Los trabajadores deben piscar un minimo de 5/8 cubetas bushel por hora. Cualquier trabajador que no comple con esta norma de produccion puede ser despedido(a).*

*PISCANDO EL CAMOTE: Los arrancadores de plantas de camote se agacharan, se doblaran y arrodillaran para arrancar las plantas de camote del macizo, teniendo cuidado en escojiendo las plantas con el apropiado tamaño como especificado por el el Patron o Supervisor. Plantas escogidas seran empacadas correctamente en un cajon en el campo que sera colocado en una hilera y cargadas a una traila para ser transportadas. Se puede requerir que vayan montados en una transplantadora mecanicos. Puede que los trabajadores tengan que caminar dedtras del transportador para sembrar las plantas que falten. El trabajo de transplantar camote se pagara por hora. Trabajadores que cosechen camote*

*caminaran a lo largo de la hilera que ya ha sido arada. Los trabajadores se agacharan, doblaran y arrodillaran para recoger camote usando las manos y dedos para escarbar y sacar los camotes que no estan expuestos. Puede que los trabajadores clasifcaran los camotes en el camp separando los del numero 1 y 2 en diferentes 5/8 cesta de campo. Los camotes de calificacion numero 2 seran colocados en otro cajon. Conserveros quando sean cosechados seran puestos en un compartimiento separado. Camote dañados o enfermo no seran recogidos. Se le requerira al trabajador que se quede en el surco asignado. Las cestas llenas que pesan hasta 35 libras seran llevadas al la fila de camiones para ser cargadas al camion o remolque. Puede que el trabajador se le requiera montar en una maquina de cosechar. El trabajador puede ser requerido a hacer otras tareas como se lo requiera el empleador. Pago para la cosecha hecho a mano de camote sera pagada a $0.50 centavos por 5/8 bushel. Trabajo usando un cosecador mecanicom, si alguno, sera pagado por hora.*

*TABACO: Cosechadores de tabaco se moveran al surco de planta de tabaco maduro. Cada surco puede ser de 1500 pie de largo. Puede que la planta de tabaco sea de 4 a 6 pie de alto y colocados aparte por aproximadamente 20 pulgadas en cada surco. Enpezando al fondo de la planta, el trabajador se doblara en la cintura para piscar dos o tres hojas mas bajas de cada planta. Siguiendo doblado el trabajador caminara por el surco de tabaco maduro repitiendo el dicho proceso. (Las hojas al fondo pueden ser dos (2) pulgadas arriba del la tiera.) El trabajador colocara las hojas cosechadas de bajo su brazo. Una ves que se llene el brazo, se lo llevara al trino de campo. Las hojas tienen que ser puestas en el trino de campo bien organizadas. Luego el trabajador regresara al surco para repetir el proceso. Todos los trabajadores tienen que tener la habilidad de destinguir el tabaco maduro por observando el color de las hojas. Se debe tener cuidado de no dañar o romper las plantas. Los trabajadores deban poder moverse rapidamente por los surcos y moverse en unisono con la trino de campo. Puede que los trabajadores se montaran en un transplantador mechanico y cosechador mecanico. Trabajadores pueden caminar detras del transportador para reinisiar plantas dessaparecidas. Trabajadores deben remover los retoñios y flores de las plantas de tabaco. Puedeque los trabajadores ayudaran en quitando tabaco seco del almacen colocandolo sobre sabanas para encebramiento y cargado en un camion. El peso de estas sabanas de tabaco puede ser de 300 libras. Se le require al trabajador que trabajan en los campos cuando las hojas de tabaco estan mojadas con lluvia o rocio. Trabajadores deben poder estar parados para periodos largos para piscar hojas de tabaco de 2 a 10 pulgadas de la tierra. Puede que trabajadores seran expuestos a plantas nocivos y insectos. Temperaturas en campo de tabaco en las horas de trabajo flactuan de 40 a mas de 100 grados F. El trabajador deve de poder hacer las tareas dichas. Los trabajadores pueden ser requeridos a hacer otras tareas como se lo requiera el empleado. El pago para todo los trabajadores en tabaco es por hora.*

*SOJA, ELOTE, CACAHUATES Y O ALGODON: Los trabajadores iran a lo largo de las hileras como especificado por el Patron or Supervisor y sacando las llerva y sacate de la soja, elote, cacahuates y/o algodon con las manos o usando un asadon.*

*Se les puede ser reauerodo a los trabajadores realizer trabjo que acompañan con el cultivo de la cosechar enumerados en la solicitud. Todos los otros deberes, si asignados, seran esos deberes del trabajador agricola, cultivos diversificados, codigo DOT 407.687.010 (SOC (ONET/OES) code 45-2092.02). Este es un negocio muy exigente y competitivo en cual las especificaciones de calidad deben ser adherido rigurosamente. Trabajo descuidado no puede ser ni sera tolerado.*

*Todos los trabajadores están obligados a seguir las prácticas sanitarias comunes en todo momento. Esto es particularmente importante cuando cosechas a mano son cultivadas para el consumo humano. Los trabajadores están obligados a limpiar sus manos en la forma de lavandoselas a fondo con agua y jabón antes de entrar en el campo para las actividades de cosecha y después de cada descanso. Fumar y el uso de productos de tabaco prohibido durante el tiempo de trabajo.*

*COMETERSE CON EL CRECIMIENTO DE TEMPORADA LLENA: El trabajo que se ofrece require que los trabajadores estan disponibles para trabajar seis (6) horas por dia, de lunes a viernes y cinco (5) horas el Sabado y todos los dias que hay trabajo y tambien por el period de la etisipada de empleo, asi como el trabajo se aflojera por un tiempesito. El trabajador conformara que cuando higa trabajo este disponible para hacer las tareas cuando higa trabajo y sobre la temporada llena de empleo o que se encuentra. El trabajo esta deacuerdo ser disponible y realuzar tareas que se le asignen que el trabajo es disponible por el priodo lleno antisipado de empleo. Trabajo disponible es definido como, no se trabajara en el tiempo de descanso o en la temporada de las vacciones federales, pero el trabajo si se require seis (6) horas por dia de Lunes - Viernes, y cinco (5) horas los Sabados.*

*El trabajador entiende que si abandonan su trabajo de empleo o son terminados de empleo por causa antes de la temporada de empleo, o terminacion o como se encuentran, el trabajador pierdera la guarantia de 3/4 de reembolso de ciertos costos de transportacion. Ausencias excesivas y/o llejar tarde no puede ser tolerado y puede resultar en terminacion.*

*Asignaciones diarias de trabajo individual, asignaciones a tripulacion, y la locacion de trabajo sera asignado por, y nada mas por, el Empleador o supervisor. Trabajadores pueden ser asignados a una variedad de tareas en cualquierdia y/o diferentes tareas en diferentes dias. Trabajadores seran disponibles para hacer las ordenes y el trabajo en cualquier cosecha asignada por el Empleador o Supervisor.*

### *§ 18, MAS DETALLES SOBRE EL PAGO:*

*De acuerdo con 20 CFR § 655.122(l) que regula las tasas de remuneración, el salario ofrecido en este documento es el más alto de la tasa del salario efecto adverso ("AEWR"), la tasa vigente por hora, el tipo de pieza que prevalece, la acordados salario negociación colectiva, o la salario mínimo federal o estatal, en vigor en el trabajo a tiempo parcial se realiza por cada hora o fracción trabajado durante un período de pago cubierto por la certificación laboral aprobada. Si, se proporcionará al trabajador ganancias a destajo de los trabajadores para un período de pago resultado en los ingresos por hora promedio de menos del mínimo garantizado se le pagara hasta llegar a la tasa mínima garantizada.*

*El empleador pagará el precio por pieza que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza si el Departamento de Trabajo determina que una pieza mayor se está imponiendo en la actividad de agrícola en el área del empleo previsto que la tasa de pieza especificada en este documento. En el caso que el DOL anuncie una tasa de pieza imperante que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza en el presente documento, el empleador se reservara a derecho de pagar la tasa pieza imperante que prevalece en cuanto se anunció por el DOL. Con el fin de asegurar trabajadores de ganancias justas, el empleador puede, a su discreción aumentar temporalmente la tasa por encima de la pieza por pieza ofrecida en este documento o pueden optar por pagar a los trabajadores en el más alto precio por hora, cuando, a juicio del empresario, las condiciones de trabajo son inusualmente adversas. El empresario aplicará la tarifa por hora que prevalece en una actividad de cultivo para el cual se especifique en un precio por hora si DOL determina que una tarifa por hora más alto se está imponiendo en la actividad agrícola en el área del empleo previsto que no sea la tarifa por hora especificada en el presente documento. En el caso de DOL que promulga una nueva AEWR durante el período de reclutamiento o contrato de trabajo que es mayor o menor que la AEWR en el presente documento, el más alto de el AEWR ajustado, la tarifa por hora que prevalece, el salario acordado la negociación colectiva, o el salario mínimo federal o estatal se convertirá en la nueva tarifa de salario. En otras palabras, el salario puede aumentar o disminuir durante la vigencia de este contrato mediante notificación DOL de dicho cambio. En el caso de que el AEWR es eliminado del programa H-2A durante la vigencia de este acuerdo de trabajo, ya sea administrativa o legislativa, el empleador se reserva el derecho de pagar la nueva tarifa de salario bajo las nuevas directrices en cuanto entre en vigor.*

*El empleador hará las siguientes deducciones de los salarios de los trabajadores: FICA, Medicare y impuestos como lo requiere la ley; adelantos en efectivo y pago de los préstamos; reembolso del pago en exceso de los salarios a los trabajadores; el pago de los artículos que el trabajador ha adquirido voluntariamente del empleador; las tarifas telefónicas de larga distancia; recuperación de cualquier pérdida para el empleador debido a los daños del trabajador, más allá del desgaste normales y rotura o pérdida de equipos o elementos de vivienda, donde se muestra que el trabajador es responsable. No deducción no requiere que la ley se hará que trae ingresos por hora de los trabajadores por debajo de la más alta del salario mínimo federal y el salario mínimo estatal.*

*El empleador no pagará bonos. Períodos de nómina será semanal. En o antes de cada día de pago, los trabajadores se les dara una declaracion de horas y ganancias, que contiene, como mínimo, (i) los ingresos totales para el período de pago; (ii) por hora y/o tasa de pago por pieza; (iii) las horas de trabajo que se ofrecen al trabajador (mostrando las ofertas de conformidad con los 3/4 garantizan separado de las horas que ofrece más allá de la garantía); (iv) las horas efectivamente trabajadas por el trabajador; (v) desglose de todas las deducciones; (vi) si se usa la tasa de pago por pieza, las unidades producidas cada dia; (vii) fechas cuando el periodo de paga comenzando y terminando, (viii) el nombre del empleador, dirección y FEIN, todo ello en cumplimiento de 20 CFR § 655.122(k), y todos los requisitos federales y estatales.*

*El empleador garantía ofrecer empleo de trabajadores para un número total de horas de trabajo igual a un menos tres cuartos (3/4) de los días de trabajo del período total a partir del primer día de trabajo después de la llegada del trabajador en el lugar de trabajo y el trabajador esté listo, dispuesto, capaz y con derecho a trabajar, y hasta la fecha de vencimiento especificada en el contrato de trabajo o de las prórrogas de los mismos o sobre la terminación de este trabajo como se especifica a continuación. Los detalles de la garantía de 3/4 se describen en 20 CFR § 655.122(i). Para efectos de esta garantía, una "jornada de trabajo" se compone de seis horas diarias de lunes a viernes y de cinco horas el sábado. Los trabajadores pueden ser ofrecidos a trabajar en días festivos federales y en su día de reposo, pero no estarán obligados a hacerlo. De conformidad con 20 CFR § 655.122(n), los trabajadores que voluntariamente abandonan el empleo o sean terminados con causa, y donde el empleador proporciona notificación oportuna a la NPC y el DHS, aliviarán la empleador por transporte y dietas posteriores costos y la 3/4 garantía. El empleador puede dar por terminado el contrato de trabajo, donde ya no se requieren los servicios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios. En caso de imposibilidad de contrato, el empleador cumplirá unas tres cuartas partes de garantía para el tiempo que ha transcurrido desde el inicio del contrato de trabajo al momento de su terminación, el patrono deberá cumplir con sus obligaciones prescritas en 20 CFR § 655.122(o)(1-3). Se harán esfuerzos razonables para transferir un trabajador despedido por imposibilidad de contrato para otro empleo comparable aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, como apliquen.*

*Todas las solicitudes de licencia deben ser por escrito. Todas las ausencias serán contados hacia horas que se ofrecen a los efectos para calcular la garantía 3/4.*

*Empleador proporcionará al trabajador con una referencia a través del Sistema de Liquidación Interestatal trabajo de una semana completa para la semana que comienza con la fecha prevista de necesidad, de acuerdo con 20 CFR 653.501(d)(2)(v)(A), a menos que el empleador modificado la fecha de la necesidad de notificar a la oficina de orden de retención local de no más de diez (10) días antes de la fecha de necesidad. Si el empleador no notificar a la oficina de orden de retención, entonces el empleador deberá pagar al trabajador imputables contemplados a través del Sistema de Liquidación Interestatal de garantía salarial de la primera semana a partir de la fecha prevista inicialmente de la necesidad. Si el trabajador no notifica la orden de retención de la oficina de su continuo interés en el*

*trabajo no antes de nueve días (9) de trabajo y no más tarde de cinco (5) días hábiles antes de la fecha de necesidad, el trabajador será descalificado de la garantía antes mencionada. El empresario podrá exigir al trabajador para realizar un trabajo alternativo si se invoca la garantía citada en esta sección. Trabajo alternativo estará actividades de trabajo agrícola y mantenimiento granja generales que son inherentes a la agricultura los cultivos enumerados en la solicitud.*

*La cantidad de salario garantizado de la primera semana en el AEWR actualmente en vigor es de 35 horas x $11.27 = $394.45.*

**§ 3, *DIVULGACION DE TERMINOS Y CONDICIONES DE VIVIENDA:***
*El empleador requiere acceso a el sistema de liquidación intraestatal y interestatal y aseguraque la vivienda de los trabajadores satisfará normas federales no mas tardar de (30) días en avanzado de la fecha de necesidad en el ajunto archivo ETA 790. Vivienda y servicios públicos son proveídos sin costo alguno al trabajador que no sea capaz de regresar a su propio domicilio el mismo día. Trabajadores reclutados contra esta orden de trabajo dentro de la distancia normal de viaje al trabajo no serán proveídos con vivienda, subsistencia o transportación. La vivienda proveída es para grupo. En el evento de que una mujer trabajadora sea empleada, taza, ducha y habitación separadas serán proveídas por el empleador. Vivienda para toda la familia no es disponible y la provisión de casa para toda una familia no es imperante para el área de trabajo. La vivienda cumplirá con las normas aplicables del Gobierno Federal, Estatal, y local. Trabajadores serán responsables por mantener la vivienda ordenada y limpia. El coste razonable de reparaciones por daños, además de otros causados por uso y desgaste normal, podrían ser cobrados a los trabajadores a los que se les encuentre responsables por los daños a la vivienda y muebles.*

***§ 19, ARREGLOS DE TRANSPORTE*:**
*Para los trabajadores contratados fuera del área del empleo previsto, gastos de transporte y estancia serán reembolsados por el empleador de conformidad con 20 CFR § 655.122(h). Transporte de entrada se reembolsará sobre la base de no menos (y no está obligado a ser algo más que) los cargos más económicos y razonables para la distancia implicada. El reembolso de subsistencia será la cantidad que el empleador le cobraría para proporcionar al trabajador las tres comidas por día de $12.09 por día o por trabajadores que prestan los recibos serán reembolsados hasta el cantidad autorizado por los EE.UU. continentales viáticos de $51.00 calculado por el método de GSA. Los pagos se realizan en base a la fecha de publicación de las tarifas del programa H-2A de comidas permitidas en el Registro Federal.*

*Transporte al lugar de empleo. Si el empleador no ha previamente avanzado, los costos de transporte y costos de subsistencia para el trabajador o de otra manera proporcionado dicho transporte o subsistencia directamente al trabajador por otros medios y si el trabajador complete el cincuenta por ciento (50%) de el trabajo del contrato, empleador reembolsará al trabajador para los gastos razonables incurridos por el trabajador para el transporte y subsistencia diaria esde el lugar que el trabajador ha llegado a trabajar para el empleador a el lugar de empleo del empleador. La cantidad del pago del transporte será el cargo mas economico y rasonable y commun cobro de transporte. La cantidad del pago por día natural no deberá ser inferior al importe establecido en virtud de 20 CFR 655.173(a), que actualmente es $12.09 por día. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*Transporte desde el último lugar de destino al país de origen. Si el trabajador completa el periodo de contrato de trabajo, o si el empleador está despedido sin causa, y el trabajador no tiene un empleo inmediato H-2A, el empleador proporcionará o pagaremos los costos razonables de los trabajadores del transporte de regreso y la subsistencia del lugar de trabajo al cabo del cual el trabajador, sin tener en cuento el empleo de intervenir, parte a trabajar para el empleador. Si el trabajador tiene un contrato con un empleador posterior que no este hacuerdo en el contrato de trabajo para proporcionar o pagar los*

*gastos de transporte y gastos subsistencieros diarios del lugar de trabajo del empleador al lugar de trabajo de tales posterior empleador. el empleador debe proveer o pagar dichos gastos. Si el trabajador tiene un contrato con un empleador posterior que ha acordado en el contrato de trabajo para proporcionar o pagar los gastos de transporte ycostos subsistancios diarios del lugar del empleador al lugar de tales empleador posterior que debe proporcionar o pagar dichos gastos. La cantidad del pago del transporte será el cargo comun más económica y razonable para las distancias. La cantidad del pago por día natural no deberá ser inferior a la cantidad establecida en virtud de 20 CFR § 655.173(a), que actualmente es $12.09 por día. La obligación del empleador de proporcionar o pagar el transporte de retorno y de subsistencia continúa si un trabajador H-2A es desplazada como consecuencia del cumplimiento del empleador con la regla del 50 por ciento como se describe en 20 CFR § 655.135(d) con respecto a las referencias hechas después de que el empleador fecha de necesidad. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El transporte entre vivienda y lugar de trabajo. Para aquellos trabajadores que viven en viviendas proporcionadas o asegurados por el empleador, el empleador proveerá transporte entre este tipo de viviendas y lugares de trabajo diario del empleador, sin costo al trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador se requiere como condición de empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*El transporte para los trabajadores entre el sitio diario de trabajo disignado. Para los trabajadores que no viven en viviendas proporcionadas o asegurados por el empleador que se reportan al sitio de trabajo diario, el empleador proveerá transporte entre dicho sitio de informes trabajo diario designado y lugar de trabajo diario del empleador, sin costo para al trabajador, y de regreso desde el sitio de trabajo diario al sitio de información designado, sin costo para el trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador es requerido como condición de se empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*OTRAS CONDICIONES DE EMPLEADO, ACLARACIONES Y ASEGURAMIENTOS:*
*ASEGURAMIENTO REQUERIDA: El empleador se compromete a cumplir con las regulaciones en 20 CFR §§ 655.135 y 653.501. El empleador adopta y incorpora por referencia a todas las garantías necesarias establecidas en 20 CFR § 655.122. En la medida en que hay alguna discrepancia entre este ETA Formulario 790 y Anexos, la declaración de garantías requerido adjunto a este ETA Formulario 790, o la Ley de Inmigración y Nacionalidad (el "INA") y todos los reglamentos de H-2A aplicables, a continuación, el INA y los reglamentos H-2A aplicables siempre prevalecerán.*

*ASEGURAMIENTO DE SEGURO DE COMPENSACIÓN DE COBERTURA DEL TRABAJADOR CONTINUÓ: Con conformidad con 20 CFR 655.122(e)(1), el empleador proveerá seguro de compensación al trabajador, sin costo alguno para el trabajador, que cubre lesiones y enfermedades que surjan de, y en el curso de la el empleo de los trabajadores. Antes de la determinación de certificación laboral, el empleador proveerá prueba de cobertura de seguro de compensación al trabajador para el funcionario de certificación de conformidad con 20 CFR 655.122 (e)(2) . En el caso de que la cobertura actual expira durante el período de necesidad reflexionó sobre adjunto ETA 790, punto 9, el empleador garantiza por escrito de su intención de renovar y mantener una cobertura continua durante las fechas completas de necesidad, como lo demuestra la firma y fecha ETA 790 a la que se adjunta el presente aseguramiento.*

*CONDICIÓN DE EMPLEO: Todos los solicitantes deben poder (con o sin acomodo razonable), dispuesto y capacitado para llevar a cabo todo el trabajo descrito, y debe estar disponible para todo el período previsto de empleo. El trabajo ofrecido es temporal ya tiempo completo sólo para el período*

*anticipado declarado de empleo y cualquier extensión aprobada la misma. No hay ninguna oferta o garantía que recordar para el futuro del empleo a excepción de la solicitud requerida de algunos ex trabajadores de Estados Unidos de conformidad con 20 CFR § 655.153 .*

*REGISTROS DE GANANCIAS: registros de ganancias precisos y adecuados se mantendrán de acuerdo con el 20 CFR § 655.122 (j). Todos los registros estarán disponibles para la inspección y la transcripción por la secretaría de Estado de Trabajo o un representante debidamente autorizado y designado y por el trabajador y los representantes designados por el trabajador como lo demuestra la documentación adecuada (un Registro de Comparecencia como abogado o representante, Formulario G-28, firmado por el trabajador que confirma dicha representación). Dicho registro estará disponible para inspección y copia dentro de las 72 horas siguientes a la notificación de la secretaría de Estado de Trabajo o un representante debidamente autorizado y designado y por el trabajador y los representantes designados según lo descrito en este párrafo.*

*IMPOSIBILIDAD DEL CONTRATO: El empleador terminara el contrato de trabajo de cualquier trabajador cuyos servicios ya no son necesarios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios que hace que el cumplimiento del contrato imposible. Ya sea un evento constituye una imposibilidad contrato será determinado por una Oficial Certificado. En el caso de dicha rescisión de un contrato, el empleador debe cumplir con una garantía de tres cuartas partes del tiempo que ha transcurrido desde el inicio del contrato de trabajo a partir de la primera jornada de trabajo después de la llegada del trabajador en el lugar de trabajo o de la anuncian primera fecha de necesidad, el que sea más tarde, y hasta la fecha de terminación. El empleador debe hacer esfuerzos para transferir al trabajador a otro empleo comparable y aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, según corresponda. Si dicha transferencia no se ve afectada, el empleador debe: (1) Volver al trabajador, por cuenta del empleador, al lugar desde el cual el trabajador (sin tener en cuenta el empleo que intervenga) vino a trabajar para el empleador, o transportar el trabajador al próximo empleador H-2A certificado, el que sea que el trabajador prefiera; (2) Reembolsar al trabajador el importe total de las deducciones hechas de la retribución del trabajador por el empleador para transporte y gastos de subsistencia en el lugar de trabajo; y (3) Pagar al trabajador por los costos incurridos por el trabajador para el transporte y subsistencia diaria a la casa de ese empleador del empleo. Estos arreglos de transporte se aplican sólo a aquellos trabajadores contratados desde fuera del área del empleo previsto.*

*TERMINACIONES: El empleador puede dar por terminado el trabajador con notificación a las agencias estatales y federales correspondientes si el trabajador: (a) se niega sin causa justificada para realizar el trabajo para el cual fue reclutado y contratado al trabajador; (b) comete actos graves de mala conducta; (c) dificulta la productividad de otro trabajador; (d) el que no este enfermo o no se niega, sin causa justificada para realizar según las indicaciones de la obra para la cual fue contratado y contrató al trabajador; (e) proporciona otra razón relacionada con el trabajo legal (s) para la terminación del empleo; (f) abandona su empleo; (g) no cumple las normas de producción aplicables cuando las normas de producción aplicables; (h) falsifica identificación, personal, médicos, producción, u otros registros relacionados con el trabajo; (i) no presenta o rehúsa a tomar una prueba de alcohol o drogas; (j) el empleador descubre un registro condena penal o el estado como delincuente sexual registrado que el empleador cree razonablemente perjudicará la seguridad y/o de las condiciones de vida de los demás trabajadores; (k) comete un acto o actos de insubordinación, incluyendo el hecho de no considerar a la autoridad del empleador; (l) se encuentra o proporciona una declaración falsa al empleador; (m) recoge dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para este empleador; (n) la violación de las reglas de seguridad del empleador;(o) no autorizada o ilegal la posesión, uso o venta de alcohol o sustancias controladas en los locales del empleador o durante la jornada laboral , en el ejercicio de las actividades de trabajo o en vehículos del empleador; (p) no autorizada o ilegal la posesión, uso o venta de armas, armas de fuego o explosivos en*

*las instalaciones del empleador o en vehículos del empleador; (q) el robo o la deshonestidad; (r) de contacto físico inapropiado; (s) el acoso; (t) la discriminación o represalia; (u) la falta de respeto hacia los compañeros de trabajo, visitantes u otros miembros del público; (v) la realización de trabajos fuera o utilización de bienes, equipos o instalaciones del empleador en relación con el trabajo fuera, mientras que en el tiempo del empleador; (w) pobre asistencia o mal desempeño. Los motivos para la terminación inmediata mencionados no son todo incluido. Todas las decisiones de terminación se basarán en una evaluación de todos los factores pertinentes.*

*En caso de terminación de razones médicas que ocurran después de la llegada en el trabajo, o que se producen como resultado de empleo, o en caso de terminación como resultado de un acto de Dios, el empleador pagará o proporcionar costos razonables de transporte de regreso y de subsistencia a el lugar desde el cual el trabajador llegó a trabajar para el empleador y los trabajadores para reembolsar gastos razonables de transporte y dietas incurridos por el trabajador para llegar al lugar de empleo. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El empresario informará a los trabajadores que, a) si voluntariamente abandonan el empleo antes de que finalice el período del contrato, o b) los trabajadores que son despedidos por causa justificada, al Centro de Procesamiento de Chicago, y los trabajadores H -2A para el Departamento de Seguridad Nacional, en escrito u otro método aprobado, a más de dos (2) días después del abandono o terminación se produce. El abandono se considerará que comenzará después de un trabajador no se presenta para el trabajo a la hora programada regularmente durante cinco (5) días consecutivos sin el consentimiento del empleador. El empleador no será responsable de proveer o pagar a los trabajadores informados a) los gastos de transporte y dietas posteriores, y b) el trabajador no tendrá derecho a la garantía 3/4.*

*PRUEBA DE CIUDADANÍA: se requiere que todos los trabajadores contratados bajo este fin de proporcionar la documentación que acredite la ciudadanía estadounidense o estatus legal para trabajar en los Estados Unidos.*

*ACUERDO DE TRABAJO AGRÍCOLA: Una copia del contrato de trabajo se proporcionará al trabajador por el empleador a más tardar en el día de trabajo comienza. Para un trabajador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento en que el trabajador se aplica para la visa. Para un trabajador H-2A al pasar de un empleador H-2A para un posterior empleador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento de una oferta de trabajo se hace por la posterior empleador H-2A. Términos y condiciones del contrato de trabajo pueden ser traducidos en una lengua comprensible para el trabajador, sin embargo la versión en Inglés del contrato de trabajo siempre deberá controlar.*

*OTROS: Las condiciones de trabajo cumplan con los reglamentos de salario mínimo federal y estatal, el trabajo infantil, la seguridad social, la salud y la seguridad, el registro de contratista de trabajadores agrícolas y otras leyes relacionadas con el empleo. El empleador es un empleador que ofrece igualdad de oportunidades de empleo y ofrecer a los trabajadores de los Estados Unidos por lo menos las mismas oportunidades, salarios, beneficios y condiciones de trabajo que las que ofrece el empleador o tiene que intenciona en ofrecer a los trabajadores no inmigrantes.*

*EMPLEADOR PROPORCIONA HERRAMIENTAS Y EQUIPO: El empleador proporcionará, sin costo, todas las herramientas, suministros o equipos necesarios en la realización del trabajo.*

*POLÍTICA DE ABUSO DE SUSTANCIAS: El uso o posesión o estar bajo la influencia de drogas ilegales o alcohol durante el tiempo de trabajo está prohibido. Los trabajadores pueden ser solicitados a someterse a pruebas de drogas y alcohol al azar sin costo alguno para el trabajador. El incumplimiento*

*de la solicitud o de dar positivo puede resultar en la terminación inmediata. Todas las pruebas se producirá después de la de coches y no es una parte del proceso de la entrevista.*

*SALIDA OBLIGATORIA: Los trabajadores H-2A necesitan salirse de los Estados Unidos a finales del período certificado por el Departamento de Trabajo o separación por parte del el empleador, lo que ocurra primero, según lo dispuesto en 20 CFR § 655.135 (i), a menos que el H2A trabajador está siendo patrocinado por otro empleador posterior. Esto servirá como notificación oficial de este requisito a cualquier trabajador H-2A empleado bajo el acuerdo de trabajo agrícola.*

*PROHIBICIONES CONTRA QUE EMPLEADOS PAGEN QUOTAS: El empleador y sus agentes no han solicitado o recibido pago de cualquier tipo de cualquier empleado sujeto a 8 USC § 1188 para cualquier actividad relacionada con la obtención de la certificación de trabajo H-2A, incluyendo el pago de honorarios de abogados del empleador", las tasas de solicitud, o los costos de contratación, que esté prohibido por 20 CFR § 655.135 (j). Los costos que son la responsabilidad y sobre todo en beneficio del trabajador, tales como honorarios de pasaporte requerido por el gobierno, no están incluidos en esta prohibición.*

*CONTRATOS CON GRUPOS QUE CUMPLEN CON PROHIBICIONES: El empleador ha prohibido por contrato cualquier contratista laboral extranjero o reclutador, en su caso, a quien el empleador se involucra, ya sea directa o indirectamente, en la contratación internacional de los solicitantes de H-2A para buscar o recibir pagos de los futuros empleados, con excepción de lo previsto en el reglamento del Departamento de Seguridad Nacional a las 8 CFR § 214.2(h)(5)(xi)(A). Del mismo modo, todos los empleados se les prohíbe la recogida de dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para el empleador. Este patrón tiene cero tolerancia para los pagos prohibidos. Los empleados deben informar al empleador inmediatamente el nombre de cualquier persona que busca para recoger un pago prohibido y la cantidad solicitada. Cualquier empleado que haya recogido se requerirá un pago prohibido a reembolsar a la parte perjudicada de inmediato y se dará por terminado de empleo. Un empleado no puede ser objeto de discriminación o se descarga por informar de un pago prohibido.*

*AVISO DE DERECHOS DEL TRABAJADOR: El empleador se compromete a publicar y mantener en un lugar visible en el lugar de trabajo un cartel que sea proporcionada por el Secretario de Trabajo, como se describe en 20 CFR § 655.135 (l), cuando tal cartel está disponible por el Secretario.*



**U.S. Department Labor**
**Employment and Training Administration**

#308

OMB Control No. 1205-0134
Expiration Date: October 31, 2015

RECEIVED JUN 23 2017 ... SERVICES

## Agricultural and Food Processing Clearance Order ETA Form 790
## Orden de Empleo para Obreros/Trabajadores Agrícolas y Procesamiento de Alimentos

(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)
(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso a paso)

1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ):
FRANCISCO VALADEZ JR (H-2ALC)
1345 Preston Rd
Smithfield, NC 27577

a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador: [redacted]

b) Telephone Number / Número de Teléfono: (919) 634-4771

c) Fax Number / Número de Fax: N/A

d) E-mail Address / Dirección de Correo Electrónico: fvaladez1@hotmail.com

**Nos. 4 through 8 for STATE USE ONLY / Números 4 a 8 para USO ESTATAL**

4. SOC (O*NET/OES) Occupational Code / Código Industrial: 45-2092

a. SOC (ONET/OES) Occupational Title / Título Ocupacional: FARMWORKERS & LABORERS

5. Job Order No. / Num. de Orden de Empleo: 10715500

6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radico la oferta (incluya el número de teléfono):
PO Box 27625
Raleigh NC 27611
(919) 814-0544

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su linea directa).
Francisca Rios

7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo: 6-23-2017

8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo: 10-8-2017

2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo:

225 Oscar Tate Rd, Salemburg, Sampson County, NC 28385
3858 NC 242 Hwy S, Dunn, Johnston County, NC 28334
1246 Old Harvey Sutton Rd, Mt Olive, Wayne County, NC 28365

See attached map with driving directions/ véase el mapa adjunto indicaciones de conducción.

9. Anticipated Period of Employment / Periodo anticipado o previsto de Empleo:
From / Desde: 08/24/2017 To / Hasta: 11/22/2017

10. Number of Workers Requested / Número de Trabajadores Solicitados: 138

3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda:

1006 Stephenson Rd, Benson, Johnston County, NC 27504
1064 Stephenson Rd, Benson, Johnston County, NC 27504
399 Langdon Rd, Angier, Harnett County, NC 27501
3691 Eldridge Rd, Newton Grove, Sampson County, NC 28366
1208 Bud Johnson Rd, Newton Grove, Sampson County, NC 28366
430 Moses Register Ln, Dunn, Sampson County, NC 28334
1600 Williams Lake Rd, Roseboro, Sampson County, NC 28382

See attached map with driving directions/ véase el mapa adjunto indicaciones de conducción.

a) Description of Housing / Descripción de la vivienda: 6-WF,3-MH (Cap. 138)

11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 35

Sunday / Domingo 0
Monday / Lunes 6
Tuesday / Martes 6
Wednesday / Miércoles 6
Thursday / Jueves 6
Friday / Viernes 6
Saturday / Sábado 5

12. Anticipated range of hours for different seasonal activities: / Rango previsto de horas par alas diferentes actividades de la temporada:
7 a.m. to 3 p.m.

13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador: Yes / Sí ☐ No ■

14. Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Workers will buy their own groceries. Once a week, the employer will provide (on a voluntary basis) transportation to assure workers access to stores where they can purchase groceries. These board arrangements apply only to workers living in employer-provided housing.

*Empleador proporcionara instalaciones de cocina gratis y conveniente para los trabajadores viviendo en la vivienda proporcionada para que los trabajadores pueden prepararse su propia comida. Tranporte gratuito en un vehículo sera proporcionado al menos una vez cada semana por los trabajadores para comprar sus propios alimentos. Estos arreglos applicar solamente a trabajadores que viven en la vivienda provistos por el empleador.*

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

All local and intrastate applicants may be referred directly to the employer for interview as follows: Consultants should fax or email the referral card containing the referral candidate's name, address and telephone number to employer first, then instruct the applicant to call the employer directly to schedule a personal interview. Hours for referral candidate to call the employer are 9:00 a.m. to 1:00 p.m., Monday-Friday, excluding all federal holidays. Referral candidates MUST call the employer and schedule an interview appointment prior to coming. No referral candidate is to go to the employer's address or work site without a scheduled interview. All interstate applicants interested in this job offer should first contact the North Carolina Department of Commerce, Division of Workforce Solutions – Ag Services in Raleigh, North Carolina at (919) 814-0544 prior to contacting the employer. Workers should be fully apprised by the local employment office of the terms, conditions and nature of employment prior to referral. Workers recruited against the job offer from within normal commuting distance will not be provided housing, subsistence or transportation. All applicants must be able (with or without reasonable accommodation), willing, and qualified to perform all the work described, and must be available for the entire anticipated period of employment. There is no offer or guarantee to be recalled for future employment except for the required solicitation of certain former U.S. workers in compliance with 20 CFR § 655.153.

Employer Email: fvaladez1@hotmail.com
Employer Voice # (919) 634-4771

16. Job description and requirements / Descripción y requisitos del trabajo:

Pull weeds/chop. Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe. Cultivate and harvest sweet potato. Load and unload sweet potato. Prolonged walking, standing, bending, stooping, and reaching. Job is outdoors and continues in all types of weather. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 75 lbs. to shoulder height repetitively throughout the workday and able to lift and carry 75 lbs. in field. Must not hinder another worker's productivity. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination. Requires one month verifiable farmworker experience in the crop activities listed. (Continued on ETA 790 Attachments – Item 16)

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ■ No ❑ If yes, number of months preferred: / Si es así, numero de meses de experiencia: ___1___ REQUIRES ONE MONTH VERIFIABLE FARMWORKER EXPERIENCE IN THE CROP ACTIVITIES LISTED.

2. Check all requirements that apply:

❑ Certification/License Requirements / Certificación/Licencia Requisitos
❑ Driver Requirements / Requisitos del conductor
❑ Employer Will Train / Empleador entrenará o adiestrará
❑ Extensive Sitting / Estar sentado largos ratos
■ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
■ Lifting requirement / Levantar o Cargar __75____lbs./libras
■ Repetitive Movements / Movimientos repetitivos
❑ Criminal Background Check / Verificación de antecedentes penales
■ Drug Screen / Detección de Drogas
■ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
■ Extensive Walking / Caminar por largos ratos
■ Frequent Stooping / Inclinándose o agachándose con frecuencia
❑ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities / Cultivos | Hourly Wage / Salario por Hora | Piece Rate / Unit(s) / Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) / Pagos Especiales (Bono, etc.) | Deductions* / Deducciones | Yes/Sí | No | Pay Period / Período de Pago / / |
|---|---|---|---|---|---|---|---|
| Pull weeds/grass | $11.27 | N/A | NONE | Social Security / Seguro Social | ■ | ❑ | Weekly / Semanal ■ |
| Sweet potato, hand-harvest* | $11.27 | $0.50 per 5/8 bu. bucket or equivalent | NONE | Federal Tax / Impuestos Federales | ■ | ❑ | |
| | | | | State Tax /Impuestos Estatales | ■ | ❑ | Bi-weekly/ Quincenal ❑ |
| | | | | Meals / Comidas | ❑ | ■ | |
| | | | | Other (specify) / Otro (especifica) | ■ | ❑ | Monthly/Mensual ❑ |
| | | | | | | | Other/Otro ❑ |

*ALL WORKERS WILL BE PAID ON THE PIECE RATE SYSTEM FOR THIS ACTIVITY. *Todos los trabajadores serán pagados en el sistema de tarifa por pieza para esta actividad.*

18. More Details About the Pay / Mas Detalles Sobre el Pago:

In accordance with 20 CFR § 655.122(l) governing rates of pay, the wage rate offered herein is the highest of the adverse effect wage rate, the prevailing hourly rate, the prevailing piece rate, the agreed-upon collective bargaining wage, or the federal or State minimum wage, in effect at the time work is performed for every hour or portion thereof worked during a pay period covered by the approved labor certification. If the worker's piece rate earnings for a pay period result in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate. (See ETA 790 Attachments – Section 18 for more details about the pay.)

19. Transportation Arrangements / Arreglos de Transportación

For those workers recruited outside the area of intended employment, transportation and subsistence expenses will be reimbursed by the employer in accordance with 20 CFR § 655.122(h). Inbound transportation will be reimbursed on the basis of no less (and is not required to be more than) the most economical and reasonable charges for the distance involved. The subsistence reimbursement will be the amount the employer would charge for providing the worker three meals per day of $12.07 per day or workers providing receipts will be reimbursed up to the amount authorized by the continental U.S. per diem rate of $51.00 as computed by the GSA method. Payments will be made based upon the date of publication of the H-2A Program Allowable meal charges in the Federal Register. See Item 28 for full disclosure of the terms and conditions of the transportation benefit.

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)? Yes / Si ❑ No ■

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Si," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores? Yes/Si ■ No ❑

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador: Yes/Si ■ No ❑
Riverport Insurance Co c/o Commerical & Farmers Ins Svcs, PO Box 399, Selma, NC 27576, (919) 965-6622, Policy # NCARP310246

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores?

Yes/Si ■ No ❑

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno".) NONE/NINGUNO

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".) NONE/NINGUNO

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H-2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Si ■ No ☐

**Employer represented by and this job order prepared by:
Andrew M. Jackson, Attorney
Andrew Jackson Law
407 College Street
Clinton, NC 28328
(910) 592-4121
Fax #590-1012
andy@jacksonlegalagworkers.com

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

____Francisco Valadez, Jr., Employer________________________________
Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

Francisco Valadez Jr [signature]
Employer's Signature / Firma y Título del Empleador

6/16/2017
Date / Fecha

**READ CAREFULLY.** In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

**LEA CON CUIDADO**, En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

**PUBLIC BURDEN STATEMENT**
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

**DECLARACION DE CARGA PÚBLICA**
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el numero de la sección e incluya archivos adjuntos, si es necesario.

Item 3, DISCLOSURE OF HOUSING TERMS AND CONDITIONS:

Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than thirty (30) days in advance of the date of need reflected on the attached ETA 790. Housing and utilities are provided at no cost to workers who are unable to return to their place of residence the same day. Workers recruited against this job order from within normal commuting distance will not be provided housing, subsistence, or transportation. The housing provided is group housing. In the event a female worker is hired, separate toilet, shower, and sleeping rooms will be provided by the employer. Family housing is not available and the provision of family housing is not a prevailing practice in the area of intended employment. Housing will be clean and meet applicable federal, State, and local standards. Workers will be responsible for maintaining housing in a neat, clean manner. Reasonable repair cost of damage, other than that caused by normal wear and tear, may be charged to workers found to have been responsible for damage to housing or furnishings.


Item 19, TRANSPORTATION ARRANGEMENTS:

Transportation to place of employment. If the employer has not previously advanced such transportation and subsistence costs to the worker or otherwise provided such transportation or subsistence directly to the worker by other means and if the worker completes fifty percent (50%) of the work contract period, employer will reimburse worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer to the employer's place of employment. The amount of the transportation payment will be the most economical and reasonable common carrier transportation charge for the distances involved. The amount of the daily subsistence payment shall be no less than the amount set under 20 CFR 655.173(a), which is currently $12.07 per day. These arrangements apply only to workers who are recruited outside the area of intended employment.

Transportation from last place of employment to home country. If the worker completes the work contract period, or if the employer is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker, disregarding intervening employment, departed to work for the employer. If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer must provide or pay for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The amount of the transportation payment will be the most economical and reasonable common carrier transportation charge for the distances involved. The amount of the daily subsistence payment shall be no less than the amount set under 20 CFR § 655.173(a), which is currently $12.07 per day. The employer's obligation to provide or pay return transportation and subsistence continues if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in 20 CFR § 655.135(d) with respect to referrals made after the employer's date of need. These arrangements apply only to workers who are recruited outside the area of intended employment.

Transportation between living quarters and worksite. For those workers living in housing provided or secured by the employer, employer will provide transportation between such housing and the employer's daily worksite at no cost to the worker. Such transportation will comply with all applicable federal, State and local laws and regulations, in accordance with 20 CFR § 655.122(h)(4). The use of this daily transportation is voluntary; no worker is required as a condition of employment to use the daily transportation to the worksite offered by the employer.

Transportation for commuting workers between designated daily job reporting site and daily worksite. For commuting workers not living in housing provided or secured by the employer who report to a designated daily job reporting site, the employer will provide transportation between such designated daily job reporting site and the employer's daily worksite at no cost to the worker, and return transportation from the daily work site back to the designated reporting site at no cost to the worker. Such transportation will comply with all applicable federal, State and local laws and regulations, in accordance with 20 CFR § 655.122(h)(4). The use of this daily transportation is voluntary; no worker is required as a condition of employment to use the daily transportation to the worksite offered by the employer.

**20 CFR 653.501**
**Assurances**

## INTRASTATE AND INTERSTATE CLEARANCE ORDER

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 10 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name By: Francisco Valadez, Jr., Employer Date: 6/16/2017

Employer's Signature Francisco Valadez Jr

**Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.**

## ATTACHMENTS TO ETA 790

**§ 16, JOB DESCRIPTION AND REQUIREMENTS:**
Pull weeds/chop. Workers will walk along rows as specified by employer and remove weeds and grass from fields by hand or using a hoe. Cultivate and harvest sweet potato. Load and unload sweet potato. Prolonged walking, standing, bending, stooping, and reaching. Job is outdoors and continues in all types of weather. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process. Must be able to lift 75 lbs. to shoulder height repetitively throughout the workday and able to lift and carry 75 lbs. in field. Must not hinder another worker's productivity. Use of personal cell phone or other personal electronic device during working hours strictly prohibited except for work-related calls or emergencies and violation may result in immediate termination. Requires one month verifiable farmworker experience in the crop activities listed.

Sweet potatoes: Sweet potato harvest workers will walk along row that has been previously plowed. Workers will stoop, bend and kneel to pick up sweet potatoes using hands and fingers to dig out unexposed potatoes. Workers may grade in the field separating #1's and #2's into separated 5/8 field hampers. Canners, when harvested, will be placed into a separate bin. Damaged or diseased potatoes will not be harvested. Worker will be required to stay on assigned row. Full hampers weighing up 35 lbs. will be carried to truck row to be loaded onto truck or trailer. Workers may be required to ride mechanical harvester. Workers may be required to perform other duties as required by the employer. Hand harvesting sweet potatoes will be paid on a piece rate of $0.50 per 5/8 bushel. Mechanical harvest work, if any, will be paid hourly.

All workers are required to follow common sanitary practices at all times. This is particularly important when touching crops for human consumption. Workers are required to cleanse their hands by washing thoroughly with soap and water before entering field for harvest activities and after each break. Smoking and the use of tobacco products prohibited during working time.

Workers may be required to perform work that is incidental to farming the crops listed in the application. All other duties, if any assigned, will be those duties of Farm Worker, Diversified Crops, DOT code 407.687-010 (SOC (ONET/OES) code 45-2092.02). This is a very demanding and competitive business in which quality specifications must be rigorously adhered to. Sloppy work cannot and will not be tolerated.

Full Growing Season Commitment: The job offered requires that the worker be available for work six (6) hours per day Monday through Friday and five (5) hours on Saturday every day that work is available and for the full anticipated period of employment, even though work may be slack for a brief period of time. The worker agrees to be available for work and performed assigned tasks whenever work is available through the full anticipated period of employment. Work available is defined as, no work required on the worker's Sabbath or Federal holidays, but work is required six (6) hours per day Monday-Friday, and five (5) hours on Saturday.

The worker understands that if he abandons his employment or is terminated for cause prior to the end of the anticipated period of employment, the worker will forfeit the ¾ guarantee and reimbursement of certain transportation costs. Excessive absences and/or tardiness cannot be tolerated and may result in termination.

Daily individual work assignments, crew assignments, and location of work will be made by and at the sole discretion of the employer and/or worker's supervisor. Workers may be assigned a variety of duties

in any given day and/or different tasks on different days. Workers will be expected to perform any of the listed duties and work on any crop as assigned by the employer and/or worker's supervisor.

**§ 18, MORE DETAILS ABOUT THE PAY**:
In accordance with 20 CFR § 655.122(l) governing rates of pay, the wage rate offered herein is the highest of the adverse effect wage rate ("AEWR"), the prevailing hourly rate, the prevailing piece rate, the agreed- upon collective bargaining wage, or the federal or State minimum wage, in effect at the time work is performed for every hour or portion thereof worked during a pay period covered by the approved labor certification. If the worker's piece rate earnings for a pay period result in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate.

The employer will pay the prevailing piece rate in a crop activity for which a piece rate is specified if the DOL determines that a higher piece is prevailing in the crop activity in the area of intended employment than the piece rate specified herein. In the event DOL announces a lower prevailing piece rate in a crop activity for which a piece rate is specified herein, the employer reserves the right to pay the lower prevailing piece rate as soon as it is announced by DOL. In order to assure workers fair earnings, the employer may in its discretion temporarily raise the piece rate above the offered piece rate herein or may elect to pay workers at the highest hourly rate when, in the employer's judgment, working conditions are unusually adverse. The employer will apply the prevailing hourly rate in a crop activity for which an hourly rate is specified if DOL determines that a higher hourly rate is prevailing in the crop activity in the area of intended employment other than the hourly rate specified herein. In the event DOL promulgates a new AEWR during the recruitment or work contract period which is higher or lower than the AEWR herein, the highest of the adjusted AEWR, the prevailing hourly rate, the agreed upon collective bargaining wage, or the federal or State minimum wage will become the new wage rate. In other words, the wage rate may increase or decrease during the life of this contract by DOL notification of such change. In the event the AEWR is eliminated from the H-2A program during the life of this work agreement, either administratively or legislatively, the employer reserves the right to pay the new wage rate under the new guidelines as soon as it becomes effective.

The employer will make the following deductions from the worker's wages: FICA, Medicare and income taxes as required by law; cash advances and repayment of loans; repayment of overpayment of wages to the worker; payment for articles which the worker has voluntarily purchased from the employer; long-distance telephone charges; recovery of any loss to the employer due to the worker's damage, beyond normal wear and tear, or loss of equipment or housing items where it is shown that the worker is responsible. No deduction not required by law will be made that brings the worker's hourly earnings below the higher of the federal minimum wage and State minimum wage.

The employer will not pay the worker a bonus.
Payroll periods will be weekly. On or before each payday, workers will be provided with an hours and earnings statement, which contains, at a minimum, (i) total earnings for the pay period; (ii) hourly rate and/or piece rate of pay; (iii) hours of employment offered to the worker (showing offers in accordance with the 3/4ths guarantee separate from any hours offered over and above the guarantee); (iv) hours actually worked by the worker; (v) itemization of all deductions; (vi) if piece rates are used, the units produced daily; (vii) beginning and ending dates of the pay period; and, (viii) the employer's name, address and FEIN, all in compliance with 20 CFR § 655.122(k), and all federal and State requirements.

Employer guarantees to offer workers employment for a total number of work hours equal to a least three-fourths (3/4ths) of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment and the worker is ready, willing, able and eligible to work, and ending on the expiration date specified in the work contract or any extensions thereof or upon the

termination of this employment as specified hereinbelow. Details of the 3/4ths guarantee are outlined in 20 CFR § 655.122(i). For purposes of this guarantee, a "workday" consists of six hours daily Monday through Friday and five hours on Saturday. Workers may be offered work on federal holidays and on their Sabbath but will not be required to do so. Pursuant to 20 CFR § 655.122(n), workers who voluntarily abandon employment or are terminated for cause, and where the employer provides timely notification to the NPC and DHS, will relieve the employer for subsequent transportation and subsistence costs and the 3/4ths guarantee. The employer may terminate the work contract where the services are no longer required for reasons beyond the employer's control due to fire, weather, or other Act of God. In the event of contract impossibility, the employer will fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract to the time of its termination, the employer shall perform its obligations prescribed at 20 CFR § 655.122(o)(1-3). Reasonable efforts will be made to transfer a worker terminated for contract impossibility to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable.

All requests for leave of absence must be in writing. All absences will be counted towards hours offered for the purpose of computing the 3/4 guarantee.

Employer will provide a worker referred through the Interstate Clearance System a full week's work for the week beginning with the anticipated date of need in accordance with 20 CFR 653.501(d)(2)(v)(A), unless employer has amended the date of need by notifying the local order-holding office no later than ten (10) days before the date of need. If the employer fails to notify the order-holding office, then the employer shall pay an eligible worker referred through the Interstate Clearance System the first week's wage guarantee starting with the originally anticipated date of need. If the worker fails to notify the order-holding office of his continuing interest in the job no sooner than nine (9) working days and no later than five (5) working days before the date of need, the worker will be disqualified from the above-mentioned guarantee. The employer may require the worker to perform alternative work if the guarantee cited in this section is invoked. Alternative work will be general farm labor and farm maintenance activities that are incidental to farming the crops listed in the application.

The amount of the first week's wage guarantee at the AEWR currently in effect is 35 hours x $11.27 = $394.45.

**OTHER CONDITIONS OF EMPLOYMENT, CLARIFICATIONS, AND ASSURANCES:**
REQUIRED ASSURANCES: The employer agrees to abide by the regulations at 20 CFR §§ 655.135 and 653.501. The employer adopts and incorporates by reference all required assurances set out at 20 CFR § 655.122. To the extent there is any discrepancy between this Form ETA 790 and Attachments, the required assurances statement attached to this Form ETA 790, or the Immigration and Nationality Act (the "INA") and any applicable H-2A regulations, then the INA and the applicable H-2A regulations shall always control.

ASSURANCE OF CONTINUOUS WORKER'S COMPENSATION INSURANCE COVERAGE: Pursuant to 20 CFR 655.122(e)(1), the employer will provide worker's compensation insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Prior to labor certification determination, the employer will provide proof of worker's compensation insurance coverage to the certifying officer in accordance with 20 CFR 655.122(e)(2). In the event that the current coverage will expire during the period of need reflected on attached ETA 790, Item 9, the employer gives written assurance of its intent to renew and maintain continuous coverage for the entire dates of need, as evidenced by the signed and dated ETA 790 to which this assurance is attached.

CONDITION OF EMPLOYMENT: All applicants must be able (with or without reasonable accommodation), willing, and qualified to perform all the work described, and must be available for the entire anticipated period of employment. The job offered is temporary and full-time only for the stated anticipated period of employment and any approved extension thereof. There is no offer or guarantee to be recalled for future employment except for the required solicitation of certain former U.S. workers in compliance with 20 CFR § 655.153.

EARNINGS RECORDS: Accurate and adequate earnings records will be kept in accordance with 20 CFR § 655.122(j). All records will be available for inspection and transcription by the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker as evidenced by appropriate documentation (an Entry of Appearance as Attorney or Representative, Form G-28, signed by the worker confirming such representation). Such record will be made available for inspection and copying within 72 hours following notice from the U.S. Secretary of Labor or a duly authorized and designated representative, and by the worker and designated representatives as described in this paragraph.

CONTRACT IMPOSSIBILITY: The employer will terminate the work contract of any worker whose services are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes fulfillment of the contract impossible. Whether such an event constitutes a contract impossibility will be determined by the Certifying Officer. In the event of such termination of a contract, the employer must fulfill a three-fourths guarantee for the time that has elapsed from the start of the work contract beginning with the first workday after the arrival of the worker at the place of employment or the advertised first date of need, whichever is later, and ending on the date of termination. The employer must make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not affected, the employer must: (1) Return the worker, at the employer's expense, to the place from which the worker (disregarding intervening employment) came to work for the employer, or transport the worker to the worker's next certified H-2A employer, whichever the worker prefers; (2) Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment; and (3) Pay the worker for any costs incurred by the worker for transportation and daily subsistence to that employer's place of employment. These transportation arrangements apply only to those workers recruited from outside the area of intended employment.

TERMINATIONS: The employer may terminate the worker with notification to the appropriate State and federal agencies if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct; (c) hinders another worker’s productivity; (d) malingers or otherwise refuses without justified cause to perform as directed the work for which the worker was recruited and hired; (e) provides other lawful job-related reason(s) for termination of employment; (f) abandons employment; (g) fails to meet applicable production standards when production standards are applicable; (h) falsifies identification, personnel, medical, production, or other work-related records; (i) fails or refuses to take an alcohol or drug test; (j) employer discovers a criminal conviction record or status as a registered sex offender that employer reasonably believes will impair the safety and/or living conditions of other workers; (k) commits an act or acts of insubordination, including the failure to regard employer’s authority; (l) lies or provides a false statement to the employer; (m) collects any money or other thing of value from prospective employees or current employees in order for the payor to work for this employer; (n) violation of employer’s safety rules; (o) unauthorized or illegal possession, use or sale of alcohol or controlled substances on employer’s premises or during working hours, while engaged in work activities or in employer’s vehicles; (p) unauthorized or illegal possession, use or sale of weapons, firearms, or explosives on employer’s premises or in employer’s vehicles; (q) theft or dishonesty; (r) inappropriate physical contact; (s) harassment; (t) discrimination or retaliation; (u) disrespect toward fellow workers, visitors or other members of the public; (v) performing

outside work or use of employer's property, equipment or facilities in connection with outside work while on employer's time; (w) poor attendance or poor performance. The grounds for immediate termination listed above are not all inclusive. All termination decisions will be based on an assessment of all relevant factors.

In the event of termination from medical reasons occurring after arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place from which the worker came to work for the employer and reimburse worker for reasonable cost of transportation and subsistence incurred by the worker to get to the place of employment. These arrangements apply only to workers who are recruited outside the area of intended employment.

REPORTING ABANDONMENT OF EMPLOYMENT OR TERMINATION FOR CAUSE:
The employer will report workers who, a) voluntarily abandon employment before the end of the contract period, or b) workers who are terminated for cause, to the Chicago National Processing Center, and H-2A workers to the Department of Homeland Security, in writing or other approved method, not later than two (2) days after the abandonment or termination occurs. Abandonment will be deemed to begin after a worker fails to report for work at the regularly scheduled time for five (5) consecutive days without the consent of the employer. The employer will not be responsible for providing or paying for reported workers a) subsequent transportation and subsistence expenses, and b) the worker will not be entitled to the 3/4 guarantee.

PROOF OF CITIZENSHIP: All workers hired under this order will be required to provide documentation attesting to United States citizenship or legal status to work in the United States.

AGRICULTURAL WORK AGREEMENT: A copy of the work contract will be provided to the worker by the employer no later than on the day work commences. For an H-2A worker, a copy of the work contract will be provided no later than the time at which the worker applies for the visa. For an H-2A worker going from an H-2A employer to a subsequent H-2A employer, a copy of the work contract will be provided no later than the time an offer of employment is made by the subsequent H-2A employer. Material terms and conditions of the work contract may be translated into a language understood by the worker, however the English version of the work contract shall always control.

OTHER: The working conditions will comply with applicable federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity Employer and will offer United States workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer non-immigrant workers.

EMPLOYER FURNISHED TOOLS AND EQUIPMENT: The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

SUBSTANCE ABUSE POLICY: The use or possession or being under the influence of illegal drugs or alcohol during working time is prohibited. Workers may be requested to submit to random drug or alcohol tests at no cost to the worker. Failure to comply with the request or testing positive may result in immediate termination. All testing will occur post-hire and is not a part of the interview process.

REQUIRED DEPARTURE: H-2A workers are required to leave the United States at the end of the period certified by the Department of Labor or separation from the employer, whichever is earlier, as required under 20 CFR § 655.135(i), unless the H-2A worker is being sponsored by another subsequent

employer. This shall serve as official notification of this requirement to any H-2A worker employed under the agricultural work agreement.

PROHIBITIONS AGAINST EMPLOYEES PAYING FEES: The employer and its agents have not sought or received payment of any kind from any employee subject to 8 U.S.C. § 1188 for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs, as prohibited by 20 CFR § 655.135(j). Costs that are the responsibility and primarily for the benefit of the worker, such as government-required passport fees, are not included in this prohibition.

CONTRACTS WITH THIRD PARTIES COMPLY WITH PROHIBITIONS: The employer has contractually forbidden any foreign labor contractor or recruiter, if any, whom the employer engages, either directly or indirectly, in international recruitment of H-2A applicants to seek or receive payments from prospective employees, except as provided for in Department of Homeland Security regulations at 8 CFR § 214.2(h)(5)(xi)(A). Likewise, all employees are prohibited from collecting any money or other thing of value from prospective employees or current employees in order for the payor to work for the employer. This employer has zero tolerance for prohibited payments. Employees should report to the employer immediately the name of any person seeking to collect a prohibited payment and the amount sought. Any employee found to have collected a prohibited payment will be required to reimburse the injured party immediately and will be terminated from employment. An employee cannot be discriminated against or discharged for reporting a prohibited payment.

NOTICE OF WORKER RIGHTS: The employer agrees to post and maintain in a conspicuous location at the place of employment a poster to be provided by the Secretary of Labor as described at 20 CFR § 655.135(l), when such poster is available from the Secretary.

## *ARCHIVOS JUNTOS DE ETA FORMULARIO 790*

### *§ 16, DESCRIPCION Y REQUISITOS DEL TRABAJADOR:*

*Halar/Cortar Malas Hiervas: Los trabajadores se camine a lo largo de las filas según lo especificado por el empleador y removera las malas hierbas de la hierba de los campos a mano o utilizando una azada. Cultivar y cosechar camote. Cargar y descargar camote. Se prolonga caminar, estar de pie, agachado, doblado y alcanzando. El trabajo es al aire libre y continúa en todo tipo de clima. Los trabajadores pueden ser solicitados a someterse a pruebas de drogas y alcohol al azar sin costo alguno para el trabajador. El incumplimiento de la solicitud o de dar prueba positiva puede resultar en la terminación inmediata. Todas las pruebas se producirán después de ser contratado y no serán parte del proceso de la entrevista. Debe ser capaz de levantar 75 libras a la altura del hombro repetidamente a lo largo de la jornada de trabajo y capaz de levantar y cargar 75 libras en el campo. No debe de dificultar la productividad de otro trabajador. El uso del teléfono celular personal o otros electrónicos personales durante las horas de trabajo es estrictamente prohibido excepto para llamadas o emergencias relacionadas con el trabajo y violación puede resultar en la terminación inmediata. Requiere un mes de experiencia verificable de trabajadores agrícolas en las actividades de los cultivos mencionados.*

*PISCANDO EL CAMOTE: Los trabajadores se agacharan, doblaran y arrodillaran para recoger camote usando las manos y dedos para escarbar y sacar los camotes que no estan expuestas. Puede que los trabajadores clasifcaran los camotes en el camp separando las del numero 1 y 2 en diferentes cubetas de 5/8 bushel. Los camotes de calificacion numero 2 seran colocados en otro cajon. Camote danado o enfermo no seran recogidos. Se le exige al trabajador que se quede en el surco asignado. Las cubetas llenas que pesan hasta 35 libras seran llevadas al surco del camion para ser cargadas al camion o "remolque." Pago para la cosecha hecho a mano es .50 centavos por cubeta. Se le puede exigir montar un cosechador mecanico. Trabajo usando un coshecador mecanico sera pagado por hora.*

*Todos los trabajadores se les requiere seguir las prácticas sanitarias comunes en todo momento. Esto es particularmente importante cuando se cosecha a mano cultivos para consumo humano. Los trabajadores se les requiere limpiarse las manos en la forma de lavarlas a fondo con agua y jabón antes de entrar en el campo para las actividades de cosecha y después de cada descanso. Fumar y el uso de productos de tabaco es prohibido durante el tiempo de trabajo.*

*Se les puede ser requerido a los trabajadores realizer trabjo que acompañan el cultivo de la cosechar enumerados en la solicitud. Todos los otros deberes, si asignados, seran esos deberes del Trabajador Agricola, Cultivos Diversificados, codigo DOT 407.687.010 (SOC (ONET/OES) code 45-2092.02). Este es un negocio muy exigente y competitivo en cual las especificaciones de calidad deben ser adherido rigurosamente. Trabajo descuidado no puede ser ni sera tolerado.*

*COMETERSE CON EL CRECIMIENTO DE TEMPORADA COMPLETA: El trabajo ofrecido requiere que el trabajador esté disponible para trabajar seis (6) horas al día de lunes a viernes y cinco (5) horas el sábado todos los días que el trabajo está disponible y por el período previsto completo de empleo, a pesar de que el trabajo puede ser floja durante un breve período de tiempo. El trabajador se compromete a estar disponible para el trabajo y realiza asigna tareas cada vez que el trabajo está disponible a través del periodo anticipado total del empleo. Trabajo disponible se define como, no hay trabajo requerido en el día de descanso o días de fiesta federales, pero el trabajo se requiere de seis (6) horas por día de lunes a viernes, y cinco (5) horas el sábado.*

*El trabajador entiende que si abandonan su trabajo de empleo o son terminados de empleo por causa antes de la temporada de empleo, o terminacion o como se encuentran, el trabajador pierdera la*

*guarantia de 3/4 de reembolso de ciertos costos de transportacion. Ausencias excesivas y/o llejar tarde no puede ser tolerado y puede resultar en terminacion.*

*Asignaciones diarias de trabajo individual, asignaciones a tripulacion, y la locacion de trabajo sera asignado por, y nada mas por, el empleador y/o el supervisor del trabajador. Trabajadores pueden ser asignados a una variedad de tareas en cualquierdia y/o diferentes tareas en diferentes dias. Trabajadores seran disponibles para hacer las ordenes y el trabajo en cualquier cosecha asignada por el empleador y/o el supervisor del trabajador.*

## *§ 18, MAS DETALLES SOBRE EL PAGO:*

*De acuerdo con 20 CFR § 655.122(l) que regula las tasas de remuneración, el salario ofrecido en este documento es el más alto de la tasa del salario efecto adverso ("AEWR"), la tasa vigente por hora, el tipo de pieza que prevalece, la acordados salario negociación colectiva, o la salario mínimo federal o estatal, en vigor en el trabajo a tiempo parcial se realiza por cada hora o fracción trabajado durante un período de pago cubierto por la certificación laboral aprobada. Si, se proporcionará al trabajador ganancias a destajo de los trabajadores para un período de pago resultado en los ingresos por hora promedio de menos del mínimo garantizado se le pagara hasta llegar a la tasa mínima garantizada.*

*El empleador pagará el precio por pieza que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza si el Departamento de Trabajo determina que una pieza mayor se está imponiendo en la actividad de agrícola en el área del empleo previsto que la tasa de pieza especificada en este documento. En el caso que el DOL anuncie una tasa de pieza imperante que prevalece en una actividad de cultivo para el cual se especifica un tipo de pieza en el presente documento, el empleador se reservara a derecho de pagar la tasa pieza imperante que prevalece en cuanto se anunció por el DOL. Con el fin de asegurar trabajadores de ganancias justas, el empleador puede, a su discreción aumentar temporalmente la tasa por encima de la pieza por pieza ofrecida en este documento o pueden optar por pagar a los trabajadores en el más alto precio por hora, cuando, a juicio del empresario, las condiciones de trabajo son inusualmente adversas. El empresario aplicará la tarifa por hora que prevalece en una actividad de cultivo para el cual se especifique en un precio por hora si DOL determina que una tarifa por hora más alto se está imponiendo en la actividad agrícola en el área del empleo previsto que no sea la tarifa por hora especificada en el presente documento. En el caso de DOL que promulga una nueva AEWR durante el período de reclutamiento o contrato de trabajo que es mayor o menor que la AEWR en el presente documento, el más alto de el AEWR ajustado, la tarifa por hora que prevalece, el salario acordado la negociación colectiva, o el salario mínimo federal o estatal se convertirá en la nueva tarifa de salario. En otras palabras, el salario puede aumentar o disminuir durante la vigencia de este contrato mediante notificación DOL de dicho cambio. En el caso de que el AEWR es eliminado del programa H-2A durante la vigencia de este acuerdo de trabajo, ya sea administrativa o legislativa, el empleador se reserva el derecho de pagar la nueva tarifa de salario bajo las nuevas directrices en cuanto entre en vigor.*

*El empleador hará las siguientes deducciones de los salarios de los trabajadores: FICA, Medicare y impuestos como lo requiere la ley; adelantos en efectivo y pago de los préstamos; reembolso del pago en exceso de los salarios a los trabajadores; el pago de los artículos que el trabajador ha adquirido voluntariamente del empleador; las tarifas telefónicas de larga distancia; recuperación de cualquier pérdida para el empleador debido a los daños del trabajador, más allá del desgaste normales y rotura o pérdida de equipos o elementos de vivienda, donde se muestra que el trabajador es responsable. No deducción no requiere que la ley se hará que trae ingresos por hora de los trabajadores por debajo de la más alta del salario mínimo federal y el salario mínimo estatal.*

*El empleador no pagará bonos. Períodos de nómina será semanal. En o antes de cada día de pago, los trabajadores se les dara una declaracion de horas y ganancias, que contiene, como mínimo, (i) los*

*ingresos totales para el período de pago; (ii) por hora y/o tasa de pago por pieza; (iii) las horas de trabajo que se ofrecen al trabajador (mostrando las ofertas de conformidad con los 3/4 garantizan separado de las horas que ofrece más allá de la garantía); (iv) las horas efectivamente trabajadas por el trabajador; (v) desglose de todas las deducciones; (vi) si se usa la tasa de pago por pieza, las unidades producidas cada dia; (vii) fechas cuando el periodo de paga comenzando y terminando, (viii) el nombre del empleador, dirección y FEIN, todo ello en cumplimiento de 20 CFR § 655.122(k), y todos los requisitos federales y estatales.*

*El empleador garantía ofrecer empleo de trabajadores para un número total de horas de trabajo igual a un menos tres cuartos (3/4) de los días de trabajo del período total a partir del primer día de trabajo después de la llegada del trabajador en el lugar de trabajo y el trabajador esté listo, dispuesto, capaz y con derecho a trabajar, y hasta la fecha de vencimiento especificada en el contrato de trabajo o de las prórrogas de los mismos o sobre la terminación de este trabajo como se especifica a continuación. Los detalles de la garantía de 3/4 se describen en 20 CFR § 655.122(i). Para efectos de esta garantía, una "jornada de trabajo" se compone de seis horas diarias de lunes a viernes y de cinco horas el sábado. Los trabajadores pueden ser ofrecidos a trabajar en días festivos federales y en su día de reposo, pero no estarán obligados a hacerlo. De conformidad con 20 CFR § 655.122(n), los trabajadores que voluntariamente abandonan el empleo o sean terminados con causa, y donde el empleador proporciona notificación oportuna a la NPC y el DHS, aliviarán la empleador por transporte y dietas posteriores costos y la 3/4 garantía. El empleador puede dar por terminado el contrato de trabajo, donde ya no se requieren los servicios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios. En caso de imposibilidad de contrato, el empleador cumplirá unas tres cuartas partes de garantía para el tiempo que ha transcurrido desde el inicio del contrato de trabajo al momento de su terminación, el patrono deberá cumplir con sus obligaciones prescritas en 20 CFR § 655.122(o)(1-3). Se harán esfuerzos razonables para transferir un trabajador despedido por imposibilidad de contrato para otro empleo comparable aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, como apliquen.*

*Todas las solicitudes de licencia deben ser por escrito. Todas las ausencias serán contados hacia horas que se ofrecen a los efectos para calcular la garantía 3/4.*

*Empleador proporcionará al trabajador con una referencia a través del Sistema de Liquidación Interestatal trabajo de una semana completa para la semana que comienza con la fecha prevista de necesidad, de acuerdo con 20 CFR 653.501(d)(2)(v)(A), a menos que el empleador modificado la fecha de la necesidad de notificar a la oficina de orden de retención local de no más de diez (10) días antes de la fecha de necesidad. Si el empleador no notificar a la oficina de orden de retención, entonces el empleador deberá pagar al trabajador imputables contemplados a través del Sistema de Liquidación Interestatal de garantía salarial de la primera semana a partir de la fecha prevista inicialmente de la necesidad. Si el trabajador no notifica la orden de retención de la oficina de su continuo interés en el trabajo no antes de nueve días (9) de trabajo y no más tarde de cinco (5) días hábiles antes de la fecha de necesidad, el trabajador será descalificado de la garantía antes mencionada. El empresario podrá exigir al trabajador para realizar un trabajo alternativo si se invoca la garantía citada en esta sección. Trabajo alternativo estará actividades de trabajo agrícola y mantenimiento granja generales que son inherentes a la agricultura los cultivos enumerados en la solicitud.*

*La cantidad de salario garantizado de la primera semana en el AEWR actualmente en vigor es de 35 horas x $11.27 = $394.45.*

**§ 3, *DIVULGACION DE TERMINOS Y CONDICIONES DE VIVIENDA:***
*El empleador requiere acceso a el sistema de liquidación intraestatal y interestatal y aseguraque la vivienda de los trabajadores satisfará normas federales no mas tardar de (30) días en avanzado de la*

*fecha de necesidad en el ajunto archivo ETA 790. Vivienda y servicios públicos son proveídos sin costo alguno al trabajador que no sea capaz de regresar a su propio domicilio el mismo día. Trabajadores reclutados contra esta orden de trabajo dentro de la distancia normal de viaje al trabajo no serán proveídos con vivienda, subsistencia o transportación. La vivienda proveída es para grupo. En el evento de que una mujer trabajadora sea empleada, taza, ducha y habitación separadas serán proveídas por el empleador. Vivienda para toda la familia no es disponible y la provisión de casa para toda una familia no es imperante para el área de trabajo. La vivienda cumplirá con las normas aplicables del Gobierno Federal, Estatal, y local. Trabajadores serán responsables por mantener la vivienda ordenada y limpia. El coste razonable de reparaciones por daños, además de otros causados por uso y desgaste normal, podrían ser cobrados a los trabajadores a los que se les encuentre responsables por los daños a la vivienda y muebles.*

***§ 19, ARREGLOS DE TRANSPORTE**:*

*Para los trabajadores contratados fuera del área del empleo previsto, gastos de transporte y estancia serán reembolsados por el empleador de conformidad con 20 CFR § 655.122(h). Transporte de entrada se reembolsará sobre la base de no menos (y no está obligado a ser algo más que) los cargos más económicos y razonables para la distancia implicada. El reembolso de subsistencia será la cantidad que el empleador le cobraría para proporcionar al trabajador las tres comidas por día de $12.07 por día o por trabajadores que prestan los recibos serán reembolsados hasta el cantidad autorizado por los EE.UU. continentales viáticos de $51.00 calculado por el método de GSA. Los pagos se realizan en base a la fecha de publicación de las tarifas del programa H-2A de comidas permitidas en el Registro Federal.*

*Transporte al lugar de empleo. Si el empleador no ha previamente avanzado, los costos de transporte y costos de subsistencia para el trabajador o de otra manera proporcionado dicho transporte o subsistencia directamente al trabajador por otros medios y si el trabajador complete el cincuenta por ciento (50%) de el trabajo del contrato, empleador reembolsará al trabajador para los gastos razonables incurridos por el trabajador para el transporte y subsistencia diaria esde el lugar que el trabajador ha llegado a trabajar para el empleador a el lugar de empleo del empleador. La cantidad del pago del transporte será el cargo mas economico y rasonable y commun cobro de transporte. La cantidad del pago por día natural no deberá ser inferior al importe establecido en virtud de 20 CFR 655.173(a), que actualmente es $12.07 por día. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*Transporte desde el último lugar de destino al país de origen. Si el trabajador completa el periodo de contrato de trabajo, o si el empleador está despedido sin causa, y el trabajador no tiene un empleo inmediato H-2A, el empleador proporcionará o pagaremos los costos razonables de los trabajadores del transporte de regreso y la subsistencia del lugar de trabajo al cabo del cual el trabajador, sin tener en cuento el empleo de intervenir, parte a trabajar para el empleador. Si el trabajador tiene un contrato con un empleador posterior que no este hacuerdo en el contrato de trabajo para proporcionar o pagar los gastos de transporte y gastos subsistencieros diarios del lugar de trabajo del empleador al lugar de trabajo de tales posterior empleador. el empleador debe proveer o pagar dichos gastos. Si el trabajador tiene un contrato con un empleador posterior que ha acordado en el contrato de trabajo para proporcionar o pagar los gastos de transporte ycostos subsistancios diarios del lugar del empleador al lugar de tales empleador posterior que debe proporcionar o pagar dichos gastos. La cantidad del pago del transporte será el cargo comun más económica y razonable para las distancias. La cantidad del pago por día natural no deberá ser inferior a la cantidad establecida en virtud de 20 CFR § 655.173(a), que actualmente es $12.07 por día. La obligación del empleador de proporcionar o pagar el transporte de retorno y de subsistencia continúa si un trabajador H-2A es desplazada como consecuencia del cumplimiento del empleador con la regla del 50 por ciento como se describe en 20 CFR § 655.135(d) con respecto a las referencias hechas después de que el empleador fecha de necesidad. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El transporte entre vivienda y lugar de trabajo. Para aquellos trabajadores que viven en viviendas proporcionadas o asegurados por el empleador, el empleador proveerá transporte entre este tipo de viviendas y lugares de trabajo diario del empleador, sin costo al trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador se requiere como condición de empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*El transporte para los trabajadores entre el sitio diario de trabajo disignado. Para los trabajadores que no viven en viviendas proporcionadas o asegurados por el empleador que se reportan al sitio de trabajo diario, el empleador proveerá transporte entre dicho sitio de informes trabajo diario designado y lugar de trabajo diario del empleador, sin costo para al trabajador, y de regreso desde el sitio de trabajo diario al sitio de información designado, sin costo para el trabajador. Dicho transporte cumplirá con todas las leyes y regulaciones aplicables federales estatales y locales, de acuerdo con 20 CFR § 655.122 (h) (4). El uso de este transporte diario es voluntaria; ningún trabajador es requerido como condición de se empleo para usar el transporte diario al lugar de trabajo ofrecido por el empleador.*

*OTRAS CONDICIONES DE EMPLEADO, ACLARACIONES Y ASEGURAMIENTOS:*
*ASEGURAMIENTO REQUERIDA: El empleador se compromete a cumplir con las regulaciones en 20 CFR §§ 655.135 y 653.501. El empleador adopta y incorpora por referencia a todas las garantías necesarias establecidas en 20 CFR § 655.122. En la medida en que hay alguna discrepancia entre este ETA Formulario 790 y Anexos, la declaración de garantías requerido adjunto a este ETA Formulario 790, o la Ley de Inmigración y Nacionalidad (el "INA") y todos los reglamentos de H-2A aplicables, a continuación, el INA y los reglamentos H-2A aplicables siempre prevalecerán.*

*ASEGURAMIENTO DE SEGURO DE COMPENSACIÓN DE COBERTURA DEL TRABAJADOR CONTINUÓ: Con conformidad con 20 CFR 655.122(e)(1), el empleador proveerá seguro de compensación al trabajador, sin costo alguno para el trabajador, que cubre lesiones y enfermedades que surjan de, y en el curso de la el empleo de los trabajadores. Antes de la determinación de certificación laboral, el empleador proveerá prueba de cobertura de seguro de compensación al trabajador para el funcionario de certificación de conformidad con 20 CFR 655.122 (e)(2) . En el caso de que la cobertura actual expira durante el período de necesidad reflexionó sobre adjunto ETA 790, punto 9, el empleador garantiza por escrito de su intención de renovar y mantener una cobertura continua durante las fechas completas de necesidad, como lo demuestra la firma y fecha ETA 790 a la que se adjunta el presente aseguramiento.*

*CONDICIÓN DE EMPLEO: Todos los solicitantes deben poder (con o sin acomodo razonable), dispuesto y capacitado para llevar a cabo todo el trabajo descrito, y debe estar disponible para todo el período previsto de empleo. El trabajo ofrecido es temporal ya tiempo completo sólo para el período anticipado declarado de empleo y cualquier extensión aprobada la misma. No hay ninguna oferta o garantía que recordar para el futuro del empleo a excepción de la solicitud requerida de algunos ex trabajadores de Estados Unidos de conformidad con 20 CFR § 655.153 .*

*REGISTROS DE GANANCIAS: registros de ganancias precisos y adecuados se mantendrán de acuerdo con el 20 CFR § 655.122 (j). Todos los registros estarán disponibles para la inspección y la transcripción por la secretaría de Estado de Trabajo o un representante debidamente autorizado y designado y por el trabajador y los representantes designados por el trabajador como lo demuestra la documentación adecuada (un Registro de Comparecencia como abogado o representante, Formulario G-28, firmado por el trabajador que confirma dicha representación). Dicho registro estará disponible para inspección y copia dentro de las 72 horas siguientes a la notificación de la secretaría de Estado de Trabajo o un*

*representante debidamente autorizado y designado y por el trabajador y los representantes designados según lo descrito en este párrafo.*

*IMPOSIBILIDAD DEL CONTRATO: El empleador terminara el contrato de trabajo de cualquier trabajador cuyos servicios ya no son necesarios por razones ajenas a la voluntad del empleador debido a incendios, clima, o otro acto de Dios que hace que el cumplimiento del contrato imposible. Ya sea un evento constituye una imposibilidad contrato será determinado por una Oficial Certificado. En el caso de dicha rescisión de un contrato, el empleador debe cumplir con una garantía de tres cuartas partes del tiempo que ha transcurrido desde el inicio del contrato de trabajo a partir de la primera jornada de trabajo después de la llegada del trabajador en el lugar de trabajo o de la anuncian primera fecha de necesidad, el que sea más tarde, y hasta la fecha de terminación. El empleador debe hacer esfuerzos para transferir al trabajador a otro empleo comparable y aceptable para el trabajador, de conformidad con las leyes de inmigración existentes, según corresponda. Si dicha transferencia no se ve afectada, el empleador debe: (1) Volver al trabajador, por cuenta del empleador, al lugar desde el cual el trabajador (sin tener en cuenta el empleo que intervenga) vino a trabajar para el empleador, o transportar el trabajador al próximo empleador H-2A certificado, el que sea que el trabajador prefiera; (2) Reembolsar al trabajador el importe total de las deducciones hechas de la retribución del trabajador por el empleador para transporte y gastos de subsistencia en el lugar de trabajo; y (3) Pagar al trabajador por los costos incurridos por el trabajador para el transporte y subsistencia diaria a la casa de ese empleador del empleo. Estos arreglos de transporte se aplican sólo a aquellos trabajadores contratados desde fuera del área del empleo previsto.*

*TERMINACIONES: El empleador puede dar por terminado el trabajador con notificación a las agencias estatales y federales correspondientes si el trabajador: (a) se niega sin causa justificada para realizar el trabajo para el cual fue reclutado y contratado al trabajador; (b) comete actos graves de mala conducta; (c) dificulta la productividad de otro trabajador; (d) el que no este enfermo o no se niega, sin causa justificada para realizar según las indicaciones de la obra para la cual fue contratado y contrató al trabajador; (e) proporciona otra razón relacionada con el trabajo legal (s) para la terminación del empleo; (f) abandona su empleo; (g) no cumple las normas de producción aplicables cuando las normas de producción aplicables; (h) falsifica identificación, personal, médicos, producción, u otros registros relacionados con el trabajo; (i) no presenta o rehúsa a tomar una prueba de alcohol o drogas; (j) el empleador descubre un registro condena penal o el estado como delincuente sexual registrado que el empleador cree razonablemente perjudicará la seguridad y/o de las condiciones de vida de los demás trabajadores; (k) comete un acto o actos de insubordinación, incluyendo el hecho de no considerar a la autoridad del empleador; (l) se encuentra o proporciona una declaración falsa al empleador; (m) recoge dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para este empleador; (n) la violación de las reglas de seguridad del empleador;(o) no autorizada o ilegal la posesión, uso o venta de alcohol o sustancias controladas en los locales del empleador o durante la jornada laboral , en el ejercicio de las actividades de trabajo o en vehículos del empleador; (p) no autorizada o ilegal la posesión, uso o venta de armas, armas de fuego o explosivos en las instalaciones del empleador o en vehículos del empleador; (q) el robo o la deshonestidad; (r) de contacto físico inapropiado; (s) el acoso; (t) la discriminación o represalia; (u) la falta de respeto hacia los compañeros de trabajo, visitantes u otros miembros del público; (v) la realización de trabajos fuera o utilización de bienes, equipos o instalaciones del empleador en relación con el trabajo fuera, mientras que en el tiempo del empleador; (w) pobre asistencia o mal desempeño. Los motivos para la terminación inmediata mencionados no son todo incluido. Todas las decisiones de terminación se basarán en una evaluación de todos los factores pertinentes.*

*En caso de terminación de razones médicas que ocurran después de la llegada en el trabajo, o que se producen como resultado de empleo, o en caso de terminación como resultado de un acto de Dios, el empleador pagará o proporcionar costos razonables de transporte de regreso y de subsistencia a el lugar*

*desde el cual el trabajador llegó a trabajar para el empleador y los trabajadores para reembolsar gastos razonables de transporte y dietas incurridos por el trabajador para llegar al lugar de empleo. Estas disposiciones se aplican sólo a los trabajadores que sean contratados fuera del área del empleo previsto.*

*El empresario informará a los trabajadores que, a) si voluntariamente abandonan el empleo antes de que finalice el período del contrato, o b) los trabajadores que son despedidos por causa justificada, al Centro de Procesamiento de Chicago, y los trabajadores H -2A para el Departamento de Seguridad Nacional, en escrito u otro método aprobado, a más de dos (2) días después del abandono o terminación se produce. El abandono se considerará que comenzará después de un trabajador no se presenta para el trabajo a la hora programada regularmente durante cinco (5) días consecutivos sin el consentimiento del empleador. El empleador no será responsable de proveer o pagar a los trabajadores informados a) los gastos de transporte y dietas posteriores, y b) el trabajador no tendrá derecho a la garantía 3/4.*

*PRUEBA DE CIUDADANÍA: se requiere que todos los trabajadores contratados bajo este fin de proporcionar la documentación que acredite la ciudadanía estadounidense o estatus legal para trabajar en los Estados Unidos.*

*ACUERDO DE TRABAJO AGRÍCOLA: Una copia del contrato de trabajo se proporcionará al trabajador por el empleador a más tardar en el día de trabajo comienza. Para un trabajador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento en que el trabajador se aplica para la visa. Para un trabajador H-2A al pasar de un empleador H-2A para un posterior empleador H-2A, se proporcionará una copia del contrato de trabajo a más tardar en el momento de una oferta de trabajo se hace por la posterior empleador H-2A. Términos y condiciones del contrato de trabajo pueden ser traducidos en una lengua comprensible para el trabajador, sin embargo la versión en Inglés del contrato de trabajo siempre deberá controlar.*

*OTROS: Las condiciones de trabajo cumplan con los reglamentos de salario mínimo federal y estatal, el trabajo infantil, la seguridad social, la salud y la seguridad, el registro de contratista de trabajadores agrícolas y otras leyes relacionadas con el empleo. El empleador es un empleador que ofrece igualdad de oportunidades de empleo y ofrecer a los trabajadores de los Estados Unidos por lo menos las mismas oportunidades, salarios, beneficios y condiciones de trabajo que las que ofrece el empleador o tiene que intenciona en ofrecer a los trabajadores no inmigrantes.*

*EMPLEADOR PROPORCIONA HERRAMIENTAS Y EQUIPO: El empleador proporcionará, sin costo, todas las herramientas, suministros o equipos necesarios en la realización del trabajo.*

*POLÍTICA DE ABUSO DE SUSTANCIAS: El uso o posesión o estar bajo la influencia de drogas ilegales o alcohol durante el tiempo de trabajo está prohibido. Los trabajadores pueden ser solicitados a someterse a pruebas de drogas y alcohol al azar sin costo alguno para el trabajador. El incumplimiento de la solicitud o de dar positivo puede resultar en la terminación inmediata. Todas las pruebas se producirá después de la de coches y no es una parte del proceso de la entrevista.*

*SALIDA OBLIGATORIA: Los trabajadores H-2A necesitan salirse de los Estados Unidos a finales del período certificado por el Departamento de Trabajo o separación por parte del el empleador, lo que ocurra primero, según lo dispuesto en 20 CFR § 655.135 (i), a menos que el H2A trabajador está siendo patrocinado por otro empleador posterior. Esto servirá como notificación oficial de este requisito a cualquier trabajador H-2A empleado bajo el acuerdo de trabajo agrícola.*

*PROHIBICIONES CONTRA QUE EMPLEADOS PAGEN QUOTAS: El empleador y sus agentes no han solicitado o recibido pago de cualquier tipo de cualquier empleado sujeto a 8 USC § 1188 para cualquier actividad relacionada con la obtención de la certificación de trabajo H-2A, incluyendo el pago de*

*honorarios de abogados del empleador", las tasas de solicitud, o los costos de contratación, que esté prohibido por 20 CFR § 655.135 (j). Los costos que son la responsabilidad y sobre todo en beneficio del trabajador, tales como honorarios de pasaporte requerido por el gobierno, no están incluidos en esta prohibición.*

*CONTRATOS CON GRUPOS QUE CUMPLEN CON PROHIBICIONES: El empleador ha prohibido por contrato cualquier contratista laboral extranjero o reclutador, en su caso, a quien el empleador se involucra, ya sea directa o indirectamente, en la contratación internacional de los solicitantes de H-2A para buscar o recibir pagos de los futuros empleados, con excepción de lo previsto en el reglamento del Departamento de Seguridad Nacional a las 8 CFR § 214.2(h)(5)(xi)(A). Del mismo modo, todos los empleados se les prohíbe la recogida de dinero u otra cosa de valor a partir de los futuros empleados o empleados actuales a fin de que el pagador de trabajar para el empleador. Este patrón tiene cero tolerancia para los pagos prohibidos. Los empleados deben informar al empleador inmediatamente el nombre de cualquier persona que busca para recoger un pago prohibido y la cantidad solicitada. Cualquier empleado que haya recogido se requerirá un pago prohibido a reembolsar a la parte perjudicada de inmediato y se dará por terminado de empleo. Un empleado no puede ser objeto de discriminación o se descarga por informar de un pago prohibido.*

*AVISO DE DERECHOS DEL TRABAJADOR: El empleador se compromete a publicar y mantener en un lugar visible en el lugar de trabajo un cartel que sea proporcionada por el Secretario de Trabajo, como se describe en 20 CFR § 655.135 (l), cuando tal cartel está disponible por el Secretario.*

# EMPLOYEE RIGHTS
# UNDER THE H-2A PROGRAM

THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

The Immigration and Nationality Act (INA) allows for the employment of temporary, non-immigrant workers in agriculture (H-2A WORKERS) only if the employment of U.S. workers would not be adversely impacted. To ensure that U.S. workers are not adversely impacted, ***H-2A WORKERS* and *OTHER WORKERS employed on an H-2A work contract or by an H-2A employer in the same agricultural work as the H-2A workers*** have the following rights:

**DISCLOSURE**

- To receive accurate, **WRITTEN INFORMATION** about the wages, hours, working conditions, and benefits of the employment being offered
- To receive this information prior to getting a visa and no later than on the first day of work
- To receive this information in a language understood by the worker

**WAGES**

- To be **PAID** at least twice per month at the rate stated in the work contract
- To be informed, in writing, of all **DEDUCTIONS** (not otherwise required by law) that will be made from the worker's paycheck
- To receive an itemized, written **STATEMENT OF EARNINGS** (pay stub) for each pay period
- To be guaranteed employment for at least **THREE-FOURTHS** (75%) of the total hours promised in the work contract

**TRANSPORTATION**

- To be provided or, upon completion of 50 percent of the work contract period, reimbursed for reasonable costs incurred to the place of employment for transportation and subsistence (lodging incurred on the employer's behalf and meals)
- Upon completion of the work contract, to be provided or paid for return transportation and subsistence
- For workers living in employer-provided housing, to be provided **TRANSPORTATION**, at no cost to the worker, between the housing and the worksite
- All employer-provided transportation must meet applicable safety standards, be properly insured, and be operated by licensed drivers

**HOUSING**

- For any worker who is not reasonably able to return to his/her residence within the same day, to be provided **HOUSING AT NO COST**
- Employer-provided housing must meet applicable safety standards
- Workers who live in employer-provided housing must be offered three meals per day at no more than a DOL-specified cost, or provided free and convenient cooking and kitchen facilities

**ADDITIONAL PROVISIONS**

- To be provided state **WORKERS' COMPENSATION** insurance or its equivalent
- To be provided, at no cost, all **TOOLS**, **SUPPLIES**, and **EQUIPMENT** required to perform the assigned duties
- **TO BE FREE FROM DISCRIMINATION** or **DISCHARGE** for filing a complaint, testifying, or exercising your rights in any way or helping others to do so
- Employers MUST comply with all other applicable laws (including the prohibition against holding workers' passports or other immigration documents)
- Employers and their agents, including foreign recruiters, or anyone working on behalf of the employer, MUST NOT receive payment from any worker for any costs related to obtaining the H-2A certification (such as application and recruitment fees)
- Employers MUST display this poster where employees can readily see it
- Employers MUST NOT lay off or displace similarly employed U.S. workers within 60 days of the date of need for H-2A workers
- Employers MUST hire any eligible U.S. worker who applies during the first 50 percent of the approved work contract period

Workers who believe their rights under the program have been violated may file confidential complaints.

DEPARTMENT OF LABOR
UNITED STATES OF AMERICA

For additional information:

**1-866-4-USWAGE**

(1-866-487-9243) TTY: 1-877-889-5627

WHD
U.S. Wage and Hour Division

**WWW.WAGEHOUR.DOL.GOV**

Case 5:18-cv-00162-BO Document 1 Filed 04/17/18 Page 88 of 97

# DERECHOS DEL EMPLEADO
# BAJO EL PROGRAMA H-2A

## SECCIÓN DE HORAS Y SUELDOS DEL DEPARTAMENTO DE TRABAJO DE EEUU

La Ley Sobre Inmigración y Nacionalidad (INA-siglas en inglés) permite el empleo de trabajadores temporeros no inmigrantes en agricultura (Trabajadores H-2A) siempre y cuando no se impacte adversamente a trabajadores de EEUU. Para asegurarse de que no se impacte adversamente a trabajadores de EEUU, ***TRABAJADORES H-2A*** y ***OTROS TRABAJADORES empleados en el contrato de trabajo H-2A o por un empleador H-2A en el mismo trabajo agrícola como trabajadores H-2A*** tienen los siguientes derechos:

**DECLARACIÓN**
- Recibir **INFORMACIÓN ESCRITA** sobre los salarios, las horas, las condiciones de trabajo y los beneficios de empleo que se ofrecen
- Recibir esta información antes de conseguir un visado y no más tarde del primer día de trabajo
- Recibir esta información en un idioma que lo entienda el trabajador

**SALARIOS**
- Que se le **PAGUE** por lo menos dos veces al mes de acuerdo con la tasa especificada en el contrato de trabajo
- Que se le informe, por escrito, de todas las **DEDUCCIONES** (no exigidas de otro modo por ley) que se harán del cheque de pago del trabajador
- Recibir una **DECLARACIÓN DE INGRESOS** (talón de pago) escrita y detallada para cada período de pago
- Que se le garantice empleo por lo menos de **TRES CUARTOS** (75%) del total de horas prometidas en el contrato de trabajo

**TRANSPORTE**
- Que se le proporcione o, al cumplir con 50 por ciento del período de trabajo contratado, reembolse por los costos razonables incurridos por transporte y alimentación al lugar de empleo (alojamiento incurrido a favor del empleador y comidas)
- Al terminar el contrato de trabajo, que se le proporcione o que se le pague transporte de regreso y alimentación
- Para trabajadores que viven en viviendas proporcionadas por el empleador, que se le provea **TRANSPORTE**, sin ningún costo al trabajador, entre la vivienda y el sitio de empleo
- Todo transporte proporcionado por el empleador ha de cumplir con todas las normas de seguridad aplicables, ha de estar asegurado correctamente y ha de ser operado por un conductor licenciado

**VIVIENDA**
- Para cualquier trabajador que no pueda regresar razonablemente a su domicilio durante el mismo día, se le tiene que proporcionar **VIVIENDA SIN COSTO ALGUNO**
- La vivienda proporcionada por el empleador tiene que cumplir con las normas de seguridad aplicables
- Al trabajador que vive en una vivienda proporcionada por el empleador se le tiene que ofrecer tres comidas por día y que no cuesten más del costo especificado por DOL, o que se le provea las comodidades para poder cocinar y de una cocina

**DISPOSICIONES ADICIONALES**
- Que se le provea seguro de **INDEMNIZACIÓN ESTATAL PARA TRABAJADORES**, o su equivalente
- Que se le provea, sin ningún costo, todas las **HERRAMIENTAS**, **SUMINISTROS** y **EQUIPO** exigidos para desempeñar cargos asignados
- **ESTAR LIBRE DE DISCRIMINACIÓN** o **DESPIDO** por presentar una demanda, por atestiguar o por ejercer de cualquier modo sus derechos o por ayudar a otros a hacer lo mismo
- Todo empleador TIENE que cumplir con todas las otras leyes aplicables (incluso la prohibición contra la retención de pasaportes de los trabajadores o cualquier otro documento de inmigración)
- Ningún empleador ni sus agentes, incluso reclutadores extranjeros, o cualquiera que trabaje en nombre del empleador, PUEDEN recibir pago de ningún trabajador por ningún costo relacionado al proceso de obtener la certificación H-2A (tal como honorarios de solicitud y de reclutamiento)
- Todo empleador TIENE que exhibir este cartel donde los empleados lo puedan ver fácilmente
- NINGÚN empleador PUEDE desemplear o desplazar a trabajadores de EEUU semejantemente empleados 60 días o menos antes de la fecha que se necesiten trabajadores H-2A
- Todo empleador TIENE que contratar a cualquier trabajador elegible de EEUU que solicite durante el primer 50 por ciento del período de trabajo en el contrato aprobado

Todo trabajador que crea que sus derechos hayan sido violados bajo este programa puede presentar una demanda confidencial.

DEPARTMENT OF LABOR
UNITED STATES OF AMERICA

Para información adicional:

**1-866-4-USWAGE**

(1-866-487-9243) TTY: 1-877-889-5627

WHD
U.S. Wage and Hour Division

**WWW.WAGEHOUR.DOL.GOV**

Google Maps 225 Oscar Tate Road, Salemburg, NC to 1246 Old Harvey Sutton Rd — Drive 44.2 miles, 53 min

## 225 Oscar Tate Rd

Salemburg, NC 28385

1. Head north on Oscar Tate Rd toward Tyndall Bridge Rd — 0.2 mi

2. Turn left onto Tyndall Bridge Rd

207 ft

3. Turn right at the 1st cross street onto NC-242 N

5.1 mi

4. Turn left onto US-421 N

5.0 mi

5. Turn right onto NC-242 N

8.7 mi

6. Turn right onto Dragstrip Rd

0.4 mi

23 min (19.5 mi)

## 3858 NC-242

Dunn, NC 28334

7. Head east on Dragstrip Rd toward Woods Crossroads Rd

0.8 mi

8. Turn left onto Woods Crossroads Rd

1.5 mi

9. Turn right onto NC-50 S

8.4 mi

10. Turn left onto NC-50 S/NC-55 E

1.6 mi

11. At the traffic circle, take the 3rd exit onto NC-55 E/Mt Olive Dr
    Continue to follow NC-55 E

12.2 mi

12. Turn left onto Old Harvey Sutton Rd
    Destination will be on the left

0.2 mi

30 min (24.7 mi)

## 1246 Old Harvey Sutton Rd

Mt Olive, NC 28365

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.



399 Langdon Rd, Angier, NC 27501 to 1600 Williams Lake Road, Roseboro, NC

Drive 62.7 miles, 1 h 19 min

## 399 Langdon Rd

Angier, NC 27501

1. Head south on Langdon Rd toward NC-50 S

0.3 mi

2. Turn right onto NC-50 N

3.0 mi

3. Turn right onto NC-210 E

1.2 mi

4. Turn right onto the ramp to Benson

0.3 mi

5. Merge onto I-40 E

Destination will be on the right

1.2 mi

8 min (6.0 mi)

## 1064 Stephenson Rd

Benson, NC 27504

6. Head south on I-40 E

0.2 mi

10 s (0.2 mi)

## 1006 Stephenson Rd

Benson, NC 27504

7. Head south on I-40 E

7.1 mi

8. Take exit 328A to merge onto I-95 S toward Benson/Fayetteville

8.0 mi

9. Take exit 73 for US-421/NC-55 toward Dunn/Clinton

0.2 mi

10. Turn left onto NC-55 E/US-421 S/E Cumberland St

Continue to follow US-421 S

5.4 mi

11. Turn right onto Moses Register Ln

Destination will be on the right

338 ft

21 min (20.8 mi)

## 430 Moses Register Ln

Dunn, NC 28334

12. Head northeast on Moses Register Ln toward US-421 S

21 s (338 ft)

**Take NC-55 E to Rebel Rd in Westbrook**

14 min (11.8 mi)

13. Turn right onto US-421 S

3.6 mi

14. Turn left onto NC-242 N

3.9 mi

15. Turn right onto NC-55 E

4.3 mi

**Take Randall Chapel Rd to NC-50 N in Meadow**

3 min (1.8 mi)

16. Turn left onto Rebel Rd

0.6 mi

17. Continue onto Randall Chapel Rd

1.2 mi

18. Turn left onto NC-50 N

59 s (0.8 mi)

19. Turn right at the 1st cross street onto Eldridge Rd
    Destination will be on the left

3 min (1.7 mi)

20 min (16.2 mi)

## 3691 Eldridge Rd

Newton Grove, NC 28366

20. Head southeast on Eldridge Rd toward Alonzo Rd

1.7 mi

21. Turn left onto NC-50 S

1.6 mi

22. Turn right onto Warren Mill Rd

2.7 mi

23. Turn right onto US-13 S

2.4 mi

24. Turn left onto Wrye Branch Rd

2.2 mi

25. Turn right onto Roanoke Rd

1.2 mi

26. Turn left onto Bud Johnson Rd

1.6 mi

19 min (13.4 mi)

## 1208 Bud Johnson Rd

Newton Grove, NC 28366

27. Head south on Bud Johnson Rd toward US-421 N
    0.7 mi
28. Turn right at the 1st cross street onto US-421 N
    0.7 mi
29. Turn left onto Feed Mill Rd
    2.6 mi
30. Continue onto Penny Tew Mill Rd
    0.5 mi
31. Turn left onto Williams Lake Rd
    1.7 mi
32. Turn right
    420 ft

11 min (6.1 mi)

## 1600 Williams Lake Rd

Roseboro, NC 28382

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

**CONSENT TO SUE**

I, Jaime Hernandez Campos, hereby consent to be a party under 29 U.S.C. §216(b) to this lawsuit to assert my right to the lawful wage required by the Fair Labor Standards Act.

[signature]
SIGNATURE

11-4-17
DATE

**CONSENT TO SUE**

I, Leodegario Cruz Trejo, hereby consent to be a party under 29 U.S.C. §216(b) to this lawsuit to assert my right to the lawful wage required by the Fair Labor Standards Act.

[signature]
SIGNATURE

11-4-17
DATE